**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **OKLAHOMA FORGE, LLC, d/b/a** | ) | **Case No. 24-11060-M** |
| **OKLAHOMA FORGE, INC.** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |

**ORDER (I) AUTHORIZING POST-PETITION CREDIT, (II) GRANTING SENIOR SECURED LIENS AND SUPERPRIORTY CLAIMS UNDER SECTIONS 364(C) AND (D) OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION LIENS, AND (IV) GRANTING RELATED RELIEF**

On the __ day of December, 2024, there came on for hearing before this Court the *Motion for an Order (I) Authorizing Post-Petition Credit, (II) Granting Senior Secured Liens and Superpriority Claims under Sections 364(c) and (d) of the Bankruptcy Code, (III) Granting Adequate Protection Liens, and (IV) Granting Related Relief* (the "Financing Motion") filed on the __ day of December, 2024 [Doc. ___] by Oklahoma Forge, LLC, as Debtor and Debtor in Possession (the "Debtor"), seeking, *inter alia*, pursuant to 11 U.S.C. §§ 105[1], 361, 362(d), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(k), 503(b), and 507, and Rules 2002, 4001, and 9014, the following relief:

      (i)     authority for the Debtor to obtain post-petition loans and other extensions of credit and accommodations from Forge Resources Group, an Illinois limited liability company ("DIP Lender"), under a senior secured lien and superpriority claim multi-draw term facility, in an aggregate principal amount of up to $250,000, under this Order (the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure. References to "LBR" are to the Local Rules of Bankruptcy Practice of the United States District Court for the Northern District of Oklahoma.

"DIP Order"), plus interest accruing thereon at the non-default, simple rate of 8% per annum (10% on and after the occurrence of an Event of Default under this DIP Order), fees (including a DIP Facility fee in the amount of 4% of the total DIP Facility), and, after the occurrence of an Event of Default (as defined below), reasonable expenses, and other reasonable costs and charges of DIP Lender (collectively, "DIP Obligations), in accordance with the terms and conditions set forth in this DIP Order and the DIP Security Agreement, a copy of which is attached as **Exhibit 1** (the "DIP Facility");

(ii)     authority for the Debtor to authorize and perform under this DIP Order, and to execute, deliver, and perform under the DIP Security Agreement, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of the Debtor to the DIP Lender on account of the DIP Facility (as such documents may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and including this DIP Order, the "DIP Facility Documents");

(iii)     subject to the priorities set forth in this DIP Order, authority of the Debtor to grant automatically perfected first-priority and priming liens and security interests to DIP Lender pursuant to Bankruptcy Code §§ 364(c) and 364(d) and superpriority claims to DIP Lender pursuant to Bankruptcy Code § 364(c)(1) and 503(b)(1), in all of the Debtor's existing and future assets and other property and interests in property, excluding Debtor's accounts ("Accounts") but specifically including all other Prepetition Collateral (as defined below), to secure the payment and performance of the DIP Obligations;

(iv)     approval of the terms and conditions of the DIP Facility and the DIP Facility Documents in all respects; and

(v)     modification of the automatic stay of Bankruptcy Code § 362 (the "Automatic Stay") to the extent provided in this DIP Order.

1.     The following papers were filed on December __, 2024, in response to the Financing Motion: _____ (collectively, the "Objections").  After consideration of the evidence admitted and arguments of all counsel presented to the Court and any oral modifications to the Financing Motion made at the Hearing (defined below) with the consent of DIP Lender, the Court made additional detailed findings of fact and conclusions of law on the record in open Court.

2.     Based upon the additional findings and conclusions, all of which are incorporated herein, and the findings and conclusions made herein, the Court hereby grants the relief in this DIP Order.  Therefore, consistent with Bankruptcy Code §§ 361, 362, 363, 364, 503(b), and 507, this Court hereby FINDS and ORDERS:

3. The Debtor and the DIP Lender have negotiated at arm's length and have acted in good faith in the negotiation and preparation of the DIP Facility Documents, including this DIP Order, have been represented by counsel, and intend to be and are bound by the terms of the DIP Facility Documents. The terms and conditions of this DIP Order and the other DIP Facility Documents reflect the Debtor's exercise of prudent business judgment under exigent circumstances, are consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

**Statement Of Jurisdiction**

4. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (D), (G), (K), (M), and (O).

**Notice**

5. Sufficient and adequate notice of the Financing Motion, the period for filing objections thereto, and the Hearing (as defined below) thereon has been given pursuant to Rules 2002, 4001, 9006, and 9014 and the LBR 4001-1.C., and as required by §§ 102, 105, 361, 362, 363, and 364. No further notice of the relief sought in the Financing Motion and granted in this DIP Order is necessary or required.

**Factual And Procedural Background**

6. On August 16, 2024 [Doc. 1] (the "Petition Date"), a petition for involuntary relief under chapter 7 was filed against the Debtor and, on November 22, 2024, an Agreed Order Converting Chapter 7 Case to a Case Under Chapter 11 was entered by the Court [Doc. 60]. The Debtor has continued in the management and possession of its business and property as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

7. On December __, 2024, the Court conducted the hearing on the Financing

Motion ("Hearing") and granted authorization and approval of the Financing Motion on the terms and conditions set forth in this DIP Order. The Court has considered any timely Objections to the Financing Motion, and the statements and arguments of counsel appearing at the Hearing. The Objections, including any reservations of rights contained therein, are OVERRULED, except to the extent addressed herein.

8.      Neither a trustee nor an official committee of holders of unsecured claims ("Committee") has been appointed in this Case.

### The Debtor's Stipulations

9.      The Debtor stipulates and represents that:

(i)      The DIP Lender holds no prepetition claims against the Debtor and has made an offer to purchase the DIP Collateral (defined below) under an Asset Purchase Agreement [Doc.   ] filed with this Court, for a gross purchase price of $3,550,000, subject to Court approval under Bankruptcy Code §§ 105, 363, and 365 ("Sale"). Given the extensive and exhaustive pre-Petition Date marketing efforts undertaken for more than six (6) months, and, in further consideration of DIP Lender providing the DIP Facility, the Debtor, DIP Lender, and the Debtor's prepetition secured lenders, Loeb Term Solutions, LLC ("Loeb") and Pathward, National Association ("Pathward" and collectively with Loeb, the "Prepetition Lenders"), have all agreed to proceed by private sale with the Sale and without the need for further marketing of the DIP Collateral or the opportunity to solicit, receive, entertain or accept overbids or higher or better offers of any kind for the DIP Collateral. To afford the Debtor and DIP Lender with the time necessary to complete negotiations, documentation, obtain court approval of, and close, the Sale of the DIP Collateral to DIP Lender, DIP Lender has agreed to advance the DIP Facility, subject to the lien priorities set forth in this DIP Order, on a senior secured lien and senior administrative expense basis, pursuant to Bankruptcy Code §§ 105, 364(c) and (d) and this DIP Order. The proceeds of the DIP Facility will be used to preserve and protect the estate in accordance with the Budget (defined below), including the payment of professional fees included in the Budget. At the closing of the Sale to DIP Lender, the amount of the DIP Obligations will be credited and offset against the purchase price of the DIP Collateral and the cash portion of the purchase price, net of any taxes, prorations, and customary closing costs, will be paid to Loeb.

(ii)     On the Petition Date, the DIP Collateral was subject to the lien claims of the following two creditors: (1) Loeb, which claims a first-priority lien in the LTS Priority Collateral (the "Loeb Collateral"), as defined in and subject to an Intercreditor Agreement dated August 11, 2022 (the "Loeb Lien Claims"), and (2) Pathward, which claims a first-priority lien in all, or substantially all, of Debtor's personal property assets that do not constitute LTS Priority Collateral under the Intercreditor Agreement dated August 11,

2022, including the Accounts (the "Pathward Lien Claims" and "Pathward Collateral" and, collectively with the Loeb Collateral, the "Prepetition Collateral"). Each of Loeb and Pathward claims a second-priority lien in the first-priority Prepetition Collateral of the other Prepetition Lender.

(iii)    The rights of Loeb and Pathward in the Prepetition Collateral arise under contractual agreements between such parties and the Debtor under which the Debtor granted the Loeb Lien Claims and the Pathward Lien Claims in the Prepetition Collateral, subject to the Intercreditor Agreement dated August 11, 2022 (the "Prepetition Claim Documents").

