IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| OKLAHOMA FORGE, LLC, d/b/a | ) | Case No. 24-11060-M |
| OKLAHOMA FORGE, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) APPROVING DISTRIBUTION OF SALE PROCEEDS, AND (3) GRANTING RELATED RELIEF**

Oklahoma Forge, LLC, as Debtor and Debtor in Possession ("Debtor") in the above-captioned chapter 11 case, pursuant to 11 U.S.C. §§ 105, 363(b), 363(f) and 365[1], files this *Motion for an Order (1) Authorizing Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests, (2) Approving Distribution of Sale Proceeds and (3) Granting Related Relief* (the "Motion"), and requests the Court to enter the proposed order granting this Motion in the form attached as **Exhibit A** ("Proposed Sale Order").

In support of this Motion, the Debtor respectfully states as follows:

I. **JURISDICTION, VENUE AND STATUTORY PREDICATES**

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure. References to "LBR" are to the Local Rules of Bankruptcy Practice of the United States District Court for the Northern District of Oklahoma.

1

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (N), and (0).

2. Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are §§ 105, 363 and 365, Rules 2002 and 6004, and. LR6004-1 and 6006-1.

## II. BACKGROUND

4. On August 16, 2024 [Doc. 1] (the "Petition Date"), an involuntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") was filed against the Debtor. On November 22, 2024, an order for relief under chapter 7 was entered by this Court [Doc. 59] and, later on November 22, 2024, an Agreed Order Converting Chapter 7 Case to a Case Under Chapter 11 was entered by this Court [Doc. 60]. The Debtor has continued in the management and possession of its business, assets, and properties as a debtor in possession pursuant to §§ 1107 and 1108.

5. Neither a trustee nor an official committee of holders of unsecured claims ("Committee") has been appointed in this chapter 11 case ("Case").

6. A description of the Debtor's business, assets and extensive prepetition marketing efforts is set forth in the Declaration of James J. Connor, the Manager of Oklahoma Forge, LLC, in Support of Chapter 11 Case and First Day Motions to be filed in this case soon ("Connor Declaration"). The Debtor hereby incorporates the Connor Declaration as if fully set forth herein.

7. Debtor is not operating and has been shut down since August 1, 2024, due to a lack of cash or other liquidity necessary to continue its operations.

8. Debtor is an independent operator of a metal forge facility that was founded in

2

September of 2004. The Debtor owns the equipment and other tangible and intangible personal property assets (as more particularly described in the APA (defined in paragraph 10 below) and exclusive of Debtor's accounts, the "Purchased Assets") necessary to operate the metal forge business but does not own the real property upon which the facility is located ("Non-Debtor Owned Real Property"). The Non-Debtor Owned Real Property is owned by an entity unaffiliated with the Debtor, Store Master Funding XIV, LLC, an affiliate of Store Capital, LLC ("SC"). The Non-Debtor Owned Real Property is currently leased to the Debtor for $37,410.83 per month. The Debtor has not made a lease payment since June of 2023.

9. In May of this year, approximately seven (7) ago, the Debtor determined that a sale of its assets was the only viable option to realize and maximize the value of its assets. The Debtor retained the investment banking firm of Houlihan Lokey to prepare materials and coordinate the sale process. Although the Houlihan Lokey engagement was terminated, as the Debtor was unable to pay the fees, much of the information and presentations prepared by Houlihan Lokey was used and useful in soliciting interest in the Debtor. The Debtor then retained the services of an experienced individual consultant to assist in marketing the business and its assets. The consultant was well known to the Debtor's parent company and utilized in other acquisitions/divestitures. The Debtor, with the assistance of this independent consultant, began marketing the business to potential industry competitors, suppliers and known investors. Dozens of contacts were made in an attempt to make potential investors and purchasers aware of the assets for sale. The efforts also involved other business brokers who had been previously used by the Debtor's parent organization. These efforts resulted in numerous telephone discussions, information exchanges, and planned visits to the Debtor facilities. The Debtor also used the web site of Loeb Financial Services, a business brokerage firm to solicit interest. That listing brought other potential buyers to the Debtor.

