**<u>Exhibit A</u>**

**Proposed Sale Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA


| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **OKLAHOMA FORGE, LLC, d/b/a** | ) | **Case No. 24-11060-M** |
| **OKLAHOMA FORGE, INC.** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |


## ORDER (1) AUTHORIZING SALE
## OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) APPROVING DISTRIBUTION OF SALE PROCEEDS, AND (3) GRANTING RELATED RELIEF


This matter coming before the Court on the *Motion for an Order (1) Authorizing Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests, (2) Approving Distribution of Sale Proceeds and (3) Granting Related Relief* [Doc.  ] (the "Motion") (the "Sale Motion"),[1] filed by the Debtor in the above-captioned chapter 11 case (the "Chapter 11 Case"); and Forge Resources Group, an Illinois limited liability company, or its designee ("Buyer"), having entered into that certain *Asset Purchase Agreement*, dated as of December [**], 2024, by and between the Buyer and the Debtor ( the "APA"), a substantially similar copy of which is attached hereto as Exhibit 1; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on December __, 2024 (the "Sale Hearing"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered:(i) the Sale Motion; (ii)

---

[1]    Capitalized terms used but not defined in this Sale Order shall have the respective meanings ascribed to such terms in the APA (as defined below), and, if not defined therein, in the Sale Motion.

the APA; (iii) the Declaration of James J. Connor, Manager of Oklahoma Forge, LLC. In Support of Chapter 11 Case and First Day Motions [Doc. ] ("Connor Declaration"), (iv) [the Declaration of David Payne [Doc. ]], (v) all objections filed with the Court, if any (each, an "Objection" and, collectively with any informal objections received by the Debtor, collectively the "Objections"); and (vi) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual basis set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion and approval of the APA are in the best interest of Debtor, its estate and its creditors, and the Debtor having demonstrated good, sufficient and sound business justifications for the relief granted herein.

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

A.      Jurisdiction and Venue.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Final Order.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

---

[2]     The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

C.     Statutory Predicates.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004, and LR6004-1. [3]

D.     Notice and Opportunity to Be Heard.  As evidenced by the certificate of service filed with the Court  [Doc.  ], the Debtor has provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion and the Sale Hearing, and the sale of the Purchased Assets to Buyer pursuant to the APA (the "Transaction"), free and clear of any Interests (as defined below) (other than Assumed Liabilities expressly assumed under the APA or this Sale Order) within the meaning of section 363(f) of the Bankruptcy Code, and this Sale Order, in accordance with §§ 102(1), 105, 363 and 365,, Rules 2002, 6004 and 6006, and LBR6004-1, to all persons and entities entitled to such notice, including (i) all entities known to have asserted any lien, claim or encumbrance in or upon the Purchased Assets, including Loeb Term Solutions, LLC ("Loeb") and Pathward, National Association ("Pathward" and together with Loeb, "Prepetition Lenders"); (ii) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Sale Motion; (iii) the U.S. Trustee; (iv) the Internal Revenue Service; (v) Chubb Federal Insurance Company; (vi) all persons and entities that have requested service of filings in this Chapter 11 Case pursuant to Rule 2002; (vii) all parties expressing an interest in the Transaction prior to the Petition Date; and (viii) all parties listed on the official Matrix in this case.  Such notice was good, sufficient, and appropriate under the circumstances; and no other or further notice of any of the foregoing is required.  The Debtor

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  "Bankruptcy Rule" or "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.  References to "LBR" are to the Local Rules of Bankruptcy Practice of the United States District Court for the Northern District of Oklahoma.

filed the Sale Motion and the APA, and certain other documents relevant to the Transaction, on the case website.

E.    <u>Sound Business Purpose</u>.  The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion.  The approval of and entry into the APA, and any ancillary agreements thereto (i) is a result of due deliberation by the Debtor and constitutes a sound and reasonable exercise of the Debtor's business judgment consistent with its fiduciary duties; (ii) provides additional value and is beneficial to the Debtor's estate, and is in the best interests of the Debtor, its estate, and its stakeholders; and (iii) is reasonable and appropriate under the circumstances.  Business justifications for entry into the APA include, without limitation, the following: (i) the APA constitutes the highest or best offer received for the Purchased Assets after the Purchased Assets were extensively and exhaustively marketed for approximately seven (7) months prior to the Petition Date without the Debtor receiving any higher or better offer for the Purchased Assets than from the Buyer; (ii) the APA represents the best opportunity to maximize the value of the Purchased Assets and to avoid further decline and devaluation as a result of further delay; (iii) failure to consummate the Transaction expeditiously, as provided under the APA, could materially diminish creditor recoveries; (iv) the limited operating cash and other liquidity necessary to pay or otherwise satisfy administrative expenses that continue to mount, and (v) the immediate consummation of the Transaction contemplated by the APA is necessary to maximize the value of the Debtor's estate.

