## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| OKLAHOMA FORGE, LLC d/b/a | § | Case No. 24-11060-M |
| OKLAHOMA FORGE, INC., | § | |
| | § | Chapter 11 |
| Debtor | § | |
| | § | |

**STORE MASTER FUNDING XIV, LLC'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) APPROVING DISTRIBUTION OF SALE PROCEEDS, AND (3) GRANTING RELATED RELIEF**

[Relates to Docket No. 122]

STORE MASTER FUNDING XIV, LLC ("***STORE***"), by and through its undersigned counsel, files this *Limited Objection and Reservation of Rights* (this "***Objection***") to *Debtor's Motion for an Order (1) Authorizing Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief* [Docket No. 122] (the "***Second Sale Motion***"), filed by Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc. (the "***Debtor***" or "***Lessee***"). In limited opposition to the Sale Motion, STORE respectfully states as follows:

## BACKGROUND

### A. Procedural Posture

1. On August 16, 2024 (the "***Involuntary Petition Date***"), Ellwood Quality Steels Company ("***EQSC***"), Ellwood National Steel Company ("***ENSC***") and Lehigh Specialty Melting, Inc. ("***LSMI***") filed an involuntary petition under chapter 7 of the Bankruptcy Code against the Debtor, thereby commencing the above-captioned bankruptcy case (the "***Bankruptcy Case***"). *See* Docket No. 1.

2. On October 8, 2024, Metro Machine Works, Inc. ("**Metro Machine**" and collectively with LSMI, EQSC, ENSC, the "**Petitioning Creditors**") filed its *Motion to Join as Petitioning Creditor in Involuntary Petition* [Docket No. 25].

3. On November 22, 2024 (the "**Voluntary Petition Date**"), the Court entered the Agreed Order Converting Chapter 7 Case to Case Under Chapter 11 [Docket No. 60].

4. On December 12, 2024, the Debtor filed its *Motion for an Order (1) Authorizing Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief* [Docket No. 90] (the "**First Sale Motion**").

5. On December 13, 2024, the Court entered the order scheduling the First Sale Motion for hearing on January 7, 2025 at 10:00 a.m. *See* Docket No. 96. In connection with setting the First Sale Motion for hearing, the Court also established a deadline to object or respond to the First Sale Motion by 12:00 p.m. on January 6, 2025. *See id.*

6. As of filing this Objection, the First Sale Motion has not been withdrawn and the Sale Hearing remains on the Court's 10:00 a.m. docket for January 7, 2025.

7. On December 30, 2024, the Debtor filed the Second Sale Motion.

8. In connection with the Second Sale Motion, the Debtor filed its *Motion for an Order (A) Establishing Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (B) Approving the Form and Manner of Notices, (C) Scheduling Dates for an Auction and Sale Hearing, and (D) Authorizing and Approving the Form of the Stalking Horse Asset Purchase Agreement and Termination Fee* [Docket No. 123] (the "**Bidding Procedures Motion**") and its *Application (i) to Set a Hearing on the Bidding Procedures Motion, (ii) to Set a Deadline to*

*Respond to the Bidding Procedures Motion, and (iii) for Approval of the Form and Manner of Notice of the Bidding Procedures Motion* [Docket No. 124] (the "**Hearing Application**").

9. The proposed order attached to the Hearing Application as Exhibit A contemplates a deadline to object or respond to the Bidding Procedures Motion by 12:00 p.m. on January 6, 2025. *See* Hearing Application, Exhibit A.

10. On January 3, 2025, the Court entered the *Order Setting Hearing* on the Hearing Application for January 7, 2025 at 10:00 a.m.

11. As of the filing of this Objection, the final hearing on the Debtor's *Motion for an Order (i) Authorizing Post-Petition Credit, (ii) Granting Senior Secured Liens and Superpriority Claims Under Section 364(c) and (d) of the Bankruptcy Code, (iii) Granting Adequate Protection Liens, and (iv) Granting Related Relief* [Docket No. 73]. the First Sale Motion, and the Hearing Application.

    **B.**    **The Lease**

12. On June 13, 2023, the Debtor entered into that certain *Lease Agreement* (the "Lease") with STORE, pursuant to which the Debtor agreed to lease from STORE certain real property located at 5259, 5241 & 5211 S 49 AV W, Tulsa, OK 74107, including all buildings, fixtures and other improvements located on such real estate (the "Property") as more fully described in Exhibit B of the Lease. A true and correct copy of the Lease is attached hereto as **Exhibit A**.

