IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 24-11060-M |
| OKLAHOMA FORGE, LLC d/b/a ) | Chapter 11 |
| OKLAHOMA FORGE, INC., ) | |
| ) | |
| Debtor. ) | |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S SALE MOTION

The Official Committee of Unsecured Creditors of Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc. (the "Committee"), through its undersigned counsel, hereby files its limited objection and reservation of rights to the *Debtor's Motion for an Order (1) Authorizing Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests, (2) Approving Distribution of Sale Proceeds and (3) Granting Related Relief* [Docket No. 122] (the "Sale Motion")[1] and hereby states as follows:

### BACKGROUND

1. On August 16, 2024 (the "Petition Date"), an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc. (the "Debtor") [Docket No. 1]. On November 22, 2024, an order for relief under chapter 7 was entered by this Court [Docket No. 59] and, later on November 22, 2024, an *Agreed Order Converting Chapter 7 Case to a Case Under Chapter 11* was entered by this Court [Docket No. 60]. The Debtor has continued in the management and possession of its business, assets, and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Committee was appointed by the Office of the United States Trustee by notice dated December 13, 2024 [Docket No. 95]. On January 23, 2025, the Committee retained

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

Bernstein-Burkley, P.C. as its lead counsel, and on January 29, 2025, the Committee retained Doerner, Sunders, Daniel & Anderson, LLP as its local counsel.

3. On December 30, 2024, the Debtor filed both the Sale Motion, seeking approval of a sale of substantially all its assets free and clear of liens, claims, encumbrances and other interests and the post-closing distribution of the sale proceeds, and its *Motion For An Order (A) Establishing Bidding Procedures In Connection with the Sale of Substantially All of the Debtors Assets (B) Approving the Form and Manner Of Notices, (C) Scheduling Dates for an Auction and Sale Hearing, and (D) Authorizing And Approving The Form Of A Stalking Horse Asset Purchase Agreement And Termination Fee* [Docket No. 123] (the "Bid Procedures Motion").

4. On January 22, 2025, the Court entered its *Corrected Order Granting Debtor's Motion to Approve (I) Bidding Procedures, (II) Form and Manner of Sale Notices, (III) Setting of an Auction, Sale Hearing, and Objection Deadline, and (IV) Authorizing and Approving Stalking Horse Agreement and Termination Fee* [Docket No. 157] (the "Bid Procedures Order") approving the sale process and bid procedures that the Debtor is to follow in contemplation of the relief requested in the Sale Motion (the "Bid Procedures").

## OBJECTION

5. As a general matter, the Committee supports a sale that maximizes the value to be realized by the Debtor and its estate. The Committee hopes that the sale process and the Bid Procedures will generate additional qualified bids and a competitive auction, and it does not seek to delay any sale. The Committee files this limited objection and reservation of rights expressly to reserve any rights that the Committee and the estate have against certain parties and to ensure the payment of the actual and necessary costs of the chapter 11 which provides a benefit to the prepetition secured lenders, the Stalking Horse/DIP Lender and the Debtor and its insiders. Before any distribution of sale proceeds is made to any prepetition secured creditors, the Committee

2

asserts that sufficient funds should be preserved to make sure that the chapter 11 administrative expenses are paid in full and to ensure that potential causes of action that may provide a recovery to unsecured creditors can be investigated and pursued.

6. As noted above, the Committee retained counsel less than a month ago. In that time, Committee's counsel has attempted to familiarize itself with the facts and circumstances underlying this chapter 11 case, the Court-approved expedited sale process and the potential avenues for recovery for the unsecured creditors. Among other things, the Committee is reviewing the facts and circumstances of Fidelis Holdings, LLC's ("Fidelis") highly leveraged acquisition of the Debtor,[2] the impact of the payment of the seller notes after the acquisition, the decline of the Debtor's business and the various relationships and transactions with insiders and affiliates of Fidelis.

7. Although the Committee has not had the time to fully investigate and make conclusions in the short time since its appointment and its retention of counsel, the Committee has concerns and is seeking information relating to the Debtor and its relationship and transaction with Fidelis and its affiliates and subsidiaries.

8. For example, the response to Question 4.1 of the Statement of Financial Affairs [Docket No. 97] ("SOFA") identifies $924,517.65 of transfers from the Debtor to Fidelis in the year before the bankruptcy, including $606,517.65 for management fees for which there is purportedly no written management agreement. The Debtor also made transfers to Fidelis subsidiaries Duenner Supply, LLC ($102,085.16), Alma Products I, LLC ($37,000) and Uptime Parts LLC ($800,000) in the year prior to the bankruptcy filing. Although the Debtor claims to

---

[2] In less than three years, the value of the Debtor's business dropped from $12,200,000 (the price Fidelis paid in April 2022) to $4,250,000 (the proposed purchase price offered by the Stalking Horse).

3

not have paid any non-insider creditor in the 90 days prior to the bankruptcy, more than $1.8 million went to Fidelis and its subsidiaries in the one-year insider preference period.

9. Fidelis's wholly owned subsidiaries, Duenner Supply, LLC ("Duenner Supply") and Oilfield Improvements, LLC ("Oilfield"), both operate out of the same physical location as the Debtor. Both Duenner Supply and Oilfield are in the process of selling substantially all their assets to one buyer with an expected sale closing in March 2025. The Committee has requested information regarding the business operations and assets of these Fidelis subsidiaries and the identity of the buyer. Upon information and belief, both Duenner Supply and Oilfield are solvent companies.

