# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| OKLAHOMA FORGE, LLC d/b/a | § | Case No. 24-11060-M |
| OKLAHOMA FORGE, INC., | § | |
| | § | Chapter 11 |
| Debtor | § | |
| | § | |

**STORE MASTER FUNDING XIV, LLC'S SUPPLEMENTAL LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR AN ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) APPROVING DISTRIBUTION OF SALE PROCEEDS, AND (3) GRANTING RELATED RELIEF**
[Relates to Docket Nos. 122 & 135]

STORE MASTER FUNDING XIV, LLC ("**STORE**"), by and through its undersigned counsel, files this *Supplemental Limited Objection and Reservation of Rights* (this "**Supplemental Objection**") to *Debtor's Motion for an Order (1) Authorizing Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief* [Docket No. 122] (the "**Sale Motion**"), filed by Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc. (the "**Debtor**" or "**Lessee**"). In support of this Supplemental Objection, STORE respectfully states as follows:

## BACKGROUND

### A. Procedural Posture

1. On August 16, 2024 (the "**Involuntary Petition Date**"), Ellwood Quality Steels Company ("**EQSC**"), Ellwood National Steel Company ("**ENSC**") and Lehigh Specialty Melting, Inc. ("**LSMI**") filed an involuntary petition under chapter 7 of the Bankruptcy Code against the Debtor, thereby commencing the above-captioned bankruptcy case (the "**Bankruptcy Case**"). *See* Docket No. 1.

2. On October 8, 2024, Metro Machine Works, Inc. ("**Metro Machine**" and collectively with LSMI, EQSC, ENSC, the "**Petitioning Creditors**") filed its *Motion to Join as Petitioning Creditor in Involuntary Petition* [Docket No. 25].

3. On November 22, 2024 (the "**Voluntary Petition Date**"), the Court entered the Agreed Order Converting Chapter 7 Case to Case Under Chapter 11 [Docket No. 60].

4. On December 30, 2024, the Debtor filed the Sale Motion.

5. In connection with the Sale Motion, the Debtor filed its *Motion for an Order (A) Establishing Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (B) Approving the Form and Manner of Notices, (C) Scheduling Dates for an Auction and Sale Hearing, and (D) Authorizing and Approving the Form of the Stalking Horse Asset Purchase Agreement and Termination Fee* [Docket No. 123] (the "**Bidding Procedures Motion**").

6. On January 6, 2025, STORE filed its *Limited Objection and Reservation of Rights to Debtor's Motion for an Order (1) Authorizing Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances and Other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief* [Docket No. 135] (the "**Limited Objection**").

7. On January 22, 2025, the Court entered its *Corrected Order Granting Debtor's Motion to Approve (I) Bidding Procedures, (II) Form and Manner of Sale Notices, (III) Setting of an Auction, Sale Hearing, and Objection Deadline, and (IV) Authorizing and Approving Stalking Horse Agreement and Termination Fee* [Docket No. 157] (the "**Bid Procedures Order**")[1] approving the sale process and Bidding Procedures Motion.

---

[1] All capitalized terms not otherwise defined herein shall be given the meaning ascribed to them in the Bid Procedures Order.

8. As of the filing of this Supplemental Objection, the hearing on the Sale Motion is scheduled for February 20, 2025 at 1:30 p.m. CT (the "*Sale Hearing*").

B. **The Lease**

9. On June 13, 2023, the Debtor entered into that certain *Lease Agreement* (the "Lease") with STORE, pursuant to which the Debtor agreed to lease from STORE certain real property located at 5259, 5241 & 5211 S 49 AV W, Tulsa, OK 74107, including all buildings, fixtures and other improvements located on such real estate (the "Property") as more fully described in Exhibit B of the Lease. A true and correct copy of the Lease is attached hereto as **Exhibit A**.

10. The Lease provides that the Debtor may operate a steel product manufacturing facility at the Property for an initial base annual rental of $448,930.00 ($37,410.83 per month). The Lease has an initial term expiration date of June 30, 2043 with four (4) extension options of five (5) years each. If fully extended, the term expiration date of the Lease is June 30, 2063.

11. Under the Lease, "Personalty" is defined as:

> "*Personalty*" means any and all "goods" (excluding "inventory," and including, without limitation, all "equipment," "fixtures," appliances and furniture (as "goods," "inventory," "equipment" and "fixtures" are defined in the applicable Uniform Commercial Code then in effect in the applicable jurisdiction)) from time to time situated on or used in connection with the Property, whether now owned or held or hereafter arising or acquired, together with all replacements and substitutions therefore and all cash and non-cash proceeds (including insurance proceeds and any title and UCC insurance proceeds) and products thereof, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith.

Lease, Ex. A.

12. Pursuant to Section 3.04 of the Lease, STORE and the Debtor agreed that the Debtor shall only be authorized to remove Perosnalty from the Property upon expiration of the Lease and if the Debtor is not in default. Lease, § 3.04. Upon an occurrence of an event of default,

the Lease provides STORE the right to, *inter alia*, "… seize all personal property or fixtures upon the Property…". Lease, § 12.02(c).