(iv)    As of the Petition Date, the Debtor owed at least $4,056,823.39 to Loeb and approximately $586,160.56 less cash proceeds from the Debtor's Accounts of approximately $419,591.84 held by Pathward leaving a net amount owed, after application, of $166,568.72 to Pathward for contractual debts that are secured by the Loeb Lien Claims and the Pathward Lien Claims in the Prepetition Collateral. The debts owed to Loeb and Pathward under the Prepetition Claim Documents as well as the Loeb Lien Claims and the Pathward Lien Claims in the Prepetition Collateral are collectively the "Prepetition Lenders' Claims").

(v)    The Debtor is in default of its debts and obligations to Loeb and Pathward under the terms and provisions of their respective loan documents. These defaults exist, have not been timely cured, and are continuing. The filing of this bankruptcy case ("Case") has accelerated the obligations to Loeb and Pathward.

(vi)    All cash of the Debtor's bankruptcy estate, wherever located, including all cash equivalents in the form of negotiable instruments (other than Chubb Checks described in paragraph 26 below) that were on the Petition Date in the Debtor's or Pathward's possession, custody, or control, and all future proceeds of Accounts which come into the possession, custody or control of Debtor or Pathward after the Petition Date, constitute cash collateral of Pathward (collectively, the "Pathward Cash Collateral"). The Debtor will not use Pathward Cash Collateral in this Case except to pay the Pathward Lien Claims or with the express written consent of Pathward. For the avoidance of doubt, the Chubb Checks referred to in paragraph 26 of this DIP Order do not constitute Pathward Cash Collateral.

(vii)    The Debtor does not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against the DIP Lender, Loeb or Pathward.

(viii)    The Debtor admits, represents, and warrants that it does not have any claim or cause of action against DIP Lender, Loeb or Pathward, or any of their respective officers, directors, employees, affiliates, agents, attorneys, or equity holders or as a result of any action, omission, event, or other set of circumstances occurring prior to the Petition Date, and, to the extent (if any) of any such claim or cause of action, the Debtor hereby fully releases the DIP Lender, each of the Prepetition Lenders, and any of their respective officers, directors, employees, affiliates, agents, attorneys, or equity holders therefrom.

(ix)    Each of Loeb and Pathward has consented in writing to the terms and conditions and entry of this DIP Order, including, without limitation, (a) subject to the lien priorities set forth in paragraphs 21 and 22 below, the grant of a first-priority, senior and priming lien to DIP Lender in the DIP Collateral under Bankruptcy Code §§ 364(c)(2) and (d), (b) the sale of the DIP Collateral by private sale to DIP Lender for a total gross purchase price (made up of cash and a credit bid of the DIP Obligations) of $3,550,000, free and clear of any lien or other interest Loeb or Pathward (or any of their respective successors or assigns) has or may have in the DIP Collateral, including the Loeb Lien Claims and the Pathward Lien Claims, with any such liens and other interests attaching to the cash proceeds of sale in their current order of priority, (c) the sale of the DIP Collateral to DIP Lender, without undertaking any further marketing efforts in respect of all or any portion of the DIP Collateral, or having or providing any further opportunity to solicit, receive, entertain, or accept any overbids or higher or better offers of any kind in respect of the DIP Collateral, (d) the waiver of any right Loeb or Pathward (or any of their respective successors or assigns) has or may have to make any credit bid for all or any portion of the DIP Collateral, whether under Bankruptcy Code §363(k) or otherwise, and (e) the waiver of any right to object to the entry of this DIP Order.

## **Necessity of DIP Facility**

10.    Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The ability of the Debtor to maximize the value of its estate depends upon the Debtor's ability to access the proceeds of the DIP Facility. This Case is a non-operating, liquidating case whereby the Debtor has agreed to sell substantially all of its assets and properties, except for the Accounts, to DIP Lender, or an affiliate or assignee thereof, for total gross consideration of $3,550,000, pursuant to §§105, 363, 364(k), and 365, as provided in the motion to sell [Doc. __] ("Motion to Sell") filed by the Debtor prior to the Hearing on this Financing Motion.

11.    Without the DIP Facility, the Debtor will not have the funds necessary to maintain, sell or otherwise liquidate its assets, provide financial information, or pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtor's estate. DIP Lender is willing to provide the DIP Facility to or for the benefit of the Debtor only in accordance with the terms of the DIP Facility Documents and this DIP Order.  Accordingly, the entry into the DIP Facility is actual and necessary to preserve the Debtor's estate.

12.     Furthermore, the DIP Lender would not be willing to make the DIP Facility available to the Debtor and the estate if it were not necessary and appropriate to facilitate the Sale and, as a result, it is a requirement of this DIP Facility that the Debtor and the estate undertake the Sale, without any further marketing efforts in respect of the DIP Collateral, or having any opportunity to solicit, receive, entertain, or accept any overbids or higher or better offers of any kind. Based upon Declaration of James J. Connor, the Manager of Oklahoma Forge, LLC, in Support of Chapter 11 Case and First Day Motions [Doc. __], the DIP Collateral was exhaustively and fully marketed prior to the Petition Date and, based on those efforts, the Debtor believes, in the sound exercise of its business judgement, that the Sale is the highest and best offer available to the Debtor and the estate at this time and will result in the highest net proceeds becoming available to the Debtor's estate. Loeb and Pathward, the only other entities known to have interests in the DIP Collateral, have consented to the Sale as long as (x) the gross purchase price is no less than $3,550,000, and, (y) after crediting and offsetting the DIP Obligations against the gross purchase price, the cash portion of the purchase price, net of any taxes, prorations, and customary closing costs, is paid to Loeb at closing of the Sale.  As such, the Court authorizes and approves Debtor's decision to proceed with the Sale as a private sale under section 363(b) and without any further marketing efforts in respect of the DIP Collateral, or having any opportunity to solicit, receive, entertain, or accept any overbids or higher or better offers of any kind.  Approval of the Sale itself, however, shall be subject to a separate Motion to Sell which was filed with this Court prior to the Hearing.

13.     The Debtor has sought to obtain financing from other sources and is unable to obtain credit allowable under § 503(b)(1), pursuant to §§ 364(a) and (b), or on terms more favorable to the Debtor than the terms of the DIP Facility.

14.     The terms of the DIP Facility and this DIP Order, including, without limitation, the related fees and priming liens granted in accordance herewith and therewith, are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession, reflect the Debtor's exercise of its sound business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.  Good cause has, therefore, been shown for the relief sought in the Financing Motion.  Any credit extended under the terms of this DIP Order, the DIP Facility Documents, and the DIP Facility shall be deemed to have been extended in good faith by the DIP Lender, as the term "good faith" is used in Bankruptcy Code § 364(e), and the DIP Lender shall be entitled to all protections afforded thereunder, including, without limitation, the full protections of § 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision thereof is vacated, reversed, or modified, whether on appeal or otherwise.

**Use of Pathward Cash Collateral**

15.     Upon entry of this DIP Order, Pathward is authorized to apply any Pathward Cash Collateral that constitutes proceeds of Accounts now in, or hereafter coming into, Pathward's possession, custody or control against the Pathward Lien Claims, and the automatic stay is hereby modified to permit such collection and application by Pathward.  Any additional Pathward Cash Collateral that constitutes proceeds of Accounts coming into the possession, custody or control of the Debtor (or any party under the Debtor's control) shall, upon receipt by the Debtor, be held in trust by the Debtor, and promptly turned over and delivered to Pathward, for application by Pathward against the Pathward Lien Claims, until the Pathward Lien Claims have been paid and satisfied in full.  Absent a further order of this Court or the prior written consent of Pathward, the Debtor is strictly prohibited from using the Pathward Cash Collateral that constitutes proceeds of Accounts for any purpose other than to comply with this paragraph 15.  The foregoing rights are

without prejudice to the Challenge Deadline and procedures described in paragraphs 74 and 75 below. For the avoidance of doubt, Pathward Cash Collateral that is subject to this paragraph 15 expressly excludes (a) any advances made under the DIP Facility, and (b) the proceeds of the DIP Collateral, including the Chubb Checks (as defined in paragraph 26 below) and any other insurance proceeds. Unless and until DIP Lender exercises its rights under paragraph 55 of this DIP Order, the proceeds of the DIP Collateral shall remain subject to the DIP Lien and the priorities established in this DIP Order.