The Debtor estimates that over 100 potential buyers were engaged in phone discussions, virtual meetings or email conversations. The table below depicts the companies and other interested potential buyers which visited the Oklahoma Forge plant and toured the facility.

| Date | Company | Name of Contact | Title | Comments |
|---|---|---|---|---|
| 7/24/24 | Pipeline Equipment | Jack Lollis | President | $2.8 million offer |
| 8/9/24 | AF Global Holdings | Mike Walter | | Several visits, $5.7 million offer including the Non-Debtor Owned Real Estate |
| | Anderson Shumaker | Bruce Limatene | Partner | Certain equip only |
| | Carlson Company | Guido Hagedorn | President | Certain Equipment |
| | Ellwood Group | Richard Davis | CFO | Certain Equipment |
| | Frisa | Antonio Alvarez | VP NA | Specific equipment |
| CURRENT ACTIVE BIDDER | Forge Resources Group | Kent Paul | Business Director | $8.4 million including the Non-Debtor Owned Real Estate |
| | Newman Flange | Uvaldo Mendoza | | Certain equip |

43056810.5/156171.00005

| | | | |
|---|---|---|---|
| Sypris | Federico Aviles | | Certain Equipment |
| Allied Group | Jeff Burns | President-EASY FLOW | |
| Liberty Forge | Jesse Lopez | | No response |
| Titan Group | Shawn Hakim | VP Strategy | Certain Equipment |
| Lehigh Specialty Metals | Ray Park | | No further interest |

10. After the above marketing efforts were pursued, the Debtor received a letter of intent dated August 20, 2024 ("LOI") from Forge Resources Group, an Illinois limited liability company ("FRG"), to purchase substantially all of its personal property assets, exclusive of Debtor's accounts ("Transaction"), in an out-of-court asset sale. Although the parties detailed above visited the Debtor's facility, FRG was the only party that made a credible offer for substantially all of the Debtor's assets. The LOI was never signed and, by its terms, expired on August 23, 2024, but FRG continued to express an interest in the Transaction and, since that time, the Debtor and FRG have continued to discuss, negotiate, and document an asset purchase agreement for the sale and purchase of the Purchased Assets. Those efforts have now culminated in the Asset Purchase Agreement ("APA"), a substantially similar copy of which is attached to this Motion as **Exhibit B**,[2] providing for, among other related things, the sale and purchase of the Purchased Assets in a § 363(b) sale, free and clear of all liens, claims, encumbrances and other

---

[2] To the extent of any conflict or inconsistency, the APA governs and controls the statements and summaries of the APA set forth in this Motion.

43056810.5/156171.00005

interests of every and any kind, for a gross purchase price of $3,550,000. In addition to certain Excluded Assets described in the APA, the Transaction expressly excludes the Debtor's accounts and certain avoidance actions, which will remain with the Debtor's estate. In a separate, but integrally related, transaction, FRG has entered into (or soon will be entering into) a contract with SC to purchase the Non-Debtor Owned Real Property for approximately $4.5 million (the "Non-Debtor Sale"). As a result, the closing of the Transaction will be contingent on the closing of the Non-Debtor Sale. Each sale is contingent on the other sale closing.

11. In furtherance of and to facilitate the Transaction, FRG has agreed to provide a debtor-in-possession loan to the Debtor in an amount of up to $250,000 (the "DIP Loan"). The Debtor believes that the DIP Loan is sufficient to fund the Case until the Transaction can be completed and closed. The DIP Loan is the subject of a separate *Motion for an Order (I) Authorizing Post-Petition Credit, (II) Granting Senior Secured Liens and Superpriority Claims under Sections 364(c) and (d) of the Bankruptcy Code, (III) Granting Adequate Protection Liens, and (IV) Granting Related Relief* filed with this Court on December 4, 2024 [Doc. 73] (the "Financing Motion") and an interim hearing thereon has been scheduled for December 18, 2024 at 10:00 a.m. pursuant to Court order [Doc. 79]. The DIP Loan, together with other obligations constituting "DIP Obligations" under the Financing Motion, will be credit bid and offset against the gross purchase price of the Transaction at the closing of the Transaction.

12. As of the Petition Date, the Purchased Assets were subject to the lien claims of two creditors: (1) Loeb Term Solutions, LLC ("Loeb"), which claims a first-priority lien in the LTS Priority Collateral (the "Loeb Collateral"), as defined in and subject to an Intercreditor Agreement dated August 11, 2022 (the "Loeb Lien Claims"), and (2) Pathward, National Association ("Pathward"), which claims a first-priority lien in all, or substantially all, of Debtor's personal

6

property assets that do not constitute LTS Priority Collateral under the Intercreditor Agreement dated August 11, 2022, including the Debtor's accounts (the "Pathward Lien Claims" and "Pathward Collateral" and, collectively with the Loeb Collateral, the "Prepetition Collateral"). Each of Loeb and Pathward claims a second-priority lien in the first-priority Prepetition Collateral of the other Prepetition Lender.