F.    <u>Marketing Process</u>.  As demonstrated by the testimony submitted at the Sale Hearing and in the Connor Declaration, the Debtor and its advisors thoroughly marketed the Debtor's assets (including the Purchased Assets) for approximately seven (7) months before the Petition Date.  During that time, the only concrete interest shown in the Debtor's assets was

from Buyer in the form of a letter of intent dated August 20, 2024.  Based upon the record and upon review of undisputed testimony set forth in the Connor Declaration, potential purchasers have been afforded a reasonable and fair opportunity to make an offer for the Debtor's assets (including the Purchased Assets), but Buyer is the only party submitting a written indication of interest in the Purchased Assets.  As such, selling the Purchased Assets without any further post-Petition Date marketing in respect of the Purchased Assets, and without establishing and engaging in a further competitive process, with an opportunity to solicit, receive, entertain, or accept any overbids or higher or better offers of any kind, is prudent and entirely appropriate under the circumstances and within the sound business judgment of the Debtor.

G.　　Highest or Best Value.  The purchase price for the Purchased Assets, as determined by the Debtor, in its reasonable business judgment, in a manner consistent with its fiduciary duties, as documented in the APA, was the highest or otherwise best offer received for the Purchased Assets.  Consummating the Transaction as contemplated in the APA will yield greater value to the Debtor's estate than would have been provided by any other available alternative transaction.

H.　　Fair Consideration.  The consideration the Buyer will pay under the APA constitutes (i) fair and reasonable consideration for the Purchased Assets, and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

I.　　Free and Clear Sale.  The Debtor may sell the Purchased Assets free and clear of all Interests (other Assumed Liabilities expressly assumed under the APA or this Sale Order),

because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) has been satisfied. Any holders of Interests that objected to the Transaction as contemplated by the APA or the Sale Motion and that have an Interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to § 363(f)(5) or fall within one or more of the other subsections of § 363(f) and, therefore, are adequately protected by having their Interests on the Purchased Assets attach solely to the proceeds of the Transaction contemplated by the APA ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force, and effect that such Interests had prior to the consummation of the Transaction contemplated by the APA, subject to any rights, claims, or defenses of the Debtor and its estate.  The Prepetition Lenders have each consented to the sale of the Purchased Assets to Buyer free and clear of their respective Interests on the Purchased Assets pursuant to § 363(f)(2), *provided* that the liens of the Prepetition Lenders shall attach to the cash proceeds of the Purchased Assets and such cash proceeds are treated in accordance with paragraph [17] of this Sale Order.  Interest holders that did not object, or that withdrew their objections, to the Sale Motion and/or the Transaction contemplated by the APA, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Interests on the Purchased Assets pursuant to § 363(f)(2).

J.      Buyer's Reliance on Free and Clear Sale.  The Buyer would not have entered into the APA and would not consummate the Transaction contemplated by the APA if the sale of the Purchased Assets were not free and clear of all Interests (other than Assumed Liabilities expressly assumed under the APA or this Sale Order), or if the Buyer would, or in the future could, be liable for any such Interests.  A sale of the Purchased Assets other than one free and clear of all such Interests would adversely impact the Debtor, its estate, and its creditors, and

would yield substantially less value for the Purchased Assets and the Debtor's estate and with less certainty than provided by the Transaction contemplated by the APA. The total consideration to be provided under the APA reflects the Buyer's reliance on this Sale Order to provide it, pursuant to §§ 105(a) and 363(f), with title to, and possession of, the Purchased Assets free and clear of all Interests (other than Assumed Liabilities expressly assumed under the APA or this Sale Order) including, without limitation, any potential derivative, vicarious, transferee, or successor liability Interests.