13. The Lease provides that the Debtor may operate a steel product manufacturing facility at the Property for an initial base annual rental of $448,930.00 ($37,410.83 per month). The Lease has an initial term expiration date of June 30, 2043 with four (4) extension options of five (5) years each. If fully extended, the term expiration date of the Lease is June 30, 2063.

14. Under the Lease, "Personalty" is defined as:

> "*Personalty*" means any and all "goods" (excluding "inventory," and including, without limitation, all "equipment," "fixtures," appliances and furniture (as "goods," "inventory," "equipment" and "fixtures" are defined in the applicable Uniform Commercial Code then in effect in the applicable jurisdiction)) from time to time situated on or used in connection with the Property, whether now owned or held or hereafter arising or acquired, together with all replacements and substitutions therefore and all cash and non-cash proceeds (including insurance proceeds and any title and UCC insurance proceeds) and products thereof, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith.

Lease, Ex. A.

15. Pursuant to Section 3.04 of the Lease, STORE and the Debtor agreed that the Debtor shall only be authorized to remove Perosnalty from the Property upon expiration of the Lease and if the Debtor is not in default. Lease, § 3.04. Upon an occurrence of an event of default, the Lease provides STORE the right to, *inter alia*, "… seize all personal property or fixtures upon the Property…". Lease, § 12.02(c).

16. The Debtor failed to make the October 1, 2023 monthly rent payment and all subsequent payments due under the Lease. *Declaration of James J. Connor, Manager of Oklahoma Forge, LLC, in Support of Chapter 11 Case and First Day Motions*, ¶ 4. As of the Involuntary Petition Date, the Debtor owes STORE an amount not less than $411,519.13 in monthly lease payments, exclusive of interest, fees and costs. STORE has likewise not received a single rent payment due under the Lease after the Involuntary Petition Date or Voluntary Petition Date. As of the filing of this Objection, the Debtor owes STORE an amount not less than $187,054.15 in post-petition monthly lease payments, exclusive of interest, fees and costs (and not including "stub rent").

17. Prior to the Petition Date, the Debtor was in default under the Lease. As of the filing of this Objection, the Debtor remains in default under the Lease.

4

### C. The Second Sale Motion

18. The Second Sale Motion seeks to sell substantially all the Debtor's assets, including its "equipment and other tangible and intangible personal property assets (exclusive of accounts and the proceeds thereof … necessary to operate the metal forge business…" (the "**Purchased Assets**"). Second Sale Motion, ¶ 8. Additionally, the Second Sale Motion seeks to sell the Purchased Assets "…free and clear of all liens, claims, encumbrances and other interests of every and any kind…". *Id.*, ¶ 10.

19. The proposed Asset Purchase Agreement ("**APA**") attached to the Second Sale Motion as <u>Exhibit B</u> provides that the Debtor will sell:

> (c) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property, (the "**Tangible Personal Property**"), including, but not limited to, the Tangible Personal Property set forth on Section 1.01(c) of the Disclosure Schedules (*see* <u>Schedule 1.01(c) – Tangible Personal Property</u>);

APA, § 1.01(c). Schedule 1.01(c) of the Disclosure Schedules cites to the equipment list at the end of the APA's schedules and exhibits (the "**Equipment List**"). The Equipment List contains several fixtures and large pieces of equipment integrated into the Property, including multiple custom-made furnaces and metal presses. For example, the Equipment List includes a 100-ton press ring mill that extends two floors into the basement of the Property and takes up approximately 50 to 60 square feet of space. The Debtor's representative, Mr. James J. Connor, testified at the 341 Meeting of Creditors that approximately one-half (1/2) of the 100-ton press ring mill's total purchase cost was installation.

**LIMITED OBJECTION**

20. STORE does not object to the Second Sale Motion as a whole, but solely to the extent the Debtor seeks to sell fixtures that have become affixed to the Property and are not property of the Debtor's estate.

21. STORE files this objection out of an abundance of caution given the various matters set for hearing on January 7, 2025 and the contemplated objection deadlines in connection therewith of January 6, 2025 by 12:00 p.m. CT.

22. STORE further files this objection to provide all creditors and parties-in-interest of notice of STORE's position that the Fixtures are owned by STORE, as they are affixed to the Property.