10. In addition, the Committee continues to review priority and perfection of the claims of the Debtor's prepetition secured lenders Loeb Term Solutions, LLC ("Loeb") and Pathward, NA ("Pathward" and together with Loeb, the "Prepetition Secured Lenders"), the potential existence of claims against the Prepetition Secured Lenders, as well as the impact of the ability of the Prepetition Secured Lenders to seek recovery from sources other than the Debtor. Duenner Supply and Fidelis affiliate, JDIN, LLC, are identified along with Fidelis as guarantors of both the Loeb and Pathward loans.

11. The Debtor's chapter 11 case and the benefits afforded by section 363 of the Bankruptcy Code should not only benefit the Prepetition Secured Lenders and the Stalking Horse/DIP Lender but should also provide for an orderly conclusion of the bankruptcy by covering the administrative costs of the case, including the investigation and pursuit of claims that may provide a recovery to unsecured creditors. The estate and the Committee need time and funds to further investigate these relationships and transactions, as well as the connections of these parties to the owners of the real estate that is potentially being sold as part of the proposed sale to FRG, to determine whether a liquidating plan or conversion are in the best interest of creditors.

12. In the Sale Motion, the Debtor requests that the Court authorize it to distribute the net cash portion of the purchase price, after the payment of the DIP Lender,[3] taxes, allocations and customary closing costs, to its prepetition secured lender, Loeb. The Committee requests that the Court require the Debtor to hold the net proceeds that are subject to the liens of the Prepetition Secure Lenders pending a determination that the actual and necessary costs of the chapter 11 case can be paid by the Debtor. The costs of the chapter 11 process should be paid, including the fees of the professionals retained by the estate, and the chapter 11 process should provide some benefit to the estate and unsecured creditors. Additionally, the Debtor and the estate may have rights to surcharge these proceeds under section 506(c) of the Bankruptcy Code, and delaying any distribution for a short time allows the Debtor and the Committee the opportunity consider end of case options.

## RESERVATION OF RIGHTS

13. The Committee and its members reserve all of their respective rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this objection, to seek discovery, to raise additional objections during any hearing on the Sale Motion, and to negotiate and document alternative resolutions to this objection and the Sale Motion. Moreover, the Committee expressly objects to the extent the relief requested in the Sale Motion would provide for a release or waiver of any rights, claims, remedies or other causes of action against any party other than those expressly contemplated for the Winning Bidder that closes on the sale. Any rights, claims, remedies, or any other causes of action that the Committee and its members, the Debtor, the estate or any other party in interest may have against Fidelis and

---

[3] It appears that there is an error in paragraph 36 of the Sale Motion and paragraph 18 of the proposed order approving the sale that the Termination Fee is to be paid even in the circumstance that the Stalking Horse/DIP Lender is the Winning Bidder. The Termination Fee should only be paid in the event of the closing a sale transaction with a Winning Bidder other than the Stalking Horse/DIP Lender.

its affiliates, the prior owners of the Debtor, the Prepetition Secured Lenders, and their respective shareholders, members, managers, officers, directors, employees, agents and representatives should expressly be preserved.

WHEREFORE, the Committee respectfully requests that the Court enter an order (i) requiring the Debtor to hold any net sale proceeds that would be paid to the Prepetition Secured Lenders subject further order of the Court, (ii) expressly reserving and preserving claims against parties and (iii) granting such other and further relief as the Court may deem proper.

Dated: February 13, 2025

Respectfully submitted,

**BERNSTEIN-BURKLEY, P.C.**

 /s/ Gus Kallergis
Harry W. Greenfield, Esq. (OH 0003839)
Robert M. Stefancin, Esq. (OH 0047184)
Gus Kallergis, Esquire (OH 0071557)
Kirk B. Burkley (PA 89511)
1360 East Ninth Street, Suite 1250
Cleveland, Ohio 44114
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
hgreenfield@bernsteinlaw.com
rstefancin@bernsteinlaw.com
gkalleris@bernsteinlaw.com
kburkley@bernsteinlaw.com

and

**DOERNER SAUNDERS DANIEL & ANDERSON**

J. Patrick Mensching, OBA #6136
Two West Second Street, Suite 700
Tulsa, Oklahoma 74103
Telephone: (918) 591-5240
Facsimile: (918) 925-5240
pmensching@dsda.com

*Counsel to the Official Committee of Unsecured Creditors*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 13, 2025, a true and correct copy of the above and foregoing *Limited Objection and Reservation of Rights* was electronically served on the parties to the above proceeding through the Court's CM/ECF system and emailed to the parties identified below.

- Counsel to the Debtor, Crowe Dunlevy, Mark A. Craige (mark.craige@crowedunlevy.com);
- Counsel to the Stalking Horse Bidder, Marc N. Swanson (swansonm@millercanfield.com) and Jonathan S. Green (greenj@millercanfield.com);
- Counsel to Loeb Term Solutions, LLC, Thomas E. Coughlin (tcoughlin@taftlaw.com);
- Counsel to Pathward, NA, Bradley K. Jones (bkjones@rappandkrock.com); and
- Office of the United States Trustee, Mary Kindelt (mary.kindelt@usdoj.com).

    /s/ Gus Kallergis
Gus Kallergis