13. The Debtor failed to make the October 1, 2023 monthly rent payment and all subsequent payments due under the Lease. *Declaration of James J. Connor, Manager of Oklahoma Forge, LLC, in Support of Chapter 11 Case and First Day Motions*, ¶ 4. As of the Involuntary Petition Date, the Debtor owes STORE an amount not less than $411,519.13 in monthly lease payments, exclusive of interest, fees and costs. STORE has only received two rent payments due under the Lease after the Involuntary Petition Date or Voluntary Petition Date. As of the filing of this Supplemental Objection, the Debtor owes STORE an amount not less than $187,054.15 in post-petition monthly lease payments, exclusive of interest, fees and costs (and not including "stub rent").

14. Prior to the Petition Date, the Debtor was in default under the Lease. As of the filing of this Supplemental Objection, the Debtor remains in default under the Lease.

    **C.**    **The Sale Motion**

15. The Sale Motion seeks to sell substantially all the Debtor's assets, including its "equipment and other tangible and intangible personal property assets (exclusive of accounts and the proceeds thereof … necessary to operate the metal forge business…" (the "***Purchased Assets***"). Sale Motion, ¶ 8. Additionally, the Sale Motion seeks to sell the Purchased Assets "…free and clear of all liens, claims, encumbrances and other interests of every and any kind…". *Id*., ¶ 10.

16. The proposed Asset Purchase Agreement ("***APA***") attached to the Sale Motion as Exhibit B provides that the Debtor will sell:

> (c) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property, (the "**Tangible Personal Property**"), including, but not limited to, the Tangible Personal Property set forth on Section 1.01(c) of the Disclosure Schedules (*see* Schedule 1.01(c) – Tangible Personal Property);

APA, § 1.01(c). Schedule 1.01(c) of the Disclosure Schedules cites to the equipment list at the end of the APA's schedules and exhibits (the "*Equipment List*"). The Equipment List contains several fixtures and large pieces of equipment integrated into the Property, including multiple custom-made furnaces and metal presses. For example, the Equipment List includes a 100-ton press ring mill that extends two floors into the basement of the Property and takes up approximately 50 to 60 square feet of space. The Debtor's representative, Mr. James J. Connor, testified at the 341 Meeting of Creditors that approximately one-half (1/2) of the 100-ton press ring mill's total purchase cost was installation.

## SUPPLEMENTAL LIMITED OBJECTION

<u>The Debtor cannot sell fixtures owned by STORE</u>.

17. As detailed in the Limited Objection, STORE does not object to the Sale Motion as a whole, but solely to the extent the Debtor seeks to sell fixtures that have become affixed to the Property and are not property of the Debtor's estate.

18. Under Oklahoma law, a fixture is "'[a] thing . . . . affixed to land . . . . or imbedded in it . . . . or permanently resting upon it, as in the case of buildings, or *permanently* attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.'" *In re Tri-State Fabricators, Inc.*, 32 B.R. 260, 262 (Bankr. W.D. Okla. 1983) (quoting 60 O.S.1981 § 7) (emphasis retained). A well-recognized three-part test has been established to determine if a particular item of property is a fixture:

> This court has identified three factors to consider in determining whether an item is a fixture and thus not removable: (1) The actual or constructive annexation to

5

the realty, or something appurtenant thereto, (2) the appropriateness to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make it a permanent accession to the freehold.

19. *In re Claxton*, 239 B.R. 598, 602 (Bankr. N.D. Okla. 1999) (quoting *C.I.T. Financial Services v. Premier Corporation*, 1987 OK 101, 747 P.2d 934, 936 (citing *United Benefit Life Insurance Co. v. Norman Lumber Company*, 1971 OK 52, 484 P.2d 527; *Hartford Fire Insurance Company v. Balch*, 1960 OK 41, 350 P.2d 514; *Gray v. Prudential Ins. Co. of America*, 182 Okla. 342, 77 P.2d 563 (1938))).

20. While the Personalty listed on the Equipment List may on the surface appear easily moveable, any amount of greater description and understanding of the property makes clear that these items are fixtures and any attempt to remove these heavily integrated pieces of equipment would severely damage the Property. Furthermore, as a result of the Debtor's pre- and post-petition defaults under the Lease, coupled with the fact that the Lease has not been terminated, the Debtor does not have a right to remove any Personalty under the Lease.

<u>The Debtor is unable to satisfy a closing condition of the TSK APA</u>.

21. As of filing this Supplemental Objection, TSK Partners, LLC d/b/a McInnes Rolled Rings ("***TSK***") submitted a competing bid to purchase substantially all assets of the Debtor. A true and correct copy of TSK's proposed Asset Purchase Agreement (the "***TSK APA***") is attached hereto as **Exhibit B**. A true and correct copy of a redline of the TSK APA (the "***APA Redline***") is attached hereto as **Exhibit C**.