## DIP FACILITY

### Authorization to Obtain Credit

16. The Debtor is hereby authorized to obtain credit only in accordance with DIP Facility Documents, this DIP Order, and the Budget. No promissory note or other writing shall be necessary or required to evidence the DIP Obligations or the DIP Facility. Furthermore, DIP Lender shall have no obligation to advance any DIP Obligations (a) unless and until a Real Estate Purchase Agreement for property commonly known as 5259, 5241 & 5211 S 49 Av W, Tulsa OK has been entered into by and between Store Master Funding XIC, LLC and Forge Property Holdings II, LLC (an affiliate of DIP Lender), in form and substance acceptable to DIP Lender, (b) unless and until a Sublease Agreement for property commonly known as 5241 S. 49th West Ave and 5259 S. 49th West Ave Tulsa, OK has been entered into by and between Forge Property Holdings II, LLC and Duenner Supply, LLC, in form and substance acceptable to DIP Lender, (c) unless and until an Asset Purchase Agreement between the Debtor and DIP Lender, in form and substance acceptable to DIP Lender, has been filed with this Court as an attachment to the Motion to Sell, and (d) even if the funding conditions in clauses (a), (b) and (c) of this paragraph have been satisfied, if at the time of any funding request an Event of Default exists or would occur after giving effect to the funding request.

17.    The Debtor is hereby authorized to obtain post-petition loans and other extensions of credit from the DIP Lender in the principal amount of up to $250,000, pursuant to the terms of this DIP Order and the terms of the DIP Facility Documents, and the DIP Facility shall only be used in accordance with the Budget (or as otherwise provided in this DIP Order or the DIP Facility Documents).

18.    The DIP Facility Documents and the terms thereof, including, without limitation, the interest, fees, expenses, liens, and superpriority provisions set forth in this DIP Order, are approved in their entirety. The Debtor is authorized to execute, deliver, and perform under this DIP Order and the DIP Facility Documents.

**First Priority Liens and Superpriority Administrative Claims**

19.    Effective as of the Petition Date, and in accordance with the priorities set forth in paragraphs 21 through and including 23 below, DIP Lender is entitled to and is hereby granted a first-priority administrative expense claim, and security interests and other liens in, on and against the DIP Collateral (as defined in paragraph 20 below), and the protections of "good faith", arms-length, credit providers, under Bankruptcy Code §§ 364(c)(1)-(3), 364(d)(1), and 364(e), to secure the payment and performance of the DIP Obligations and the DIP Facility in full. Loeb and Pathward have expressly consented to the security interests, liens and claims granted to the DIP Lender in this DIP Order, and each acknowledges that the relief provided in this DIP Order adequately protects its respective interests in the Prepetition Collateral.

20.    The security interests and other liens securing the DIP Obligations and DIP Facility granted in this DIP Order (the "DIP Liens") are effective as of the Petition Date, are valid and automatically perfected security interests and liens (such that no additional steps need be taken by the DIP Lender to perfect such DIP Liens), and are hereby granted in and attach to any and all assets and properties of the Debtor and the Debtor's bankruptcy estate, including, without

limitation, all real and personal, tangible and intangible, property, including the Chubb Checks, now owned or hereafter acquired, wherever located, and the proceeds and products of the foregoing, including, without limitation, the Prepetition Collateral, but expressly excluding the Accounts (collectively, exclusive of Accounts, the "DIP Collateral").  The DIP Collateral shall not include (a) rights or causes of action under §§ 544, 547, and 548 and the proceeds thereof or (b) the Accounts and the proceeds thereof.

21.     One half of the DIP Obligations shall be secured by a senior, first-priority, priming lien in, on and against the DIP Collateral in favor of DIP Lender, which lien shall prime and be senior to all existing and future liens of the Prepetition Lenders (or their respective successors or assigns, if any), including the Loeb Lien Claims and the Pathward Lien Claims, pursuant to sections 364(c)(2) and (d) of the Bankruptcy Code ("Priming Lien"), and the other one half of the DIP Obligations shall be secured by a junior lien in, on and against the DIP Collateral, which junior lien shall be junior to the Prepetition Lien held by Loeb but senior to the Prepetition Lien held by Pathward in the DIP Collateral, pursuant to, in the case of the Loeb Lien Claim, section 364(c)(3) of the Bankruptcy Code, and, in the case of the Pathward Lien Claim, section 364(d)(1) of the Bankruptcy Code ("Junior Lien").  Accounts shall not constitute DIP Collateral and shall remain subject to the first-priority security interest held by Pathward and be treated in accordance with section 15 of this DIP Order.

22.     The DIP Liens, including both the Priming Lien and the Junior Lien, the Loeb Lien Claims, and the Pathward Lien Claims shall be subject and junior to the Carve-Out.

23.     In addition to the Priming Lien and the Junior Lien, on account of the DIP Facility in the amount of the DIP Obligations, DIP Lender is hereby granted superpriority administrative claims and all other benefits and protections to the maximum extent provided under

§§ 364(c)(1) and 503(b)(1) (the "DIP Superpriority Claim"), senior in priority and right and time of payment to any and all unsecured claims and, except for the Carve-Out, senior in priority and right and time of payment to any other administrative or priority claims against the Debtor or its estate, including, without limitation, administrative or priority claims of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 365, 503(b), 506(c), 506(d), 507(b), 546(c), 726, 1113, and 1114, and any other provisions of the Bankruptcy Code. Without limitation of any other rights DIP Lender has or may have in connection with the DIP Superpriority Claim or otherwise, the DIP Superpriority Claim shall be indefeasibly paid in full and in cash from the proceeds of any sale of the Debtor's assets upon the closing of any such sale, after first paying all claims secured by the DIP Collateral.

### Cash Collateral Accounts and Other Cash Collateral

24. The Debtor shall immediately, and shall continue to, segregate, remit, and deposit all Pathward Cash Collateral in the Debtor's possession, custody, or control in respect of the Accounts and which the Debtor may receive in the future in respect of the Accounts in accordance with paragraph 15 hereof. The bank accounts of the Debtor maintained with an approved Federally Insured DIP Depository institution shall be in the name of the Debtor (individually or collectively, the "Cash Collateral Accounts"), and Pathward shall have full dominion and control over each such account that contains the proceeds of the Accounts. Any proceeds of DIP Collateral shall be segregated and held in a separate, segregated Cash Collateral Account apart from any proceeds of the Accounts. For the avoidance of doubt, any advances made by DIP Lender to Debtor under the DIP Facility shall not constitute cash collateral or Pathward Cash Collateral and may be used in accordance with the Budget and this DIP Order.

25. The Debtor shall be prohibited from withdrawing funds from the Cash Collateral Accounts (or any other accounts), except with the express written consent of Pathward

in respect of the Accounts or DIP Lender as to all other Cash Collateral Accounts, as applicable.

26.     Other than the treatment of Pathward Cash Collateral (which shall be subject to section 15 of this DIP Order), all cash collateral, including cash collateral in the form of checks ("Chubb Checks") issued by Chubb Federal Insurance Company ("Chubb"), but expressly excluding Chubb Check no. 6933878  (or its replacement check), which shall be delivered to Loeb (the "Loeb Chubb Check"), shall be turned over and delivered to the Debtor and, in the case of the Chubb Checks, properly endorsed (without recourse) by the holders thereof, to be held by the Debtor as DIP Collateral and distributed in accordance with further order of the Court. In the case of stale checks (those checks that have not been deposited or cashed long after the date on which such check was issued), including the Chubb Checks, at the request of the Debtor (or any purchaser or transferee thereof), the holder of any such stale checks shall cooperate with the Debtor (or any such purchaser or transferee thereof) in taking reasonably requested actions to cause the maker of the stale check to reissue it in the name of the Debtor (or any such purchaser or transferee thereof).