13. As of the Petition Date, the Debtor owed (a) at least $4,056,823.39 to Loeb and (b) $515,517 (less the approximately $325,840 in unapplied cash held by Pathward for a net claim of $189,677) to Pathward, in each case, for contractual debts that are secured by the Loeb Lien Claims and the Pathward Lien Claims in the Prepetition Collateral constituting the Purchased Assets.

14. The Prepetition Lenders have expressly consented to and support the Transaction (subject to the specific terms of the DIP Loan, the APA and proposed Sale Order) without any further marketing of the Purchased Assets, and without an additional opportunity to solicit, receive, entertain, or accept any overbids or higher or better offers in a competitive bidding process. This is an express condition of the DIP Loan, as the DIP Loan is being provided to facilitate the Transaction, and time is of the essence to all parties.

15. Based upon the Declarations of James Connor, CEO of the Debtor, and David Payne to be filed herein, the Purchased Assets were exhaustively and fully marketed prior to the Petition Date and, based on those efforts, the Debtor believes, in the sound exercise of its business judgement and consistent with its fiduciary duties, that conducting and approving the Transaction in this manner is appropriate and prudent, is the highest and best offer available to the Debtor and the estate at this time, and will result in the highest net proceeds becoming available to the Debtor's estate and capable of being realized by the Prepetition Lenders. The Transaction is fully supported by the Debtor, FRG, and each of the Prepetition Lenders.

15. Debtor and FRG and their respective counsel and other advisors have negotiated and entered into the APA in good faith, without collusion, from arm's-length bargaining positions, and in a way that is substantively and procedurally fair to all entities. FRG is a good faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby. Neither the Debtor nor FRG has engaged in any conduct that would cause or permit the Transaction contemplated by the APA to be avoided or subject to monetary damages under § 363(n) of the Bankruptcy Code, or that would prevent the application of § 363(m) of the Bankruptcy Code. Furthermore, neither FRG nor any of its officers, directors or shareholders owns (a) any interest in the Debtor, or (b) any ownership interest in any of the Debtor's creditors or any other party in interest, their respective attorneys, accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. FRG is not an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code.

### III. SUMMARY OF THE PROPOSED SALE TERMS

16. For the reasons set forth herein, and in the exercise of its business judgment, the Debtor believes the sale of the Purchased Assets to FRG is in the best interests of the Debtor and its creditors.

17. The material terms on which FRG proposes to purchase the Purchased Assets (as more fully and completely described in the APA) are summarized as follows:

| Sale of Purchased Assets | Section 1.01 – Debtor (Seller) agrees to sell and convey to FRG (Buyer) and Buyer agrees to buy from Seller all Purchased Assets, including the property described below: |
|---|---|

all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts, and other inventories ("**Inventory**");

all Contracts (the "**Assigned Contracts**") set forth on Section 1.01(b) of the disclosure schedules attached hereto (the "**Disclosure Schedules**") (*see* Schedule 1.01(b) – Assigned Contracts). The term "**Contracts**" means all contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral;

all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property, (the "**Tangible Personal Property**"), including, but not limited to, the Tangible Personal Property set forth on Section 1.01(c) of the Disclosure Schedules (*see* Schedule 1.01(c) – Tangible Personal Property);

all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any Purchased Assets;

all insurance benefits, including rights and proceeds, arising from or relating to the Business, the Purchased Assets, or the Assumed Liabilities, including, but not limited to, the insurance benefits set forth on Section 1.01(e) of the Disclosure Schedules (*see* Schedule 1.01(e) – Insurance Benefits);

originals or, where not available, copies, of all books and records, including books of account, ledgers, and general, financial, and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, supplier purchasing histories, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records, and data (including all correspondence or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction (collectively, "**Governmental Authority**")), sales material and records, strategic plans and marketing, and promotional surveys, material, and research ("**Books and Records**"); and

all goodwill and the going concern value of the Purchased Assets and the Business.