    K.     "Interests". As used in this Sale Order, the term "Interest" includes, in each case to the extent against or with respect to Debtor or in, on, or against or with respect to any of the Purchased Assets: Liens (as defined in § 101(37)), claims (as defined in § 101(5)), debts (as defined in § 101(12) of the Bankruptcy Code), Encumbrances (as defined in the APA), obligations, Liabilities (as defined in the APA), demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior, on, or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, Encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation,

all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to, on, or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Buyer's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37)) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the

Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of their predecessors, or (l) the Worker Adjustment and Retraining Notification Act, as amended, together with any state or local "mass layoff" or "plant closing" Laws or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or business of the Debtor prior to the Closing, including under claims or interests of state taxing authorities or other Governmental Units (as defined in section 101(27) of the Bankruptcy Code); (x) any unexpired and executory or non-executory Contract or unexpired lease to which the Debtor is a party that is not an Assigned Contract; (xi) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. § 9601 et seq.) and any regulations promulgated thereunder, and analogous state Laws ("CERCLA"), or any other environmental, health, and safety laws; (xii) any other Excluded Liabilities under the APA; and (xiii) Interests arising under or in connection with any acts, or failures to act, of the Debtor or

any of the Debtor's predecessors, Affiliates, or subsidiaries, including, but not limited to, Interests arising under any theory, law, or doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

L.      <u>No Successor or Other Derivative Liability</u>.  By consummating the Transaction contemplated by and pursuant to the APA and this Sale Order, the Buyer is not a mere continuation of Debtor or Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Buyer and Debtor.  The Buyer is not a successor to Debtor or its estate by reason of any theory of law or equity, and the Transaction contemplated by the APA does not amount to a consolidation, merger, or *de facto* merger of the Buyer and Debtor or its estate.  Neither the Buyer nor any of its affiliates or their respective predecessors, successors, assigns, members, partners, principals, officers, directors, or direct or indirect shareholders (or the equivalent thereof) (collectively, the "<u>Buyer Related Persons</u>") shall assume or in any way be responsible for any obligation or liability Debtor (or any affiliate of it) or its estate.  The sale and transfer of the Purchased Assets to the Buyer shall not subject the Buyer and the Buyer Related Persons to any liability with respect to the operation of the Debtor's business prior to the Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall remain liable for any applicable Assumed Liabilities.

M.      <u>Good Faith</u>.  Debtor, the Buyer and their respective counsel and other advisors have negotiated and entered into the APA and the Transaction contemplated thereby in good faith, without collusion, from arm's-length bargaining position, and in a way that is substantively and procedurally fair to all entities.  The Buyer is a good faith purchaser and is acting in good

faith within the meaning of § 363(m), and, as such, is entitled to all of the protections afforded thereby. Debtor was free to deal with any other party interested in acquiring all or some of the Purchased Assets prior to, but not after, the entry of the Order (I) Authorizing Post-Petition Credit, (II) Granting Senior Secured Liens and Superpriority Claims under §§ 364(c) and (d), (III) Granting Adequate Protection Liens, and (IV) Granting Related Relief [Doc. __] ("DIP Order"). Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Transaction contemplated by the APA to be avoided or subject to monetary damages under §363(n), or that would prevent the application of § 363(m). The Buyer has not violated § 363(n) by any action or inaction. The Buyer has not acted in a collusive manner with any person or entity. All payments to be made by the Buyer and all agreements entered into by the Buyer and the Debtor under the APA in connection with Transaction contemplated by the APA have been disclosed and are appropriate. The APA was not entered into, and the Transaction thereunder is not being consummated, for the purpose of hindering, delaying, or defrauding creditors under laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law. Neither the Debtor nor the Buyer has entered into the APA or is consummating the Transaction thereunder with any fraudulent or otherwise improper purpose.

N.    No Collusion. The APA was not controlled by an agreement between potential bidders within the meaning of § 363(n). The Debtor and the Buyer have not engaged in any conduct that would cause or permit the APA or the consummation of the Transaction contemplated by the APA to be avoided, or costs or damages to be imposed, under § 363(n). Neither Debtor nor the Buyer has entered into the APA or is consummating the sale and

assignment of the Purchased Assets thereunder with any fraudulent or otherwise improper purpose.

O. <u>Insider Status</u>. Neither the Buyer nor any of the Buyer Related Persons is an "insider" of the Debtor, as that term is defined in § 101(31).