23. Under Oklahoma law, a fixture is "'[a] thing . . . . affixed to land . . . . or imbedded in it . . . . or permanently resting upon it, as in the case of buildings, or *permanently* attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.'" *In re Tri-State Fabricators, Inc.*, 32 B.R. 260, 262 (Bankr. W.D. Okla. 1983) (quoting 60 O.S.1981 § 7) (emphasis retained). A well-recognized three-part test has been established to determine if a particular item of property is a fixture:

> This court has identified three factors to consider in determining whether an item is a fixture and thus not removable: (1) The actual or constructive annexation to the realty, or something appurtenant thereto, (2) the appropriateness to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make it a permanent accession to the freehold.

*In re Claxton*, 239 B.R. 598, 602 (Bankr. N.D. Okla. 1999) (quoting *C.I.T. Financial Services v. Premier Corporation*, 1987 OK 101, 747 P.2d 934, 936 (citing *United Benefit Life Insurance Co. v. Norman Lumber Company*, 1971 OK 52, 484 P.2d 527; *Hartford Fire Insurance Company v.*

*Balch*, 1960 OK 41, 350 P.2d 514; *Gray v. Prudential Ins. Co. of America*, 182 Okla. 342, 77 P.2d 563 (1938))).

24. As of this Objection, STORE has identified the following Personalty as fixtures and objects to their sale:[1]

| Location in Plant | Category | Classification | Size | OEM | Model | Serial# | Year Built | Machine Description |
|---|---|---|---|---|---|---|---|---|
| Press Ring Area | Ring Mill | Process Machinery | 100 Ton | SMS Meer Wagner | R100 | N/A | 2014 | 113" OD X 16-1/2" High Ring Forming Mill, With 100 Ton Cone Rolls, 100 Ton Mandrel, Hydraulic Cone & Mandrel Travels, Side Guide Rolls, Laser Od Measurement System, Dedicated Hydraulic System With [2] 60 HP / [2] Approximately 40 HP, And (1) Approximately 20 HP Motors, Fluid Reservoir, Valves, Kone Cranes 4 Ton Single Girder Top Running Bridge Crane With 12' Span X Approximately 30' Run-Out & Remote Control, Motor Control Center With Siemens Drives, Dedicated Amcot Mdl. St-150 150 Ton Cooling Tower With 5 HP Motor & [2] Trane Chillers (S/N: 99616), Control Room With Overall System Pc-Based Control With Component Controls, Kone Cranes Dedicated 10 Ton Single Girder Top Running Bridge Crane - Approximately 12' Span X 40' Run-Out, Radio Crane Control, Closed Loop Cone & Mandrel Cooling System, Dedicated Hotsy Pressure Washer |
| Press Ring Area | Ring Mill | Process Machinery | 125 Ton | Wagner | R125 | N/A | | 115" OD x 72" High Ring Forming Mill, Finished Ring Size, 125 Ton Cone Rolls, 125 Ton Mandrel, Hydraulic Cone Assembly Movement, Hydraulic Mandrel Adjustment, Side Guide Rolls With Hydraulic Adjustment, Power Overhead Clamp, Closed Loop Cone & Mandrel Coolant System, Hydraulic Cone Adjustment, Dedicated Hydraulic System With Fluid Reservoir, [2] 7-1/2 HP / 15 HP / [3] 50 HP Motors, Valves, Hydraulic Lines, Control Room With Siemens Control Panels, Overall System Pc Based Control Station With Component Controls, Dual Joystick Controls, Dedicated 2 Ton Rolling A-Frame, Dedicated Hotsy Pressure Washer |
| Press Ring Area | Forging Press | Process Machinery | 3,000 Ton | Lake Erie Engineering Corp. | | N/A | | 3,000 Ton 4-Post Hydraulic Forging Press, With 4' X 6' Bed, 74" Daylight, 33" Stroke, [2] Hydraulic Side Manipulating Arms, Dedicated Hydraulic System With [8] 150 HP Motors, Fluid Reservoir, Sliding Die With Rotating Head, Circulation Pump, Operator's Room With Allen Bradley Panelview 5510 Touch Screen Programmable Logic Control & Joystick, Allen Bradley Panelview 5510 Touch Screen Maintenance Control With Remote Access, Component Access Screen With Real Time Diagnostics, All Related Motors, Pumps, Valves, Hydraulic Lines, Filters, Etc. |
| Press Ring Area | Ring Mill | Process Machinery | 80 Ton | Rheinstahl Wagner | | 8050 N/A | | 54" OD X 14" High Ring Turning Mill, With 80 Ton Mandrel Side, 50 Ton Cone Side, 54" Max Forming Diameter, Approximately 50 HP Cone Roll Drive, 18" Cone Height Power Adjustment, 88" Cone Side Base Adjustment, Side Guide Rolls, Pit-Mounted Hydraulic System With 30 HP / Approximately 10 HP / 30 HP Pumps, 200 HP Main Drive Motor, 40 HP Cylinder Pump |