22. The TSK APA, as detailed in the APA Redline, includes the following language as a closing condition to consummate TSK's proposed transaction with the Debtor:

> (a) The receipt of an executed License Agreement entered into by and between Store Master Funding XIV LLC and Buyer for access to the real property located at 5259 South 49th West Avenue, Tulsa, Oklahoma 74107 for a period of not more than six (6) months (subject to Buyer's option to extend) for the purpose of removing the Purchased Assets from the property.

*See* APA Redline, p. 16.

23. In addition to the objections raised in the Limited Objection, STORE further objects to the extent the Debtor, TSK, or any other party seeks to modify the Lease without STORE's consent. Moreover, STORE objects to the extent the Debtor, TSK, or any other party seeks to compel STORE to enter into any new lease, agreement, resolution, or license without STORE's approval and agreement.

24. While the Stalking Horse APA and TSK APA both provide that the Debtor will reject all leases "including, but not limited to, (i) the lease with Store Master Funding XIV, LLC, and (ii) the sublease with Duenner Supply Company" STORE raises these supplemental objections out of an abundance of caution and to inform the all creditors and parties-in-interest that STORE has not consented to any "License Agreement" with TSK.

25. As more thoroughly detailed in the Limited Objection, STORE does not object to the Sale Motion as a whole, but solely to the extent the Debtor seeks to sell fixtures that have become affixed to the Property and are not property of the Debtor's estate. Upon information and belief, TSK seeks to purchase the very fixtures that STORE asserts run with the Property. Accordingly, STORE does not anticipate that it will consent to any "License Agreement" with

7

TSK and, thus, it does not appear that the Debtor will be able to satisfy this closing condition of the TSK APA.

### STORE has a validly perfected "landlord's lien" over the Personalty.

26. In addition to ownership and control of the Property (including the fixtures) STORE asserts in the Limited Objection and incorporates herein, STORE is also secured by the Personalty pursuant to its Lease with the Debtor.

27. As noted above, upon an occurrence of an event of default, the Lease provides STORE the right to, *inter alia*, "… to seize all personal property or fixtures upon the Property which Lessee owns or in which it has an interest, in which Lessor shall have a landlord's lien and/or security interest…". Lease, § 12.02(c).

28. In connection with the Lease, STORE filed its *Memorandum of Lease* (the "***Memorandum***") in the real property records of Tulsa County. A true and correct copy of the Memorandum is attached hereto as **Exhibit D**. The Memorandum explicitly provides and grants STORE a landlord's lien "in, on and against all personal property, appliances, furniture and equipment of [the Debtor] … which lien and security interest shall secure payment of all rental and other charged payable by [the Debtor] to [STORE] under the terms of the Lease…" Memorandum, ¶ 10.

29. For the reasons stated in its Limited Objection as well the additional reasons provided herein, STORE objects to the sale and transfer of any of the Personalty, including the fixtures on the Equipment List identified in the Limited Objection.

## **RESERVATION OF RIGHTS**

30. This Supplemental Objection is submitted without prejudice to, and with a full reservation of, STORE's rights to supplement and amend this Supplemental Objection, including

the filing of a declaration in support thereof, to introduce evidence at any hearing relating to the Sale Motion, and to further object to the Sale Motion, on any grounds that may be appropriate, including reconsideration of any relief that may be granted pursuant to any interim or final order granting the Sale Motion.

## CONCLUSION

WHEREFORE, STORE MASTER FUNDING XIV, LLC, respectfully requests this Honorable Court to (i) sustain this Supplemental Objection, and (ii) grant such further relief as the Court deems appropriate.

Dated: February 14, 2025          Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*/s/ Taylor R. Bagby*
Steven W. Soule (OBA No. 13781)
Taylor R. Bagby (OBA No. 35769)
521 E 2nd St Ste 1200
Tulsa, OK 74120-1855
(918)594-0400
ssoule@hallestill.com
tbagby@hallestill.com

-and-

**REED SMITH LLP**

Keith M. Aurzada (admitted *pro hac vice*)
Dylan T.F. Ross (admitted *pro hac vice*)
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail: kaurzada@reedsmith.com
       dylan.ross@reedsmith.com

*Counsel for STORE MASTER FUNDING XIV, LLC*

**CERTIFICATE OF SERVICE**

  I, Steven W. Soule, hereby certify that, on the 14th day of February 2025, I served or caused to be served a copy of the foregoing document upon all parties in interest via the Court's CM/ECF notification system and by first class mail to:

Oklahoma Forge, LLC d/b/a Oklahoma Forge, Inc.
5259 S. 49th W. Ave.
Tulsa, OK 74107

U.S. Trustee
Office of the United States Trustee
P.O. Box 3044
Tulsa, OK 74101

             */s/ Taylor R. Bagby*
             Taylor R. Bagby

**<u>Exhibit A</u>**

(Lease)

**Exhibit B**

(TSK APA)

**Exhibit C**

(APA Redline)

**Exhibit D**

(Memorandum)