## ADEQUATE PROTECTION

### Budgeted Cash Collateral Usage

27.     So long as no Event of Default (as defined below) shall have occurred, the Debtor is authorized to and shall use the advances under the DIP Facility strictly in accordance with a budget in form and substance acceptable to DIP Lender (the "Budget"). A draft of a budget is attached hereto as **Exhibit 2**.  An updated Budget for each successive four-week period (or longer time agreed between the Debtor and the DIP Lender) shall be provided to DIP Lender not less than one week prior to the end of the time period covered by the then-effective Budget and shall be effective upon agreement by the Debtor and the DIP Lender regarding the updated Budget. There shall be an Event of Default if (i) total disbursements for any weekly time period of the Budget exceeds the total disbursements allowed in the Budget by more than 10%, (ii) total

disbursements for any line item in the Budget for any weekly time period shall exceed the amount in the Budget by more than 10% or $5,000, whichever is greater, or (iii) the Budget amount is exceeded by any amount for certain specific items to be agreed to by the Debtor and the DIP Lender.

28.     Prior to the occurrence of an Event of Default, amounts set forth in the Budget for the fees and expenses of the Debtor's professionals shall be set aside weekly and will be held by the Debtor in a segregated account (the "Professional Fee Escrow").  The amount paid by the Debtor in any month for the fees and expenses of the Debtor's professionals, from advances under the DIP Facility, shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Escrow and shall not exceed the amount set forth in the Budget for such month or in the Professional Fee Escrow.  Amounts set aside in the Professional Fee Escrow shall be credited against the Carve-Out and are not intended to be duplicative thereof.

29.     The consent of the DIP Lender to extend credit extends only to amounts provided under the DIP Facility that are actually incurred in accordance with the Budget or paid to DIP Lender to satisfy DIP Obligations.  Upon the occurrence of an Event of Default, DIP Lender's agreement to extend credit shall automatically and immediately terminate unless such Event of Default is waived in writing by DIP Lender in its sole and absolute discretion.

30.     Except as may specifically be provided in the Budget including, without limitation, for ordinary course payroll, benefits, and expense reimbursements, the Debtor agrees that no transfer of any funds or property shall be made to any of the Debtor's insiders, as that term is defined in Bankruptcy Code §101.

31.     The Budget, and any modifications to, or amendment, or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lender.  The Budget

may be modified in writing only with the prior written consent of the DIP Lender and may be amended or modified without the need for further approval by this Court.

**Replacement and Adequate Protection Liens; Superpriority Administrative Claims**

32. Taking into account all factors in this Case, as adequate protection of Prepetition Lenders' interests in the Prepetition Collateral, and subject and junior only to the Carve-Out and the DIP Liens (both Priming Liens and Junior Liens), Prepetition Lenders are hereby granted, effective as of the Petition Date, valid and automatically perfected adequate protection liens and security interests in and upon the DIP Collateral to secure any diminution in the value that may occur in the Prepetition Collateral after the Petition Date ("Adequate Protection Liens"). The Adequate Protection Liens are junior and subordinate in all respects to the Carve-Out and the DIP Liens (both Priming Liens and Junior Liens) and shall be deemed released and transferred to the cash proceeds of the Sale upon the closing of the Sale.

33. To the extent any Adequate Protection Lien is insufficient to adequately protect the Prepetition Lenders' interests in the Prepetition Collateral from any diminution in value that may occur in the Prepetition Collateral after the Petition Date, the Prepetition Lenders are hereby granted superpriority administrative claims and all other benefits and protections to the maximum extent provided under Bankruptcy Code §§ 507(b) and 503(b)(1), junior in priority and time or right of payment to the DIP Superpriority Claim granted to DIP Lender under Bankruptcy Code §364(c)(1) and 503(b)(1), but senior in priority and time or right of payment to any and all unsecured claims and, except for the Carve-Out, senior in priority and time or right of payment to any other administrative or priority claims against the Debtor or its estate, including, without limitation, administrative or priority claims of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 365, 503(b), 506(c), 506(d), 507, 546(c), 726, 1113, and 1114, and

any other provisions of the Bankruptcy Code.

## Automatic Perfection

34.     This DIP Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the DIP Liens in, on and against the DIP Collateral granted and created in this DIP Order, and such DIP Liens shall constitute valid, automatically perfected, and unavoidable security interests and liens, with the priorities granted in this DIP Order, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, mortgages, or other documents that might otherwise be required under federal, state or local law in any jurisdiction or the taking of possession, giving of any notice, or taking any other action to validate or perfect the DIP Liens granted to DIP Lender by this DIP Order and DIP Facility Documents.

35.     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the DIP Liens granted and created by this DIP Order or otherwise would impose filing or registration requirements with respect to such DIP Liens, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

36.     If DIP Lender shall, in its sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents, or the giving of any notice, to further evidence perfection of its interests in property of the estate or the DIP Collateral, DIP Lender on its own, or, upon the request of DIP Lender, the Debtor, is authorized and directed to execute or file, or cause to be executed or filed, all such financing statements or other documents, and the filing, recording, or service or other notice (as the case may be) of such financing statements or similar documents shall be deemed to

have been made at the time of and on the Petition Date, and the signatures of any persons designated by the Debtor, whether by letter to DIP Lender or by appearing on any one or more of the agreements or other documents respecting the DIP Liens granted in this DIP Order, shall bind the Debtor and its estate. DIP Lender may, in its sole and absolute discretion, file a certified copy of this DIP Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this DIP Order. By virtue of the terms of this DIP Order, to the extent that DIP Lender has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the name of the Debtor, such filings shall be deemed to properly perfect its DIP Liens granted under this DIP Order without further action by DIP Lender.

**Authorization To Act**

37.     The Debtor is hereby authorized and directed to perform all acts, take any action, and execute, and comply with the terms of such other documents, instruments and agreements, as DIP Lender may request or require as evidence of and for the perfection and protection of the DIP Collateral, or that may be otherwise deemed necessary or desirable by DIP Lender to effectuate the terms and conditions of this DIP Order and the DIP Facility.

38.     Until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the DIP Facility Documents or this DIP Order, and without further order of the Court: (a) the Debtor shall use the DIP Facility proceeds strictly in accordance with the terms of the Budget and the other terms of this DIP Order; (b) the Debtor shall not, without prior order from the Court (after notice to DIP Lender), engage in any transaction that is not in the ordinary course of the Debtor's business; provided however that this clause (b) is not intended to permit or authorize the Debtor to move this Court to reconsider, alter, amend, strike or otherwise

directly or indirectly affect any provision of this DIP Order without the prior written consent of DIP Lender; and (c) the Debtor shall timely comply with all of the covenants and other provisions set forth in the DIP Facility Documents.

## Prepetition Liens

39.     The Debtor, or any other party in interest other than the DIP Lender, shall have the right to object to the validity, priority, or extent of any Prepetition Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto.  Except to the extent expressly set forth in this DIP Order, the DIP Liens granted to DIP Lender pursuant to this DIP Order shall not at any time be (a) made subject or subordinated to, or made *pari passu* with, the Prepetition Liens or any other lien or security interest existing on the Petition Date, or any other claim, lien, or security interest created under Bankruptcy Code §§ 363 or 364; or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code § 551.

## No Additional Liens

40.     Until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the DIP Facility Documents and this DIP Order, the Debtor shall not be permitted or authorized to obtain credit secured by a lien or security interest in the DIP Collateral, other than the DIP Facility and DIP Liens, without the prior written consent of DIP Lender or, if such lien or security interest is to be granted on a fully subordinated basis, both in terms of lien priority and time or right of payment to the DIP Liens and the DIP Superpriority Claim, order of the Court upon reasonable notice.

## Automatic Stay

41.     The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtor and the DIP Lender to carry out all acts and take all actions necessary to

implement and enforce the DIP Facility, DIP Facility Documents, and this DIP Order; (b) all acts, actions, and transfers contemplated herein, and the transfer of funds and payments to DIP Lender by the Debtor as provided herein; and (c) consistent with the terms of this DIP Order, DIP Lender, at its option, to pursue its rights and remedies as to the DIP Collateral in accordance with the DIP Facility Documents, the DIP Order, and applicable law.

### Collateral Insurance and Deposits

42.     The Debtor shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the DIP Collateral, and in accordance with the DIP Facility Documents (covering such risks in amounts as shall be satisfactory to DIP Lender and shall name DIP Lender as loss payee thereunder). The Debtor's interest in the DIP Collateral is covered by Loeb's force placed insurance which shall be deemed sufficient for all purposes in this Case; provided, however, that any insurance proceeds received thereunder (other than the Loeb Chubb Check) shall constitute DIP Collateral and, upon receipt by Loeb or any other person or entity, shall be paid in accordance with the priorities set forth in paragraph 21 of this DIP Order.