| | |
|---|---|
| Purchase Price | Section 1.04:<br>The aggregate purchase price for the Purchased Assets shall be three-million nine-hundred thousand $3,550,000 ("**Purchase Price**"), minus the principal, interest and fees due on the DIP Loan, plus the assumption of the Assumed Liabilities. Buyer shall pay the Purchase Price by wire transfer to Seller in immediately available funds in accordance with the wire transfer instructions set forth on Section 1.04 of the Disclosure Schedules (*see* Schedule 1.04 – Wire Transfer Information). |
| Conditions to Closing | Article 6 (Conditions to Closing):<br><br>**Conditions to Obligations of All Parties.** The obligations of each party to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions:<br><br>No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.<br><br>Seller shall have received all consents, authorizations, orders and approvals from the Governmental Authorities referred to in **Error! Reference source not found.** and Buyer shall have received all consents, authorizations, orders and approvals from the Governmental Authorities referred to in **Error! Reference source not found.**, in each case, in form and substance reasonably satisfactory to Buyer and Seller, and no such consent, authorization, order and approval shall have been revoked.<br><br>The entry of a debtor-in-possession financing order in a form acceptable to Buyer and Seller and entered by the Bankruptcy Court.<br><br>The entry of a Sale Order in a form acceptable to Buyer and Seller and entered by the Bankruptcy Court, and such Sale Order shall have become a Final Order in full force and effect and shall not have been stayed or vacated.<br><br>All leases shall have been released in full pursuant to the motion by the Seller filed to reject its leases, including, but not |

limited to, (i) the lease with Store Master Funding XIV, LLC and (ii) the sublease with Duenner Supply Company.

**Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

The closing of (i) the Real Estate Purchase Agreement entered into by and between Store Master Funding XIV LLC and Forge Resources Group, LLC for (19.8) acres of land and real property improvements located at 5259 South 49th West Avenue, Tulsa, Oklahoma 74107, and (ii) the sublease with Duenner Supply Company for a segment of the property purchased pursuant to the Real Estate Purchase Agreement.

All Encumbrances relating to the Purchased Assets shall have been released in full pursuant to the Sale Order issued by the Bankruptcy Court, and Seller shall have delivered to Buyer written evidence, in form satisfactory to Buyer in its sole discretion, of the release of such Encumbrances.

Buyer has completed detailed due diligence investigation of the Business and Purchased Assets to the satisfaction of the Buyer.

Buyer has entered into a mutually agreed upon employment agreement between the Buyer and each of the employees on the list set forth on <u>Schedule 5.01(e) – Employee Payments</u> for a period of not less than one (1) year after the Closing Date.

The representations and warranties of Seller contained in this Agreement, the Ancillary Documents and any certificate or other writing delivered pursuant hereto shall be true and correct in all respects on and as of the date hereof and on and as of the Closing Date with the same effect as though made at and as of such.

Seller shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement and each of the Ancillary Documents to be performed or complied with by it prior to or on the Closing Date.

No Action shall have been commenced against Buyer or Seller, which would prevent the Closing. No injunction or

11

| | |
|---|---|
| | restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any transaction contemplated hereby.

All approvals, consents and waivers that are listed shall have been received, and executed counterparts thereof shall have been delivered to Buyer at or prior to the Closing.

Seller shall have delivered to Buyer such other documents or instruments as Buyer reasonably requests and are reasonably necessary to consummate the transactions contemplated by this Agreement. |
| Closing Date | Section 2.01:

Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place remotely by electronic exchange of documents and signatures, at 9:00 am central time, on the second business day after all of the conditions to Closing set forth in **Error! Reference source not found.** are either satisfied or waived; excepting that, those conditions which, by their nature, are to be satisfied on the Closing Date, or at such other time, date or place as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**." |

## IV. RELIEF REQUESTED AND BASIS FOR RELIEF

18. By this Motion, pursuant to §§ 105, 363 and 365, Rules 2002, 6004 and 6006, and LBR 6004-1 and 6006-1, the Debtor seeks Court authorization and approval of the Transaction and the purchase and sale of the Purchased Assets pursuant to the APA and Proposed Sale Order.

**A. Sale of the Property is Authorized Under Section 363(b) of the Bankruptcy Code**

19. Section 363(b)(1) of the Bankruptcy Code provides that "**[**t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." §363(b)(1). Courts have uniformly held that approval of a proposed sale of property pursuant to §363(b) of the Bankruptcy Code is appropriate if a Court finds that the transaction

12
43056810.5/156171.00005

represents a reasonable business judgment on the part of the debtor or trustee. *See Institutional Creditors of Continental Air Lines, Inc. vs. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Industries, Inc. vs. McClung,* 789 F.2d 386, 391 (6th Cir. 1986); *In re Inosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991).