P. <u>Property of the Estate</u>. The Purchased Assets constitute property of Debtor's estate within the meaning of § 541(a).

Q. <u>Validity of the Transaction</u>. The consummation of the Transaction contemplated by the APA is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including §§ 105(a), 363(b), 363(f), 363(k), 363(m), 365, and all of the applicable requirements of such sections have been complied with in all respects in connection with the Transaction under the APA. As of the Closing, the sale and assignment of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests (other than Assumed Liabilities expressly assumed under the APA or this Sale Order). The Debtor has full corporate or other applicable authority to execute and perform the APA and all other documents contemplated thereby, and the Transaction contemplated by the APA has been duly and validly authorized by all necessary corporate action of Debtor. Upon entry of this Sale Order, no consent or approval from any other person, entity, or legal authority is required to consummate the Transaction.

R. <u>No Stay of Sale Order</u>. Time is of the essence to implement the APA and consummate the sale and other transactions thereunder. The sale and other transactions thereunder must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to maximize the value to the Debtor, its estate, its creditors, and all other

parties in interest. The Debtor has demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the APA and sale and other transactions thereunder. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 7062, or any applicable provisions of the Local Rules, this Sale Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Sale Motion Granted</u>. The Sale Motion and the relief requested therein are GRANTED and approved as set forth herein.

2. <u>Objections Overruled</u>. Unless otherwise provided for herein, any Objections to or reservation of rights against the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits with prejudice or resolved as set forth herein. All persons and entities that failed to timely object thereto are deemed to have consented to the relief sought in the Sale Motion and granted herein. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3. <u>Transaction Approved</u>. The APA and all transactions contemplated thereby, including the sale and assignment of Purchased Assets, are hereby APPROVED. Debtor is authorized to enter into and perform the APA (and all ancillary documents), and all of the terms and conditions thereof, and all of the transactions contemplated therein are approved in all respects including, without limitation, any amendment to APA that the Debtor and Buyer determines is necessary or desirable in connection with the transactions contemplated therein.

The consummation of the sale and other transactions in the APA are hereby approved and authorized under §§ 105, 363(b) and 365.

4.     <u>Adequate and Reasonable Notice.</u>  Notice of the sale of the Purchased Assets pursuant to the APA and the Sale Hearing, and all deadlines related thereto, was good, sufficient, and appropriate under the circumstances and complied in all respects with § 102(1) and Rules 2002, 6004 and 6006, and LBR 6004-1.

5.     <u>Debtor's Performance Authorized</u>.  Debtor is hereby authorized to enter into and perform its obligations under the APA, and to take such other actions as may be necessary or desirable to effectuate the terms of the APA, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, the sale and assignment of the Purchased Assets under the APA, or this Sale Order including, without limitation, deeds, assignments, and any other instruments of transfer, without further order of the Court.  Debtor is hereby further authorized to take all other actions as may reasonably be requested by the Buyer or otherwise for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to the Buyer's possession, any or all of the Purchased Assets, as may be necessary or appropriate for Debtor to perform its obligations under the APA and consummate the sale and assignment of the Purchased Assets thereunder, without further order of the Court.

6.     Debtor is hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the APA, the sale and assignment of the Purchased Assets under the APA, or this Sale Order, and all such other actions, filings or recordings as may

be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of Debtor may determine are necessary or appropriate.

7. <u>Free and Clear Sale</u>. Except to the extent specifically provided in the APA, upon the Closing Date, Debtor shall be, and hereby is, authorized and empowered, pursuant to §§ 105, 363(b), 363(f), 363(k), and 365, to sell and transfer to the Buyer the Purchased Assets. The sale and transfer of the Purchased Assets to the Buyer shall vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of any and all Interests of any person or entity, with all such Interests to attach to the net proceeds of sale of the Purchased Assets ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Transaction contemplated by the APA, subject to any rights, claims or defenses of Debtor or its estate. Following the Closing, no holder of any Interest on any of the Purchased Assets shall interfere with the Buyer's use or enjoyment of any of the Purchased Assets based on or related to such Interest or any actions that the Debtor has taken or may take in its Chapter 11 Case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the sale and transfer of the Purchased Assets or any other transactions contemplated in the APA.