| Location in Plant | Category | Classification | Size | OEM | Model | Serial# | Year Built | Machine Description |
|---|---|---|---|---|---|---|---|---|
| Press Ring Area | Forging Press | Process Machinery | 1,500 Ton | Loewy Hydropress Inc. | | CH39729A | | 1,500 Ton 4-Post Hydraulic Forging Press, With 48" Diameter Bed, 38" Daylight, 25" Stroke, Dedicated Hydraulic System With [6] 150 HP Motors, Fluid Reservoir, Valves, Pipes & Filters, Control Room With Touch Screen Programmable Logic Control, Control Cabinet, All Related Hydraulic Lines, Controls, Pumps, Valves [Note: Machine Requires Approximately 12' Pit, Has Dedicated Cooling Tower] |

---

[1] STORE reserves the right to amend or supplement this list based on additional information and further investigation, including a 2004 exam of the Debtor's representative, Mr. Connor.

7

| Location in Plant | Category | Classification | Size | OEM | Model | Serial# | Year Built | Machine Description |
|---|---|---|---|---|---|---|---|---|
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Rail-Fed Car Bottom Gas Fired Heat Treating Furnace, With 1675° Max Temperature, Fiber Module Lining, [4] Exhaust Stacks, Temperature Regulators, 12-1/2' X 16' Rail Car, 12-1/2' X 16' X 11' High Chamber, Thermo-Coupler Temperature Control, [4] Cooling Fans, Control Panel With Digital High Limit Temperature Control, Honeywell Temperature Charter With Digital Readout, [7] Burners |
| Machine Shop | Vert Mill | Metalworking or Shop Machinery | | King Machine Tool Co. | | | | Twin Column Vertical Boring Mill, With 80" Diameter 4-Jaw Table With 40 HP Rotation Motor, 4-Position Tool Holder On Right Head, Swivel Heads, Approximately 5' Cross Travel, Approximately 42" Under Rail |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Rail-Fed Car Bottom Gas Fired Heat Treating Furnace, With 1675° Max Temperature, Fiber Module Lining, [10] Exhaust Stacks, Temperature Regulators, 10' X 25-1/2' Rail Car, 10' X 25-1/2' X 11' High Chamber, Control Cabinet With Digital Temperature Control, [4] Cooling Fans, Control Panel With Digital High Limit Temperature Control, Honeywell Temperature Charter With Digital Readout, [10] Burners |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher, Digital Temperature Control With Lcd Display, Digital Over Temperature Control, Power Doors With Pneumatic Actuation |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher, Digital Temperature Control With Lcd Display, Digital Over Temperature Control, Power Doors With Pneumatic Actuation |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher, Digital Temperature Control With Lcd Display, Digital Over Temperature Control, Power Doors With Pneumatic Actuation, Graph Recorder |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher, Digital Temperature Control With Lcd Display, Digital Over Temperature Control, Power Doors With Pneumatic Actuation |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Single Door Furnace, Gas-Fired, Fiber-Lined, Pass Through Type, 11.5' X 11.5' X 5.8' High Chamber, 2450° Max Temperature, [4] Burners, [2] Exhaust Stacks, Nanodac / Eurotherm, Control Panel With Temperature Grapher, Digital Temperature Control With Lcd Display, Digital Over Temperature Control, Power Doors With Pneumatic Actuation |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Rail-Fed Car Bottom Gas Fired Heat Treating Furnace, With 1675° Max Temperature, Fiber Module Lining, [4] Exhaust Ports With Common Stack, Temperature Regulators, 78" X 115-1/2" Rail Car, 78" X 115-1/2" X 7-1/4' High Chamber, Thermo-Coupler Temperature Control, [4] Cooling Fans, Control Panel With Digital High Limit Temperature Control, Honeywell Temperature Charter With Digital Readout, [2] Burners |
| Machine Shop | Vert Mill | Metalworking or Shop Machinery | | Bullard | | 10674 | | 48" Twin Column Vertical Boring Mill, With 50" Diameter 4-Jaw Chuck With 25 HP Rotation Motor, Swivel Heads, 4-Position Tool Holder On Right Head, Approximately 24" Power Cross Travels, Power Rail Adjustment, Newall Dp700 2-Axis Digital Readout |