43.     To the extent the Debtor has made or makes any deposits for the benefit of utility companies or any other entity (and the Debtor shall not make any such deposits which are not included in the Budget without first obtaining consent of DIP Lender), such deposits shall be, and hereby are, upon any return of same to the Debtor, subject to the DIP Liens of the DIP Lender in respect of the DIP Facility granted by this DIP Order.

### Reporting Requirements

44.     The Debtor is authorized and directed to provide to DIP Lender (and its counsel) all of the documentation and reports required under the DIP Facility Documents, unless DIP Lender waives or modifies such requirements in writing.

45.     DIP Lender, Prepetition Lenders and their respective agents and advisors

shall have full access, upon reasonable notice during normal business hours, to the Debtor's business records and business premises, and to the DIP Collateral and Prepetition Collateral, to enable any or all of the DIP Lender or Prepetition Lenders or their respective agents and advisors to (a) review, appraise, and evaluate the physical condition of the DIP Collateral and Prepetition Collateral; and (b) inspect and review the financial records and all other records of the Debtor concerning the operation of the Debtor's business and the progress of the Sale. The Debtor shall fully cooperate with any or all of the DIP Lender or Prepetition Lenders regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to any or all of the DIP Lender or Prepetition Lenders, as applicable, and their respective agents and advisors to conduct such reviews, evaluations, and inspections.

**Interest, Fees, Costs And Expenses Of DIP Lender**

46.     Interest shall accrue and be paid on all advances made by DIP Lender under this DIP Order at the non-default, simple rate of 8% per annum (10% on and after the occurrence of an Event of Default under this DIP Order), and, in addition thereto, Debtor shall pay a DIP Facility fee in the amount of 4% of the total DIP Facility; and, reimburse DIP Lender for all reasonable fees, costs, charges, and expenses, including reasonable attorneys' fees and expenses, incurred by DIP Lender after the occurrence of an Event of Default in order to enforce and collect the DIP Obligations (as applicable, or that are otherwise incurred as a result of the Case, collectively, the "DIP Lender's Costs"). The DIP Lender's Costs shall be DIP Obligations owed to DIP Lender, regardless of whether or not such DIP Lender's Costs are set forth in the Budget and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Facility under this DIP Order and the DIP Facility Documents. For the avoidance of doubt, DIP Lender's Costs and DIP Obligations shall not include the costs and expenses, including reasonable attorneys' fees and expenses, incurred in negotiating and documenting the DIP Facility.

Nothing in this DIP Order waives any right of the (a) DIP Lender to request at any time that the Court provide additional or further protection of its interests in the DIP Collateral (including its cash collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate, or (b) Debtor to contest any such additional request.

**Professional Fees of The Estate**

47.    DIP Lender and Prepetition Lenders hereby consent to the professionals retained pursuant to orders of this Court by the Debtor (the "Estate Professionals") retaining the $55,093.25 retainers held as of the Petition Date, provided that such retainers are used first for payment of allowed fees and expenses of such firms holding such retainers prior to any payment from the Professional Fee Escrow.  DIP Lender and Prepetition Lenders consent, subject to the terms and conditions set forth in this DIP Order, to a carve out from the DIP Collateral and Prepetition  Collateral for the payment of (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 and (ii) the allowed professional fees and expenses of Estate Professionals in an amount not to exceed (a) the amounts set forth in the Budget and paid into the Professional Fee Escrow to be used to pay fees earned and expenses incurred prior to the occurrence of an Event of Default, plus (b) an aggregate amount not to exceed $25,000 to be used to pay fees earned and expenses incurred subsequent to the occurrence of an Event of Default (collectively, the "Carve-Out").  For the avoidance of doubt, DIP Lender shall have no obligation to advance funds under the DIP Facility or otherwise to pay or satisfy all or any portion of the Carve-Out.  Rather, the Carve-Out is the first and senior Lien on the DIP Collateral. Payments from the Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of Estate Professionals.  So long as no Event of Default shall have occurred and

be continuing, the Debtor shall be permitted to pay Budgeted compensation and reimbursement of expenses allowed by the Court and payable under §§ 330 and 331, as the same may be due and payable and from the Professional Fee Escrow. Other than the Carve-Out set forth above, DIP Lender and Prepetition Lenders do not consent to any carve-out from the DIP Collateral or Prepetition Collateral for payment of any fees and expenses of the Estate Professionals.

48.     Until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the DIP Facility Documents, any remaining unapplied retainer funds at the conclusion of an Estate Professional's engagement shall be immediately returned as DIP Collateral and distributed in accordance with the priorities set forth in paragraph 21 of this DIP Order. Any and all payments of fees and expenses to any Estate Professionals or use of cash collateral shall constitute diminution in the value of the DIP Collateral for all purposes. DIP Lender expressly retains the right to object to any fees or expenses of any Estate Professional as to reasonableness or on any other grounds.

49.     Notwithstanding the foregoing, and irrespective of the Carve-Out, in no event shall the Carve-Out, the Professional Fee Escrow, or the proceeds of any loans, advances, or other funds made available by the DIP Lender to or for the benefit of the Debtor (including from cash collateral) be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any Estate Professional or other persons for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the DIP Facility, the DIP Facility Documents, this DIP Order, or any liens or security interest granted thereby or with respect thereto, including the DIP Liens, or any other rights or interests of the DIP Lender under any DIP Facility Document; (b) investigating, asserting, prosecuting, or the joinder in any claims or causes of action against the DIP Lender, or any of its

officers, directors, employees, affiliates, agents, attorneys, or equity holders (whether arising under state law, the Bankruptcy Code, or any other federal or foreign law); (c) preventing, enjoining, hindering, or otherwise delaying the DIP Lender's enforcement of the DIP Facility Documents, or this DIP Order, or any realization upon any DIP Collateral; (d) incurring indebtedness except as permitted by the DIP Facility Documents or this DIP Order; (e) modifying the DIP Lender's rights under any DIP Facility Documents or this DIP Order without DIP Lender's prior written consent; (f) asserting or declaring any liens or security interests granted under any of the Prepetition Claim Documents, the DIP Facility Documents, or this DIP Order to have a priority other than the priority set forth in this DIP Order; (g) asserting, prosecuting, or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the DIP Liens of DIP Lender in the DIP Collateral or any portion thereof without the DIP Lender's prior written consent; (h) asserting or declaring any of the DIP Facility Documents, or this DIP Order to be invalid, not binding, or unenforceable in any respect; (i) selling any DIP Collateral except as specifically permitted in the DIP Facility Documents or this DIP Order or the Sale; (j) payment of any other claims that are, or may be senior to, or *pari passu* with, any of the Carve-Out; or (k) any fees of a chapter 7 trustee.

**No Surcharge**

50.      No costs or expenses of administration which have or may at any time be incurred in this Case (or in any successor chapter 7 case) shall be charged against any of the DIP Lender or DIP Collateral or Prepetition Collateral pursuant to Bankruptcy Code § 506(c), or under the "equities of the case" exception to Bankruptcy Code §552(b), or any similar principle of law, or otherwise, without the prior written consent of the DIP Lender and, if applicable, the Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by

any of the DIP Lender or any Prepetition Lender. Neither DIP Lender nor any Prepetition Lender shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral.

### Events Of Default/Remedies

51.     The occurrence of any of the following shall constitute an Event of Default under this DIP Order upon notice to the Debtor, Loeb, Pathward and the United States Trustee by DIP Lender: (a) any default, violation, or breach by Debtor of any of the terms of this DIP Order; (b) the occurrence of the Expiration Date (as defined below); (c) the failure to close the Sale within 90 days after the entry of this DIP Order unless such time period is extended with the consent of the DIP Lender; (d) any challenge to the extent, validity, priority, or unavoidability of the DIP Liens securing the DIP Facility is commenced by Debtor or an order is entered sustaining any such challenge commenced by any party other than the Debtor; (e) the occurrence of any default or Event of Default under any DIP Facility Document; (f) any representation or warranty made by Debtor under this DIP Order or the DIP Facility proves to have been false, materially inaccurate, or materially misleading; (g) termination of, or failure in good faith to pursue, support or prosecute, any Asset Purchase Agreement filed or to be filed with the Court in connection with the Sale; (h) the Debtor's solicitation, or receipt and acceptance, of a higher or better offer than the Asset Purchase Agreement filed or to be filed with this Court in connection with the Sale; or (i) the failure of Debtor to make any payments that are set forth in the Budget and that are required to be paid under this DIP Order (any of the foregoing events of default being referred to in this DIP Order, individually, as an "Event of Default", or collectively, as "Events of Default").