20. Additionally, prior to and after enactment of the Bankruptcy Code, Courts have permitted a proposed sale of all or substantially all the assets of a debtor outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Equity Funding Corp. of America*, 492 F.2d 793, 794 (9th Cir. 1974), *cert. denied*, 419 U.S. 964 (1974) ("Other circuits have recognized the power of the bankruptcy court under Chapter X to authorize a sale of the debtor's property under less than emergency conditions where such sale is necessary to avoid deterioration in the value of the assets"). Moreover, this Court has approved such sales in previous chapter 11 cases filed in this District.

21. The Debtor submits that the proposed Transaction and the purchase and sale of the Purchased Assets is a reasonable business decision in light of the circumstances and is in the best interest of the estate and its creditors. Further, the Debtor submits that the proposed Transaction presents the best opportunity to realize the maximum value of the estate's assets for distribution to creditors and is necessary to preserve the value of the estate's assets for the estate and its creditors.

### B. Sale of the Property Free and Clear

22. The Debtor further requests that the Court approve the purchase and sale of the Purchased Assets free and clear of liens, claims, encumbrances and other interests under § 363(f) to FRG (or its assigns). Any ad valorem property taxes and penalties due to the Tulsa County Treasurer that accrued prior to the closing of the Transaction (the "Unpaid Taxes") will be paid at Closing by Seller from the proceeds of the Transaction.

23. Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

§ 363(f).

24. As quoted above, § 363(f) provides for the sale of assets "free and clear of any interests." The term "any interest," as used in § 363(f), is not defined in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam,* the Third Circuit specifically addressed the scope of the term "any interest." *Id,* at 258. The court observed that while some courts have "narrowly interpreted that phrase to mean only *in rem*

14
43056810.5/156171.00005

interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).

25. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam,* the scope of Section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the Debtor "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam,* 209 F.3d at 258.

26. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all interests. *See In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs., Inc. v. Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988). Each of the Prepetition Lenders has consented to the Transaction and the transfer of its liens, claims, encumbrances and other interests to the proceeds of Transaction. This consent satisfies at least one of the five conditions in section 363(f) of the Bankruptcy Code. That is all that is required. The Debtor accordingly requests authority to convey the Purchased Assets to FRG free and clear of all liens, claims, encumbrances and other interests.

V. **MODIFICATION OF AUTOMATIC STAY; WAIVER OF STAY**

27. The Debtor requests that the automatic stay provisions of Bankruptcy Code section 362 be modified to the extent necessary to implement the terms and conditions of the APA.

15

28. The approval of the APA will maximize the value of the Purchased Assets and the DIP Loan will provide capital to the Debtor's estate to allow for an efficient disposition of the assets. In order to promptly consummate the Transaction and relieve the estate of ongoing administrative obligations and risk, the Debtor requests that the Court waive the stay imposed by Rules 6004(h) and 6006(d) and allow the Debtor to consummate the Transaction contemplated herein. No party will be prejudiced by the requested waiver. The Debtor has determined that, in its business judgment, the sale of the Purchased Assets in the Transaction to FRG in accordance with the terms of the APA is in the best interest of the Debtor's estate and its creditors. The sale of the Purchased Assets in the Transaction is for fair and reasonable consideration, is in good faith, does not unfairly benefit any insiders or creditors of the Debtor, and will maximize the value of the Debtor's estate.

## VI. **CONCLUSION**

WHEREFORE, the Debtor hereby respectfully requests entry of the Proposed Sale Order following a hearing, in the form appended as **Exhibit A**, among other things: (a) authorizing the Debtor to sell the Purchased Assets to FRG (or its assigns) pursuant to the APA, free and clear of liens, claims, encumbrances and other interests, and (b) after FRG credits and offsets the DIP Obligations against the purchase price of the Transaction, authorizing the use of the net cash proceeds of the Transaction for the purpose of satisfying all reasonable and customary closing costs, allocations, and taxes, including Unpaid Taxes, and the distribution of the remaining net cash proceeds of the purchase price to Loeb, and (c) granting such other and further relief to which the Debtor may show itself justly entitled.

Dated: December 12, 2024

Respectfully submitted,

*s/ Mark A. Craige*
Mark A. Craige, OBA #1992
Alexander Sokolosky, OBA #33614

-Of the Firm-

CROWE & DUNLEVY
A Professional Corporation
222 North Detroit Avenue
Suite 600
Tulsa, OK 74120
(918) 592-9800
(918) 592-9801 (Facsimile)
mark.craige@crowedunlevy.com
alex.sokolosky@crowedunlevy.com

*Attorneys for Debtor In Possession*
*Oklahoma Forge, LLC*