8. The provisions of this Sale Order authorizing the sale and transfer of the Purchased Assets free and clear of Interests (other than Assumed Liabilities expressly assumed under the APA or this Sale Order) shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate, or implement the provisions of this Sale Order. For the avoidance of doubt, on or after the Closing Date, Debtor and the Buyer shall be authorized,

but not directed, to file any such releases, termination statements, assignments, consents, or other instruments in any jurisdiction to record the release, discharge, and termination of Interests on the Purchased Assets pursuant to the terms of this Sale Order.

9.    <u>Direction to Creditors</u>.  This Sale Order shall be (a) effective as a determination that, as of the Closing Date, all Interests in or on the Purchased Assets (except as otherwise expressly assumed under the Successful APA) shall be unconditionally released, discharged, and terminated as to the Buyer and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtor's creditors and any holder of an Interest on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in or on the Purchased Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest in or on the Purchased Assets has not delivered to the Debtor on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtor and the Buyer are each authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register, or otherwise record a certified copy of this Sale Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Purchased Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

10.     <u>Authorization of Recording Officers</u>.  This Sale Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials, and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets (collectively, the "<u>Recording Officers</u>").  All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the sale of the Purchased Assets and other transactions contemplated by the APA or to record and reflect that the Buyer is the owner of the Purchased Assets free and clear of all Interests (other than Assumed Liabilities expressly assumed under the APA or this Sale Order) and (b) strike all recorded Interests in or on the Purchased Assets from their records.

11.     <u>Direction to Surrender the Purchased Assets</u>.  All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Buyer on the Closing Date.  By way of example and not limitation, all checks and other instruments ("<u>Chubb Checks</u>") issued by Chubb Federal Insurance Company ("<u>Chubb</u>"), other than Chubb Check no. 6933878 (or its replacement check), which shall be delivered to Loeb (the "<u>Loeb Chubb Check</u>"), shall be turned over and delivered to the Buyer, properly endorsed (without recourse) by the Debtor or any other holder thereof. In the case of stale checks (those checks that have not been deposited or cashed long after the date on which such check was issued), including the Chubb Checks (other than the Loeb Chubb Check), at the request of the Buyer, the Debtor or the holder of any such

stale checks shall cooperate with the Buyer in taking reasonably requested actions to cause the maker of the stale check to reissue it in the name of the Buyer.

12. <u>No Successor Liability</u>. The Buyer and the Buyer Related Persons are not and shall not be (a) deemed a "successor" in any respect to Debtor or its estate as a result of the consummation of the sale of the Purchased Assets or transactions contemplated by the APA or any other event occurring in the Debtor's Chapter 11 Case under any theory of law or equity; (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into Debtor or its estate; (c) deemed to be an alter ego of or have a common identity with Debtor; (d) deemed to have a continuity of enterprise with Debtor; or (e) deemed to be a continuation or substantial continuation of Debtor or any enterprise of Debtor, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, health, products liability, safety laws, or other law, doctrine, rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtor's liability under such law, doctrine, rule or regulation including, without limitation, under COBRA, CERCLA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, the Americans with Disabilities Act of 1990 (as amended), the Federal Rehabilitation Act of 1973 (as amended), and the National Labor Relations Act, 29 U.S.C. § 151, et seq.; or (f) other than Assumed Liabilities expressly assumed under the APA or this Sale Order, be liable for (i) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or

wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under CERCLA, or any other environmental, health, and safety laws, or (ii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by Debtor (A) for any taxes of any kind for any period, (B) under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or (C) under any products liability or intellectual property law or doctrine, or any other law or doctrine.

13.     Except as expressly provided in the APA or this Sale Order with respect to the Assumed Liabilities expressly assumed under the APA or this Sale Order, the Buyer and the Buyer Related Persons shall not (a) assume, nor be deemed to have assumed or in any way be responsible for (i) any liability or obligation (of any kind, character, or description, whether known or unknown, asserted or unasserted, matured or unmatured, liquidated or unliquidated, disputed or undisputed, accrued or unaccrued, due or to become due, fixed, absolute, contingent or otherwise) of Debtor or its estate or related to the Purchased Assets including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against Debtor or against any related person of Debtor, or any similar liability or obligation, (ii) any remaining claims (as defined in § 101(5)) or Liens (as defined in § 101(37)) or other Encumbrances against the Debtor or any of their predecessors or affiliates, (iii) liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to Closing, or (b) have any liability whatsoever with respect to Debtor's business or operations or product lines or Debtor's obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental,

successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment, infringement or products liability, whether known or unknown as of such Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities or obligations under the CERCLA or any other environmental, health, and safety laws, (ii) liabilities or obligations under ERISA, COBRA, or other similar state or local laws with respect to any pension plan, welfare plan, or other employee benefit plan, (iii) liabilities or obligations under any collective bargaining agreement or employment agreement, or (iv) any liabilities or obligations of any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of such Buyer's purchase of any Purchased Assets or assumption of the Assumed Liabilities expressly assumed under the APA or this Sale Order.  The Sale Motion contains sufficient notice of such limitations in accordance with applicable law.  Except for the Buyer's assumption of the Assumed Liabilities pursuant to the APA and this Sale Order and claims brought by Debtor to enforce the express terms of the APA and this Sale Order, and then only as against the Buyer, the transfer of the Purchased Assets will not result in (a) any Buyer Related Person having any liability or obligation for any claim made against Debtor (or its affiliates, together with their its predecessors, successors, assigns, members, partners, officers, directors, principals or direct or indirect equity security holders), including, without limitation, in respect of the Excluded Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; (b) any Buyer Related Person having any liability or obligation with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or otherwise, directly or indirectly, any Interests or Excluded Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; or (c) any Buyer Related Person having any liability or

obligation to Debtor.

14. For the avoidance of doubt, except as expressly provided in the APA or this Sale Order with respect to the Assumed Liabilities expressly assumed under the APA or this Sale Order, nothing shall require the Buyer or any Buyer Related Person to (i) continue or maintain in effect, or assume any liability in respect of, any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which Debtor is a party or have any responsibility therefor, including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment, (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including, but not limited to, pension plans), or the termination of any such plan, arrangement, or agreement, or (iii) hire any employees, or assume or maintain in effect, or assume any liability in respect of, any collective bargaining agreement, employment agreement, wage rate, compensation plan, or arrangement or any other terms and conditions of employment for any employees of Debtor.

15. Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer or any Buyer Related Person or their assets (including the Purchased Assets) with respect to any (a) Interest in the Purchased Assets, or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of the Court or the agreements

or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

16. <u>Credit Bid.</u> In accordance with the DIP Order [Doc. __], at Closing, the Buyer is authorized to credit and offset the total amount of DIP Obligations (as defined in the DIP Order) outstanding on the Closing Date against and in reduction of the purchase price of the Purchased Assets.

17. <u>Sale Proceeds</u>. After DIP Lender exercises its right to credit and offset the total amount DIP Obligations outstanding on the Closing Date against and in reduction of the purchase price for the Purchased Assets, at the Closing of the Transaction and sale of the Purchased Assets to Buyer, the cash portion of the purchase price, net of any ad valorem taxes, prorations, allocations, and customary closing costs, will be paid to Loeb.

18. <u>Designation Rights and Assigned Contracts</u>. Under the APA, Buyer has the right to designate any executory Contracts as Assigned Contracts at any time until the Closing Date. If Buyer timely designates any such Contracts as Assigned Contracts, Debtor shall promptly move the Court to authorize and approve the assumption and assignment of any such executory Contracts as Assigned Contracts. The assumption and assignment of such executory Contracts as Assigned Contracts shall be authorized and approved so long as such assumption and assignment satisfy the requirements of § 365, including §§ 365(b) and (f) thereof, as determined by further Court order. Any cure costs associated therewith shall be the obligation of the Buyer.

19.     Licenses and Permits.  To the extent provided in the APA and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of Debtor with respect to the Purchased Assets, including the Assigned Contracts to be assumed under the APA and assigned to Buyer, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.  To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory Contract that may be assumed and assigned under §§ 363 and 365, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of Debtor shall remain in place for the Buyer's benefit until a new license or permit is obtained (or, in the case of licenses or permits of Debtor of which the assignment to Buyer is pending as of the Closing Date (whether pursuant to a notice period that has not expired as of the Closing Date or a required consent from an applicable governmental authority that has not been received as of the Closing Date), shall transfer to Buyer upon the expiration of such notice period or the receipt of

20.     To the extent provided by § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the sale of the Purchased Assets and the other transactions contemplated pursuant to the APA.