| Location in Plant | Category | Classification | Size | OEM | Model | Serial# | Year Built | Machine Description |
|---|---|---|---|---|---|---|---|---|
| Saw Area | Bridge Crane | Plant Support | | | | | | Gaffey 10 Ton Single Girder Top Running Bridge Crane, With 40' Span X 60' Run-Out, Electric Cable Hoist, 20,000 Lb. Digital Crane Scale With Lifting Magnet, Radio Control |
| Heat Treating Area | Furnace | Process Machinery | | | | | | Custom-Built Rail-Fed Car Bottom Gas Fired Heat Treating Furnace, With 1675° Max Temperature, Fiber Module Lining, [1] Exhaust Stack, Temperature Regulators, 12-1/2' X 16' Rail Car, 91" X 185" X 86" High Chamber, Thermo-Coupler Temperature Control, [4] Cooling Fans, Control Panel With Digital High Limit Temperature Control, Honeywell Temperature Charter With Digital Readout, [4] Burners, Power Door |
| Machine Shop | Vert Lathe | Metalworking or Shop Machinery | | Bullard | | 2475 | | 60" Vertical Turret Lathe, With 60" 4-Jaw Chuck, 22" Height Under Rail, 30" Cross Travel, 5-Position Head, Wizard 2-Axis Digital Readout, Digital Rpm Readout, 30 HP Table Rotation Motor, Power Height Adjustment & Cross Travel, 4-Position Side Head |

APA, Equipment List, pp. 38-48.

25. While the Personalty listed on the Equipment List may on the surface appear easily moveable, any amount of greater description and understanding of the property makes clear that these items are fixtures and any attempt to remove these heavily integrated pieces of equipment would severely damage the Property. Furthermore, as a result of the Debtor's pre- and post-petition defaults under the Lease, coupled with the fact that the Lease has not been terminated, the Debtor does not have a right to remove any Personalty under the Lease.

**RESERVATION OF RIGHTS**

26. This Objection is submitted without prejudice to, and with a full reservation of, STORE's rights to supplement and amend this Objection, including the filing of a declaration in support thereof, to introduce evidence at any hearing relating to the Second Sale Motion, and to further object to the Second Sale Motion, on any grounds that may be appropriate, including reconsideration of any relief that may be granted pursuant to any interim or final order granting the Motion.

**CONCLUSION**

WHEREFORE, STORE MASTER FUNDING XIV, LLC, respectfully requests this Honorable Court to (i) sustain this Objection, and (ii) grant such further relief as the Court deems

appropriate.

Dated: January 6, 2025                        Respectfully submitted,

                                                **HALL ESTILL LLP**

                                                */s/ Steven W. Soule*
                                                Steven W. Soule (OBA No.13781)
                                                Taylor R. Bagby (OBA No. 35769)
                                                HALL ESTILL LLP
                                                521 E 2nd St Ste 1200
                                                Tulsa, OK 74120-1855
                                                (918)594-0400
                                                ssoule@hallestill.com

                                                -and-

                                                **REED SMITH LLP**

                                                Keith M. Aurzada (admitted *pro hac vice*)
                                                Dylan T.F. Ross (admitted *pro hac vice*)
                                                REED SMITH LLP
                                                2850 N. Harwood Street, Suite 1500
                                                Dallas, TX 75201
                                                Telephone: (469) 680-4200
                                                Facsimile: (469) 680-4299
                                                E-mail:  kaurzada@reedsmith.com
                                                             dylan.ross@reedsmith.com

                                                *Counsel for STORE MASTER FUNDING XIV, LLC*

# CERTIFICATE OF SERVICE

I, Steven W. Soule, hereby certify that, on the 6th day of January 2025, I served or caused to be served a copy of the foregoing document upon all parties in interest via the Court's CM/ECF notification system and by first class mail to:

Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc.
5259 S. 49th W. Ave.
Tulsa, OK 74107

U.S. Trustee
Office of the United States Trustee
P.O. Box 3044
Tulsa, OK 74101

*/s/ Steven W. Soule*
Steven W. Soule

## **Exhibit A**

(Lease)