52.     Immediately upon the occurrence of any Event of Default, and at all times thereafter, and without further act or action by DIP Lender, or any further notice, hearing, or order of this Court: (a) DIP Lender may terminate any and all obligations of DIP Lender in connection

with the DIP Facility or under this DIP Order and the other DIP Facility Documents; (b) DIP Lender may declare all or any part of the DIP Facility to be immediately accelerated and due and payable for all purposes, rights, and remedies; (c) the Debtor's authority to use cash collateral shall immediately terminate; (d) the DIP Lender shall be under no obligation to make any further advances to the Debtor under the DIP Facility or otherwise; and (e) the DIP Lender may, upon five calendar days written notice to the Debtor, Loeb, Pathward, and the United States Trustee, and without the need for further relief from the stay or other relief from this or any other court, exercise the rights and remedies available under this DIP Order, any other DIP Facility Document, and/or applicable law (including the Uniform Commercial Code as in effect in any jurisdiction), including foreclosing upon and selling all or any portion of the DIP Collateral.  The actions described in clauses (a) through (e) above may be taken without further order or application to the Bankruptcy Court as the DIP Lender shall elect in its discretion, and the automatic stay is hereby modified and vacated to the extent necessary to permit such actions, so long as no order prohibiting such action is entered by the Bankruptcy Court during the above-referenced five-calendar-day period.  The sole issue that may be raised by any party during such five-calendar-day period shall be limited to whether an Event of Default has occurred. The DIP Lender shall be entitled to apply the payments or proceeds of the DIP Collateral to the DIP Obligations in accordance with the priorities set forth in paragraph 21 of this DIP Order. Notwithstanding the occurrence of an Event of Default or anything in this DIP Order, all of the rights, remedies, benefits, and protections provided to the DIP Lender under this DIP Order shall survive any Event of Default.

     53. Furthermore, upon the occurrence of any Event of Default, and after the giving of five-calendar-day notice by DIP Lender to the Debtor, Loeb, Pathward, and the United States Trustee, then without further act or action by DIP Lender, or any further notice, hearing, or

order of this Court, the Automatic Stay shall be immediately terminated in respect of DIP Lender and DIP Lender shall be and is hereby authorized, in its sole and absolute discretion, to take any and all actions and remedies that DIP Lender may deem appropriate to proceed against, take possession of, protect, and realize upon the DIP Collateral and any other property of the estate of Debtor, including, without limitation:  (i) any right or remedy set forth in the DIP Facility Documents, including, without limitation, in the DIP Security Agreement or in this DIP Order; (ii) any right or remedy that the DIP Lender may deem appropriate to proceed against, take possession of, foreclose upon, sell (in whole or in part), protect, and realize upon the DIP Collateral and any other property of any of the Debtor's estate upon which the DIP Lender has been or may hereafter be granted liens and security interests, including the DIP Liens, to obtain repayment of the DIP Obligations and the DIP Facility; (iii) the commencement of actions for specific performance and for the foreclosure upon any DIP Collateral; (iv) the sale of the DIP Collateral, and the exercise, without interference, and, if necessary, as the attorney-in-fact for Debtor, of any rights of Debtor in the management, possession, operation, protection, or preservation of the DIP Collateral; (v) the receipt of proceeds from the sale of any DIP Collateral directly to the DIP Lender; (vi) if appropriate, the right to seek and obtain the appointment of a receiver over any or all of the Debtor and/or the DIP Collateral; and (vii) the right to reproduce, copy, download, or otherwise take possession of any records or data, tangible or electronic, constituting DIP Collateral; provided that the DIP Lender shall not be obligated to take title to any of the DIP Collateral in the pursuit of any of the DIP Lender's rights and remedies and the Debtor shall cooperate with the DIP Lender in conjunction with the exercise of any right and the pursuit of any remedy by DIP Lender, without limitation.

54.     Upon or after the occurrence of any Event of Default, DIP Lender may, in

its sole and absolute discretion, advance funds to the Debtor, and all such advances (i) shall not constitute a waiver, limitation, or modification of DIP Lender's rights and remedies pursuant to the DIP Facility Documents, this DIP Order, and applicable law and (ii) shall be and hereby are granted all of the protections granted to DIP Lender under this DIP Order in connection with the DIP Facility.

## Other Terms

55.     The DIP Lender shall have the right to credit and offset all or any portion of the DIP Obligations against the purchase price in the Sale (or any other sale or liquidation of all or any portion of the DIP Collateral in which the gross purchase price is no less than $3,550,000, and any bid procedures shall so provide) under Bankruptcy Code §363(k) or otherwise, whether the DIP Obligations are secured in whole or in part by the Priming Lien or in whole or in part by the Junior Lien or both. The Prepetition Lenders (on behalf of themselves and their successors and assigns, if any) have consented thereto, and the Court hereby acknowledges and approves such consent. DIP Lender shall have the right to credit and offset the full amount of the DIP Obligations against the purchase price of all or any portion of the DIP Collateral in the Sale, (i) without any obligation or requirement of DIP Lender to pay or otherwise satisfy any liens senior to the DIP Liens in, on or against the DIP Collateral, (ii) without such senior liens surviving the Sale of the DIP Collateral in, on or against the DIP Collateral, and (iii) with all such senior liens being transferred to the cash proceeds of the Sale, and the Prepetition Lenders (on behalf of themselves and their successors and assigns, if any) have consented thereto, and the Court hereby acknowledges and approves such consent.    These rights shall not be modified, altered or eliminated by or in any event without the prior written consent of DIP Lender.  DIP Lender is also authorized to assign its right to credit and offset the DIP Obligations in whole or in part to any affiliate(s) or assign(s) of DIP Lender, to be exercised by such affiliate(s) or assign(s) in connection

with the Sale (or any other sale or liquidation of all or any portion of the DIP Collateral). Each of the Prepetition Lenders (on behalf of itself and its successors and assigns, if any) waives and releases any right it may have under section 363(k) of the Bankruptcy Code or otherwise to credit bid all or any portion of its Prepetition Lenders' Claims in the Sale of the DIP Collateral.

56. The Debtor and the DIP Lender are authorized to implement, in accordance with the terms of the DIP Facility Documents, any modifications or amendments to any DIP Facility Document which they believe in good faith are not material and adverse to the Debtor. Any modifications or amendments of any DIP Facility Document which Debtor and DIP Lender in good faith believe are material and adverse to any of the Debtor, Loeb or Pathward shall be subject to prior approval by this Court upon motion by the Debtor; *provided* that the DIP Lender shall be entitled to request approval of the Court with respect to any modification or amendment. For the avoidance of doubt, all amendments and modifications to any DIP Facility Document shall require the approval of DIP Lender.

57. Other than the Carve-Out and as expressly set forth in paragraphs 21 through and including 23 above, no priority or other claims shall be allowed that are or will be prior to or on parity with the DIP Liens or DIP Superpriority Claims of DIP Lender against the Debtor and its estate.

58. No obligations incurred or payments or other transfers made by or on behalf of Debtor on account of the DIP Obligations or the DIP Facility shall be avoidable or recoverable from DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law. The DIP Lender shall not be required to file a proof of claim in this Case with respect to the DIP Obligations.

59. Except for the Sale (which shall be governed by the Asset Purchase

Agreement filed or to be filed in connection with the Sale Motion), the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any of the DIP Collateral without the prior written consent of DIP Lender.

60. All post-petition advances under the DIP Facility Documents are made in reliance on this DIP Order and so long as the DIP Obligations remain unpaid, there shall not at any time be entered in the Case any other order that, except as consented to by DIP Lender in writing, (a) authorizes the sale, lease, or other disposition of the DIP Collateral unless the cash proceeds will indefeasibly pay the DIP Obligations in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in the DIP Collateral, or (c) grants to any claim a priority administrative claim status that is equal or superior to the DIP Superpriority Claim.

61. The terms hereunder and under the DIP Facility Documents, the DIP Liens granted to DIP Lender under this DIP Order, and the rights of DIP Lender pursuant to this DIP Order with respect to the DIP Collateral, shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor without the prior written approval of DIP Lender.