21.     Good-Faith Purchaser.  The Buyer is a good-faith purchaser within the meaning of § 363(m) and is entitled to all of the protections afforded thereby.  The sale of the Purchased Assets and other transactions pursuant to the APA are undertaken and entered into by Debtor and the Buyer without collusion and in good faith, as that term is defined in § 363(m).  As such, the

reversal or modification on appeal of this Sale Order approving the sale of the Purchased Assets and the other transactions contemplated under the APA under subsection (b) or (c) of § 363 shall not affect the validity of the sale of the Purchased Assets or the other transactions contemplated by the APA, whether or not the Buyer knew of the pendency of the appeal, unless this Sale Order and the sale of the Purchased Assets and other transactions contemplated by the APA were duly and properly stayed pending appeal.

22.     Section 363(n) of the Bankruptcy Code.  The sale of the Purchased Assets and other transactions contemplated by the APA approved by this Sale Order are not subject to avoidance or any recovery of damages and no party is entitled to any damages or other recovery in connection therewith pursuant to or under § 363(n) or otherwise.

23.     Insider.  Neither the Buyer nor any Buyer Related Person is an "insider" as that term is defined in § 101(31).

24.     Bulk Sales.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Transaction contemplated by the APA.

25.     Amendments.   The APA and any related agreements may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court.

26.     Binding Order.  This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including, without limitation, Debtor and the Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for Debtor, or any trustee appointed in a chapter 7 case of Debtor if this Chapter 11 Case is converted from a case under chapter 11 to a case under chapter 7, all creditors of the Debtor (whether known or unknown), and all Recording Officers.  Neither the sale of the

Purchased Assets nor the APA shall be subject to rejection or avoidance under any circumstances. This Sale Order and the APA shall inure to the benefit of Debtor its estate, its creditors, the Buyer and its respective successors and assigns. Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Case, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of the Chapter 11 Case or any subsequent chapter 7 case shall conflict with or derogate from the provisions of the APA (including any related agreements), or this Sale Order, and to the extent of any conflict or derogation between this Sale Order or APA and such future plan or order, the terms of this Sale Order and the APA, including any related agreements, shall control.

27. <u>Failure to Specify Provisions; Conflicts</u>. The failure specifically to include or mention any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, Debtor and the Buyer that the APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

28. <u>Name Change</u>. As required by the APA, the Seller shall (a) adopt, as of the Closing Date, a new entity name wholly dissimilar to its current name and any variations or derivations thereof, and (b) will within three (3) business days following the Closing file necessary amendments to its organizational documents to reflect such name change. After the Closing, the Seller will (c) within five business days, file a motion in this case to change the case caption in its case to the new entity name, and (d) not use the Seller's pre-Closing name or any variation or derivation thereof by using either of the words "Oklahoma" or "Forge" in any commercial context.

29. <u>Further Assurances</u>. From time to time, as and when requested, all parties to the Transaction contemplated by APA shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the sale of the Purchased Assets and the other transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Buyer, Debtor's right, title and interest in and to the Purchased Assets.

30. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the APA and to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.

31. <u>No Stay of Sale Order</u>. Notwithstanding Rules 6004(h), 7062 and any applicable LBR, this Sale Order shall not be stayed and shall be effective and enforceable immediately upon entry. The provisions of this Sale Order shall be self-executing. Time is of the essence in implementing the APA and closing the sale of the Purchased Assets.

32. <u>Governing Terms</u>. To the extent there is any inconsistency between the terms of this Sale Order and the terms of the APA, the terms of this Sale Order shall govern.

33. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Sale Order, the APA, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and

thereof, and the status, nature and extent of the Purchased Assets.

34. <u>Other Provisions.</u> Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Sale Order, as may be required.

IT IS SO ORDERED.

Dated: _____, 2024

Submitted by:

<u>*s/ Mark A. Craige*</u>
Mark A. Craige, OBA #1992
Alexander Sokolosky, OBA #33614

-Of the Firm-

CROWE & DUNLEVY
222 North Detroit Avenue, Suite 600
Tulsa, OK 74120
(918) 592-9800
(918) 592-9801 (Facsimile)
mark.craige@crowedunlevy.com
alex.sokolosky@crowedunlevy.com

**Counsel to Debtor**

## **Exhibit 1**

APA