62. The terms and provisions of this DIP Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting the Case to a case under chapter 7 or dismissing the Case, except for any obligations of DIP Lender under the DIP Facility Documents (all of which shall immediately terminate upon entry of such an order). The terms and provisions of this DIP Order, as well as the priorities in payment, liens, and security interests granted pursuant to this DIP Order and the DIP Facility Documents, shall continue in this and any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, liens,

and security interests shall maintain their priority as provided by this DIP Order until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the DIP Facility Documents and this DIP Order and DIP Lender shall have no further obligation or financial accommodation to the Debtor.

63. The provisions of this DIP Order shall inure to the benefit of the Debtor, DIP Lender and the Prepetition Lenders, and they shall be binding upon (a) the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case, and (b) all creditors of the Debtor and other parties in interest.

64. If any or all of the provisions of this DIP Order are hereafter modified, vacated, or stayed without the prior written agreement of DIP Lender, such modification, vacation, or stay shall neither affect (a) the validity of any obligation, indebtedness, or liability incurred by Debtor to DIP Lender before the effective date of such modification, vacation, or stay, nor (b) the validity, enforceability, or priority of any security interest, lien, priority, or other protection authorized, granted, or created hereby or pursuant to any of the DIP Facility Documents. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by Debtor to DIP Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this DIP Order, and DIP Lender shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the DIP Facility Documents with respect to all such indebtedness, obligations, or liabilities.

65. To the extent the terms and conditions of the DIP Facility Documents are in

express conflict (as opposed to being additive, limiting, or more specific than this DIP Order) with the terms and conditions of this DIP Order, the terms and conditions of this DIP Order shall control.

66.    No approval, agreement, or consent requested of DIP Lender by the Debtor pursuant to the terms of this DIP Order or otherwise shall be inferred from any action, inaction, or acquiescence of DIP Lender other than a written instrument acceptable to DIP Lender that is signed by DIP Lender and expressly provides such approval, agreement, or consent, without limitation. Nothing herein shall in any way affect the rights of DIP Lender as to any non-Debtor entity, without limitation.

67.    Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify, or prejudice the claims, rights, protections, privileges, and defenses of DIP Lender afforded pursuant to the Bankruptcy Code.

68.    This DIP Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by DIP Lender and the Debtor without the necessity of entry into the docket sheet of this case.  To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

69.    This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this DIP Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

70.    All headings in this DIP Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

71.    In the event a person who is the holder of a lien or claim that is junior or subordinate to the DIP Liens or DIP Superpriority Claims of the DIP Lender receives the proceeds

of such DIP Collateral prior to complete and indefeasible satisfaction of all DIP Obligations under the DIP Facility Documents and all obligations under the Prepetition Claim Documents, and termination of the commitments in accordance with the DIP Facility Documents, such junior or subordinate holder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and Prepetition Lenders, as applicable, and shall immediately turnover such proceeds for application to the DIP Obligations under the DIP Facility Documents and, thereafter, the Prepetition Lenders under the Prepetition Claim Documents.

72. This DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have under the Bankruptcy Code or applicable law, or any prior order of this Court, or to bring or be heard on any matter brought before this Court.

73. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

**Reservation Of Rights Of Parties In Interest/Deadline To Act**

74. Parties in interest (other than the Debtor and DIP Lender) that have or have been granted standing shall have until the Challenge Deadline (as defined below) to file a complaint pursuant to Bankruptcy Rule 7001 asserting a claim or cause of action against the Prepetition Lenders or otherwise challenging the extent, validity, perfection, amount, or allowability of any Prepetition Lender's claims or security interests as of the Petition Date. Such complaint, if filed, shall be diligently pursued by such party in interest. For the avoidance of doubt, the Carve-Out shall not include any fees and expenses incurred by or on behalf of any such party in interest in connection with any such complaint or action seeking standing to assert a complaint. The term "Challenge Deadline" shall mean the date that is one day before the hearing on the Motion to Sell. Any challenge concerning the priority only of the any Prepetition Lender's rights

in the Prepetition Collateral is not covered by this paragraph and may be brought within such time limits as may be set by the Court in a future order.

75.     Notwithstanding any due diligence period granted to other parties in interest herein, as a result of the Debtor's review of the Prepetition Claim Documents and the facts related thereto, the Debtor shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action (whether affirmatively, offensively, or defensively by way of setoff or otherwise) arising out of or related to the Prepetition Claim Documents, the DIP Facility Documents, or any transactions or dealings related to same.

### Notice: Expiration Date/Maturity

76.     The Debtor's counsel shall serve this DIP Order on all of the following parties:  (a) the Office of the United States Trustee; (b) the attorneys for DIP Lender; (c) all creditors known to the Debtor who have or may assert liens against any of the Debtor's assets, including each of the Prepetition Lenders; (d) the United States Internal Revenue Service; (e) the 20 largest unsecured creditors of the Debtor; (f) any party in interest who has filed a notice of appearance or upon whom service must be effected under the Rules or the LBR; and (g) all parties required to be served pursuant to Rule 2002, and such notice shall be sufficient and adequate, and no other or further notice shall be required.

77.     DIP Lender's consent and commitment to provide credit under the DIP Facility Documents and this DIP Order, subject to satisfaction of the conditions precedent set forth in paragraph 16, and the funding and Budget limitations above, shall be effective upon entry of this DIP Order to and including the earliest of: (a) notice of the occurrence of an Event of Default, (b) 90 days after the date of this DIP Order at 4:00 p.m. (Central Time) on such date, or (c) the closing of the Sale pursuant to the entry of a Bankruptcy Court order approving the Sale, or another sale of substantially all of the assets of the Borrower (the earliest of (a), (b), or (c), the "Expiration

Date"), at which time all DIP Obligations shall mature and be due and payable, and DIP Lender's obligation to continue funding the DIP Facility under the DIP Facility Documents and DIP Order shall terminate (unless extended by written agreement of the Debtor and DIP Lender, a copy of which, together with an updated Budget, shall be promptly filed with this Court by the Debtor).

78.     This DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this DIP Order on the Court's docket in this case.

# # #

APPROVED FOR ENTRY:


____/s/Mark A. Craige_____
Mark A. Craige, OBA No. 1992
Crowe & Dunlevy, P.C.
6th Floor
222 North Detroit Avenue
Tulsa, Oklahoma 74120
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
mark.craige@crowedunlevy.com

*Attorneys for Debtor*

# EXHIBIT 1

# SECURITY AGREEMENT

# **DIP SECURITY AGREEMENT**

This DIP Security Agreement ("<u>Agreement</u>") dated December __, 2024, is made by Oklahoma Forge, LLC, as debtor and debtor in possession ("<u>Debtor</u>") in case no. 24-11191-M (the "<u>Bankruptcy Case</u>") to and in favor of Forge Resources Group, an Illinois corporation ("<u>DIP Lender</u>"), to secure the payment and performance of all "<u>DIP Obligations</u>" as defined in the Order (I) Authorizing Post-Petition Credit, (II) Granting Senior Secured Liens and Superpriority Claims under Sections 364(c) and (d) of the Bankruptcy Code, (III) Granting Adequate Protection Liens, and (IV) Granting Related Relief entered on December __, 2024 (the "<u>DIP Order</u>" and "<u>DIP Obligations</u>").

1.      <u>Security Interest</u>.  To secure payment and performance of the DIP Obligations, Debtor hereby grants to DIP Lender a security interest and other lien in all of the DIP Collateral (as defined in the DIP Order), including, without limitation, all of Debtor's present and future personal property, including, without limit, chattel paper (whether tangible or electronic), general intangibles (including payment intangibles and software), instruments (including promissory notes), documents, deposit accounts, money, investment property, letters of credit, letter of credit rights, supporting obligations (including guaranties), goods (including inventory, equipment, and fixtures) and all imbedded software, licenses to use the property or rights of any other person, copyrights, patents, trademarks, trade names, refunds and claims for refunds of taxes, and commercial tort claims now or later specifically identified by Debtor, and all proceeds and products of any of the foregoing).  Notwithstanding the foregoing, DIP Collateral shall not include (a) rights or causes of action under §§ 544, 547, and 548 of the Bankruptcy Code in the Bankruptcy Case and the proceeds thereof or (b) accounts and the proceeds thereof.

2.      <u>Title; Perfection</u>.  Debtor warrants that, except as to certain petition security interests held by Loeb Term Solutions, LLC and Pathward, National Association (together, "<u>Prepetition Lenders</u>"), it owns the DIP Collateral free and clear of all liens, claims, and encumbrances of any kind or nature.  Until the DIP Obligations are paid in full, Debtor shall: (a) not execute or file a financing statement or security agreement covering the DIP Collateral to anyone other than DIP Lender; (b) not sell or dispose of any DIP Collateral except in the ordinary course of Debtor's business or to the DIP Lender pursuant to an order entered in the Bankruptcy Case granting Debtor authority to sell the DIP Collateral to DIP Lender; (c) not change its legal name or the location of the DIP Collateral; (d) sign and deliver any financing statements, control agreements, or other instruments as DIP Lender may from time to time require to comply with the Uniform Commercial Code as in effect in the State of Michigan (the "<u>UCC</u>") or other applicable law to perfect, preserve, protect and enforce the security interest of DIP Lender in the DIP Collateral and pay all costs of filing such statements or instruments; (e) permit DIP Lender to inspect or audit the DIP Collateral and all related records at any time; and (f) reimburse and indemnify DIP Lender for and against all losses, costs, damages and claims of any nature incurred by DIP Lender in connection with the DIP Obligations, this Agreement or the DIP Collateral including costs incurred in performing Debtor's obligations under this Agreement.

3.      <u>Care of DIP Collateral</u>.  Debtor shall: (a) keep in effect all licenses, permits and franchises required by law or contract relating to the DIP Collateral; (b) maintain insurance on the DIP Collateral against casualty loss under a policy naming DIP Lender as the "lender loss payee" or otherwise complying with the insurance obligations set forth in the DIP Order; (c) keep the DIP Collateral in good repair and replace any lost or damaged DIP Collateral; (d) at all times warrant and defend Debtor's ownership and possession of the DIP Collateral; (e) except for the liens of the Prepetition Lenders, keep the DIP Collateral free from all liens, claims, encumbrances and security interests; (f) pay when due all taxes, license fees, and other charges upon the DIP Collateral; and (g) not misuse, conceal or in any way

use or dispose of the DIP Collateral unlawfully or contrary to the provisions of this Agreement or of any insurance coverage.

4.      Default; Remedies.  If an Event of Default occurs under the DIP Obligations, the DIP Order, or this Agreement, then (a) DIP Lender may declare the DIP Obligations immediately due and payable and, subject to the DIP Order, DIP Lender may exercise any of the remedies of a secured party under the DIP Order, UCC or other applicable law, and (b) Debtor agrees to reimburse DIP Lender upon demand for any and all costs and expenses (including, without limit, court costs, legal expenses and reasonable attorneys' fees, whether or not suit is instituted and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in enforcing or attempting to enforce this Agreement or the DIP Order or in exercising or attempting to exercise any right or remedy under this Agreement or the DIP Order or incurred in any other matter or proceeding related to this Agreement. DIP Lender may apply the proceeds of any collection or disposition of any of the DIP Collateral first to costs and expenses of collection or disposition and then to the DIP Obligations in any order it determines to be appropriate.  Debtor agrees, upon request of DIP Lender, to assemble the DIP Collateral and all related records and make it available to DIP Lender at any place which is reasonably convenient for DIP Lender.  Debtor grants DIP Lender permission to enter upon any premises owned or occupied by Debtor for the purpose of taking possession of the DIP Collateral.

5.      General Provisions.  The waiver by DIP Lender of any breach of any provision of this Agreement or warranty or representation herein set forth will not be construed as a waiver of any subsequent breach. The failure to exercise any right hereunder by DIP Lender will not operate as a waiver of such right.  All of DIP Lender's rights and remedies are cumulative.  Debtor may not assign its rights or delegate its duties hereunder without DIP Lender's written consent.  This Agreement may not be altered or amended except by a writing signed by all the parties hereto.  This Agreement will be governed by and construed and interpreted in accordance with the laws of the State of Michigan.  Any provision hereof found to be invalid will not invalidate the remaining provisions.  All words used herein will be construed to be of such gender and number as the circumstances require.  This Agreement binds Debtor and its respective successors and assigns and inures to the benefit of DIP Lender and its successors and assigns.  Electronic Signatures.  Parties to this Agreement may execute, adopt, or authenticate it by use of electronic signatures. Executed copies of this Agreement created, generated, sent, communicated, received, or stored by any electronic means shall be valid, binding, and enforceable and given full legal effect.

6.      **Waiver of Jury Trial**.  *Debtor and DIP Lender each acknowledges that the right to trial by jury is a constitutional one, but that it may be waived.  Each party, after consulting (or having had the opportunity to consult) with counsel of its choice, knowingly and voluntarily, and for their mutual benefit, waives any right to trial by jury in the event of litigation regarding the performance or enforcement of, or in any way related to, this agreement or the DIP Obligations.*

This DIP Security Agreement is dated and effective on the date first above written.

Debtor's address and the location of the DIP Collateral:

[To Be Completed]

**Debtor:** Oklahoma Forge, LLC, as debtor and debtor in possession

By: _____
Name: _____
Title: _____

[

# EXHIBIT 2

## DIP BUDGET

# Oklahoma Forge
## Cash Forecast
### At 11/19/24

| Week Ending | INITIAL THREE WEEKS | | | | FOLLOWING FOUR WEEKS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | After Filing Date 11/22/24 | 11/29/24 | 12/6/24 | 12/13/24 | 12/20/24 | 12/27/24 | 1/3/25 | 1/10/25 | 1/17/25 | 1/24/25 |
| **Collections** | | | | | | | | | | |
| Continental | | | | | | 1,946 | | | | |
| Hadady | | | | | 4,662 | 2,678 | | | | |
| J&J Alloys | | | | | | | | | | |
| Less Pathward 100% | | | | | (4,662) | (4,624) | | | | |
| Miscellaneous | 2,326 | | | | | | | | | |
| Projected Collections | 2,326 | | | | 250,000 | | | | | |
| DIP Loan Proceeds | | | | | 250,000 | | | | | |
| **Disbursements** | | | | | | | | | | |
| ADP Payroll - all | 2,452 | | | | 17,784 | | 10,461 | | 10,461 | |
| Water / Sewer - Office | | | | | 550 | | | | | 250 |
| Electric - Office | | | | | 450 | | | | | 500 |
| Gas - Office | | | | | 500 | | | | | 500 |
| Gas - Shop - Deposit | | | | | 25,718 | | | | | |
| Insurance - Liability/ Prop | | | | | 750 | | | | | 100 |
| Insurance - Work Comp | | | | | 300 | | | | | 100 |
| Insurance - Group | | | | | 5,469 | 5,469 | 100 | 100 | 100 | |
| Office Supplies / Misc | | | | | 300 | 300 | | | | 250 |
| Copier/Printer/Fax | | | | | 250 | 100 | | | | 250 |
| Telephone | | | | | 150 | 250 | | | | |
| Cox - Internet | | | | | 100 | 100 | | | | |
| Hummingbird - IT | | | | | 150 | 150 | | | | |
| Leadline - Website | | | | | | | | | | |
| Rent | | | | | 850 | | | | | |
| Grounds / Trash / Misc | | | | | | 350 | | | | |
| Bank Charges | 359 | | | | 50 | 50 | 250 | | | 50 |
| Employment Contracts | | | | | 37,410 | | 37,410 | | | |
| Legal | | | | | 500 | | | | | |
| Payment - Loeb | | | | | | | | | | 60,000 |
| Trustee Fees | | | | | | | | | | 460 |
| Miscellaneous | | | | | 3,000 | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Total Disbursements | 2,811 | | | | 94,131 | 8,769 | 49,221 | 1,100 | 11,561 | 63,860 |
| Net Cash Flow | (485) | | | | 155,869 | (8,769) | (49,221) | (1,100) | (11,561) | (63,860) |
| Beginning Cash | 3,350 | 2,865 | 2,865 | 2,865 | 2,865 | 158,734 | 149,965 | 100,744 | 99,644 | 88,083 |
| Ending Cash | 2,865 | 2,865 | 2,865 | 2,865 | 158,734 | 149,965 | 100,744 | 99,644 | 88,083 | 24,223 |