# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA




| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **OKLAHOMA FORGE, LLC, d/b/a** | ) | **Case No. 24-11060-T** |
| **OKLAHOMA FORGE, INC.** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |

## ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) APPROVING DISTRIBUTION OF SALE PROCEEDS, AND (3) GRANTING RELATED RELIEF

This matter having come before the Court on the Debtor's Motion for an Order (1) Authorizing Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief [Doc. 317] (the "Sale Motion"),[1] requesting entry of an order (this "Sale Order") authorizing and approving the sale of the Purchased Assets (as defined in the APA (defined below)), free and clear of all liens, claims, encumbrances and other interests, to Forge Group OKF LLC, an Illinois limited liability company ("Buyer"), as buyer designee of Forge Resources Group LLC, an Illinois limited liability company; the Sale Motion having been filed after the Court denied in a text-only order ("Denial Order") [Doc. 308] the prior Motion for an Order (1) Authorizing Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests, (2) Approving Distribution of Sale Proceeds, and (3) Granting Related Relief [Doc. 122] (the "Prior Sale Motion"); and, after having entered an order approving, among other things, the bidding procedures appended to the bidding procedures order as Exhibit A (inclusive of such bidding procedures, the "Bidding Procedures Order") [Doc. 157], and, in furtherance of the Prior Sale Motion and in accordance

[1] Capitalized terms used but not defined in this Sale Order shall have the respective meanings ascribed to such terms in the APA (as defined below), and, if not defined therein, in the Sale Motion.

with the Bidding Procedures Order, an Auction having been held on February 20, 2025; and, as a result of that Auction, the Debtor having selected and designated Buyer as the party submitting the Winning Bid for the Purchased Assets at the Auction pursuant to the Bidding Procedures Order, as evidenced by the Debtor's Notice Regarding Successful Bidders filed on March 10, 2025 ("Designation Notice") [Doc. 258]; and the Court having conducted an evidentiary hearing on the Prior Sale Motion on February 20, 2025, as continued to February 25, 2025, March 17, 2025, March 18, 2025, and March 27, 2025 (the "Prior Sale Hearing"); and, at the conclusion of the Prior Sale Hearing, the Court having denied the Prior Sale Motion, as evidenced by the Denial Order, concluding that an additional opportunity to bid was necessary for the reasons set forth on the record of the Prior Sale Hearing; and, as a result of the Denial Order and the Court's instructions at the Prior Sale Hearing, the Debtor having provided Buyer and TSK Partners, LLC d/b/a/ McInnes Rolled Rings, a Pennsylvania limited liability company, or its designee ("TSK") with an opportunity to each submit one final and best bid to purchase the Purchased Assets ("Final Bid"), in accordance with the Bidding Procedures Order, as supplemented by the instructions set forth in an email dated April 1, 2025, sent by Debtor's counsel to counsel for Buyer and counsel for TSK (the "Additional Bid Solicitation"), a copy of such Additional Bid Solicitation having been filed with the Court as Exhibit 1 to the Debtor's Second Notice Regarding Successful Bidders [Doc. 313] ("Second Designation Notice"); and, upon receipt of a Final Bid from each of Buyer and TSK at the conclusion of the Additional Bid Solicitation and the Debtor's evaluation thereof, Debtor having selected and designated Buyer as the Winning Bidder (as defined in the Bidding Procedures Order) having submitted the highest or best bid, as evidenced by the Second Designation Notice and for the reasons set forth in the Second Designation Notice; and, thereafter, having filed the Sale Motion, in connection with, and for authorization and approval of, the Winning Bid to Buyer

as the Winning Bidder; and, upon proper prior notice, a hearing having been held on the Sale Motion on April 30, 2025 ("Sale Hearing"), pursuant to an Order Setting Expedited Hearing and Shortening Notice Period entered on April 14, 2025 [Doc. 321], at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the Asset Purchase Agreement dated as of April 3, 2025, by and between Debtor and Buyer (together with all ancillary documents, and as it and they may be further amended, modified, supplemented or restated, the "APA"), a copy of which is attached as Exhibit E to the Sale Motion; (iii) the Designation Notice and Second Designation Notice, (iv) the Declaration of James J. Connor, Manager of Oklahoma Forge, LLC. In Support of Chapter 11 Case and First Day Motions [Doc. 91] ("Connor Declaration"), (v) the Declaration of David Payne [Doc. 128] ("Payne Declaration"), (vi) the Declaration of Jeff Jones [Doc. 222] ("Jones Declaration"), (vii) the Declaration of James J. Connor, Manager of Oklahoma Forge, LLC. In Support of Sale Motion [Doc. 216] ("Second Connor Declaration"), (viii) the Declaration of David Payne in Support of the Sale Motion [Doc. 233] ("Second Payne Declaration"), (ix) a third Declaration of David Payne in Support of Sale Motion [Doc. 274] ("Third Payne Declaration"), (x) the Declaration of Jeffrey T. Jones [Doc. 336] ("Second Jones Declaration"), (xi) a fourth Declaration of David Payne in Support of Sale Motion [Doc. 337] (the "Fourth Payne Declaration"), and (xii) Declaration of James J. Connor, Manager of Oklahoma Forge, LLC. In Support of Sale Motion [Doc. 339] (the "Third Connor Declaration" and, together with the Connor Declaration, the Payne Declaration, the Jones Declaration, the Second Connor Declaration, the Second Payne Declaration, the Third Payne Declaration, the Fourth Payne Declaration, and the Second Jones Declaration, the "Declarations"), (xiii) all objections, statements and reservations of rights filed with the Court, including (a) the limited objection filed

by the Ellwood Companies ("Ellwood Objection") [Doc. 206], (b) the limited objection of the Committee of Unsecured Creditors [Doc. 203], (c) the supplemental limited objection of Store Master Funding XIV, LLC ("Store" and the "Store Objection") [Doc. 204], (d) the Objection of the Ellwood Creditors and TSK Partners LLC d/b/a/ McInnes Rolled Ring to Debtor's Notice Regarding Successful Bidder and Request for Relief Under Motion to Sell with Points of Authority [Doc. 262], (e) the Statement and Reservation of Rights of the Official Committee of Unsecured Creditors to Debtor's Sale Motion [Doc. 330], and (f) the Ellwood Companies' Objection to Sale Motion (the "Ellwood Sale Objection") [Doc. 331] (each of clause (xiii), subclauses (a) through (f), an "Objection" and, collectively with any informal objections received by the Debtor, the "Objections"); (xiv) all replies filed with the Court, including the replies filed by (a) the Debtor in connection with the Ellwood Objection (the "First Reply") [Doc. 228], (b) Loeb Term Solutions, LLC in connection with the Store Objection ("Loeb" and the "Loeb Reply") [Doc. 208], (c) a second reply filed by the Debtor in connection with the Store Objection ("Second Reply") [Doc. 230], (d) a Joinder by Ellwood Group, Inc. [Doc. 237] in portions of the Loeb Reply and in the Second Reply, Debtor's Memorandum in Support of Sale [Doc. 294], (e) Ellwood Companies' trial brief [Doc. 300], (f) Buyer's brief in response to questions posed by the Court [Doc. 303], (g) Store's brief in support of Sale Motion [Doc. 304], and (h) Store's Reply to Ellwood Companies' Objection to Debtor's Sale Motion [Doc. 340] (each, a "Reply" and, collectively the "Replies"), (xv) a form of the proposed order authorizing and approving the Sale Motion filed as an attachment in clean and redlined form to the notice of revised form of sale order filed on April 29, 2025 [Doc. 338] ("Notice of Form Sale Order"), and an unentered copy of this Sale Order [Doc. 355] ("Post-Sale Hearing Form of Sale Order") filed with the Court in clean and redlined form against the Notice of Form Sale Order and (xvi) the arguments of counsel made, and the testimony and other

evidence proffered or adduced, including the direct testimony in the Declarations, which were admitted into evidence and any cross-examination of the declarants, at the Prior Sale Hearing and the Sale Hearing; and after taking the matter under advisement at the conclusion of the Sale Hearing and after further due deliberation the Court having issued its Memorandum Opinion dated May 13, 2025 [Doc. 354] ("Memorandum Opinion") making certain findings of fact and reaching certain conclusions of law, all of which are incorporated herein by reference as if fully set forth herein, and the Court having further determined that the legal and factual basis set forth in the Sale Motion, the procedures outlined in the Additional Bid Solicitation, and the reasons for selecting Buyer as the Winning Bidder set forth in the Second Declaration Notice, support the Debtor's business judgment and establish just cause for the relief granted herein for the reasons more fully set forth in the Memorandum Opinion; and it appearing that the relief requested in the Sale Motion and authorization and approval of the APA are in the best interest of Debtor, its estate and its creditors, and the Debtor having demonstrated good, sufficient and sound business justifications for the relief granted herein,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A. Jurisdiction and Venue. This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Final Order. This Sale Order constitutes a final order within the meaning of

[2] The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

28 U.S.C. § 158(a).

C. Statutory Predicates. The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006, and LR6004-1.[3]

D. Notice and Opportunity to Be Heard. As evidenced by the certificate of mailing concerning the Sale Motion and the Sale Hearing filed with the Court [Doc. 325], the Debtor has provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion and the Sale Hearing, and the sale of the Purchased Assets to Buyer pursuant to the APA (the "Transaction"), free and clear of any Interests (as defined below) (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order) within the meaning of section 363(f) of the Bankruptcy Code, and this Sale Order, in accordance with §§ 102(1), 105, 363 and 365, Rules 2002, 6004 and 6006, and LBR6004-1, to all persons and entities entitled to such notice, including (i) all entities known to have asserted any lien, claim, encumbrance, or other interest in or upon all or any portion of the Purchased Assets, including Loeb and Pathward, National Association ("Pathward" and together with Loeb, "Prepetition Lenders"), and Store; (ii) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Sale Motion; (iii) the office of the U.S. Trustee; (iv) the Internal Revenue Service; (v) Chubb Federal Insurance Company; (vi) all persons and entities that have requested service of filings in this bankruptcy case ("Chapter 11 Case") pursuant to Rule 2002; (vii) all parties expressing an interest in the Transaction prior to the Petition Date; (viii) all parties listed on the

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Bankruptcy Rule" or "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure. References to "LBR" are to the Local Rules of Bankruptcy Practice of the United States District Court for the Northern District of Oklahoma.

official Matrix in this case, and (ix) all other Notice Parties as defined in and required by the Bidding Procedures Order. Such notice was good, sufficient, and appropriate under the circumstances; and no other or further notice of any of the foregoing is required.

E. Sound Business Purpose. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion. The approval of and entry into the APA, and any ancillary agreements thereto (i) is a result of due deliberation by the Debtor and constitutes a sound and reasonable exercise of the Debtor's business judgment consistent with its fiduciary duties; (ii) provides additional value and is beneficial to the Debtor's estate, and is in the best interests of the Debtor, its estate, and its stakeholders; and (iii) is reasonable and appropriate under the circumstances. Business justifications for entry into the APA include, without limitation, the following: (i) the APA constitutes the highest or best offer received for the Purchased Assets after the Purchased Assets were extensively and exhaustively marketed, an Auction was held, and an Additional Bid Solicitation was undertaken, all without the Debtor receiving any higher or better offer for the Purchased Assets than the offer received from the Buyer reflected in the APA; (ii) the APA represents the best opportunity to maximize the value of the Purchased Assets and to avoid further decline and devaluation as a result of further delay; (iii) failure to consummate the Transaction expeditiously, as provided under the APA, could materially diminish creditor recoveries; (iv) the limited operating cash and other liquidity necessary to pay or otherwise satisfy administrative expenses that continue to mount, and (v) the immediate consummation of the Transaction contemplated by the APA is necessary to maximize the value of the Debtor's estate.

F. Marketing Process and Auction. As demonstrated by the testimony submitted at the Prior Sale Hearing, the Sale Hearing, and in the Declarations, the Debtor and its professionals

marketed the Purchased Assets before and continued to market the Purchased Assets after the Petition Date and conducted the marketing and sale process set forth in and in accordance with the Prior Sale Motion, the Bidding Procedures Order, and the Additional Bid Solicitation. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets at an Auction that was held on February 20, 2025, pursuant to the Bidding Procedures Order, and an additional, reasonable and fair opportunity was afforded to Buyer and TSK pursuant to the Additional Bid Solicitation. The procedures set forth in the Additional Bid Solicitation were reasonable and within the broad discretion of the Debtor to determine the appropriate procedures for marketing and selling the Purchased Assets, and is consistent with ¶4(b) of the Bidding Procedures Order (Memorandum Opinion at 10). Both TSK and Buyer were aware of the full range of criteria Debtor would use to evaluate the highest and best offer (Memorandum Opinion at 10). Except for the Final Bids of Buyer and TSK, Debtor has received no other offers for the Purchased Assets and, as a result of this Court's ruling on the Debtor's Motion for Entry of an Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Time to Assume or Reject Unexpired Lease of Nonresidential Real Property and Notice of Opportunity for Hearing [Doc. 286] ("<u>Lease Extension Motion</u> ") denying the Lease Extension Motion, after a hearing was held thereon on April 30, 2025 and for the reasons set forth in the record at that hearing, by text-only order dated April 30, 2025 [Doc.344] ("<u>Lease Extension Denial Order</u>"), the TSK Final Bid (as defined in Finding of Fact K below) is no longer viable (Memorandum Opinion at page 8), leaving Buyer's Final Bid pursuant to the APA and this Sale Order as the only viable Final Bid for the Purchased Assets.

G. Highest or Best Value. The purchase price for the Purchased Assets, as determined by the Debtor, in its reasonable business judgment and in a manner consistent with its fiduciary duties, as documented in the APA, is fair and was the highest or best offer received for the Purchased Assets. Consummating the Transaction as contemplated in the APA will yield greater value to the Debtor's estate than would have been provided by any other available alternative transaction and with more certainty.

H. Fair Consideration. The consideration that the Buyer will pay under the APA constitutes (i) fair and reasonable consideration for the Purchased Assets, and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

I. Free and Clear Sale. The Debtor may sell the Purchased Assets free and clear of all Interests and all Adverse Claims (defined below), including but not limited to all claimed or actual interests or assertions of rights and/or title to the Purchased Assets (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order), because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) has been satisfied. Any holders of Interests that objected to the Transaction as contemplated by the APA or the Sale Motion and that have an Interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to § 363(f)(5) or fall within one or more of the other subsections of § 363(f) and, therefore, are adequately protected by having their Interests on the Purchased Assets attach solely to the proceeds of the Transaction contemplated by the APA ultimately attributable to the sale of the property on which such holders have an Interest, in

the same order of priority, and with the same validity, force, and effect that such Interests had prior to the consummation of the Transaction contemplated by the APA, subject to any rights, claims, or defenses of the Debtor and its estate. The Prepetition Lenders have each consented to the sale of the Purchased Assets to Buyer free and clear of their respective Interests on the Purchased Assets pursuant to § 363(f)(2), *provided* that the liens of the Prepetition Lenders shall attach to the cash proceeds of the Purchased Assets and such cash proceeds are treated in accordance with paragraph 16 of this Sale Order. Interest holders that did not object, or that withdrew their objections, to the Sale Motion and/or the Transaction contemplated by the APA, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Interests on the Purchased Assets pursuant to § 363(f)(2).

J. Buyer's Reliance on Free and Clear Sale. The Buyer would not have entered into the APA and would not consummate the Transaction contemplated by the APA if the sale of the Purchased Assets were not free and clear of all Interests (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order), or if the Buyer would, or in the future could, be liable for any such Interests. A sale of the Purchased Assets other than one free and clear of all such Interests would adversely impact the Debtor, its estate, and its creditors, and would yield substantially less value for the Purchased Assets and the Debtor's estate and with less certainty than provided by the Transaction contemplated by the APA. The total consideration to be provided under the APA reflects the Buyer's reliance on this Sale Order to provide it, pursuant to §§ 105(a) and 363(f), with title to, and possession of, the Purchased Assets free and clear of all Interests (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order) including, without limitation, any potential derivative, vicarious, transferee, or successor liability Interests.

K. Auction and Additional Bid Solicitation. An Auction was scheduled for and held on February 20, 2025, after prior notice was given thereof and of the process and procedures that obtained thereto, all in accordance with the Bidding Procedures Order. After the conclusion of the Auction and at the conclusion of the Prior Sale Hearing, the Court denied the Prior Sale Motion, entered the Denial Order, and required an Additional Bid Solicitation, after which the Debtor determined in a valid and sound exercise of its business judgment that (i) the highest or best Qualifying Bid in the amount of $6,575,000 (the "Winning Bid") for the Purchased Assets was that of Buyer who is approved as the Winning Bidder, as such term is defined in the Bid Procedures Order, for the Purchased Assets on the terms set forth in the APA of the Buyer that has been filed on the docket of the Chapter 11 Case as Exhibit E to the Sale Motion; and (ii) that the second highest or best Final Bid in the amount of $6,850,000, reimbursements or payment of certain designated expenses, and certain waivers and subordinations of claims was that of TSK for the Purchased Assets on the terms set forth in its Final Bid and the Asset Purchase Agreement dated as of April 3, 2025, by and between the Debtor and TSK ("TSK Final Bid"), with the TSK Final Bid having been filed in this Chapter 11 Case as Exhibit 2 in the Second Designation Notice (the "TSK APA"). The Debtor filed a Second Designation Notice, pursuant to the Bidding Procedures Order in this Chapter 11 Case identifying the Buyer as the Winning Bidder and TSK as the Back-Up Bidder (as defined in the Bidding Procedures Order). Although the TSK Final Bid was for a higher gross purchase price than the Winning Bid of Buyer, in the business judgment of the Debtor, after taking into account all of the factors to be considered in the Bidding Procedures Order and Additional Bid Solicitation, including, without limitation, the greater execution risks of the TSK Final Bid, the "Tangible Personal Property" and "Title to Personal Property" representations and warranties in sections 3.05 and 4.05 of the TSK Final Bid, the

"Indemnification by the Debtor" in sections 5.09 and 5.10 of the TSK Final Bid, and the "Indemnity Holdback Amount" in the amount of $200,000 in section 1.04 of the TSK Final Bid, the Winning Bid of the Buyer was determined to be the highest or best bid for the Purchased Assets and, in the business judgement of the Debtor, would result in more expeditious, certain and less risky realizable value to the estate. Furthermore, as a result of the Lease Extension Denial Order, TSK is no longer willing to serve as the Back-Up Bidder (as defined in the Bidding Procedures Order).

L. The Auction and Additional Bid Solicitation conducted by the Debtor, including the methodology for determination of the highest or best offer, was conducted in a manner that was reasonably calculated to achieve the highest or best offer for the Purchased Assets. The Auction and Additional Bid Solicitation were conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher or better offer for the Purchased Assets pursuant to the Bidding Procedures Order at the Auction, and, additionally, given to the Buyer and TSK pursuant to the Additional Bid Solicitation.

M. "Interests". As used in this Sale Order, the term "Interest" includes, in each case to the extent against or with respect to Debtor or in, on, or against or with respect to any of the Purchased Assets: Liens (as defined in § 101(37)), claims (as defined in § 101(5)), including but not limited to adverse claims against the Purchased Assets, including all claims of retention of title or purported title rights and claims ("Adverse Claims"), debts (as defined in § 101(12) of the Bankruptcy Code), Encumbrances (as defined in the APA), obligations, Liabilities (as defined in the APA), demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or

unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior, on, or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, Encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to, on, or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Buyer's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37)) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other

employee benefit plans, agreements, practices, and programs including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of their predecessors, or (l) the Worker Adjustment and Retraining Notification Act, as amended, together with any state or local "mass layoff" or "plant closing" Laws or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or business of the Debtor prior to the Closing, including under claims or interests of state taxing authorities or other Governmental Units (as defined in section 101(27) of the Bankruptcy Code); (x) any unexpired and executory or non-executory Contract or unexpired lease to which the Debtor is a party that is not an Assigned Contract; (xi) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or

circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. § 9601 et seq.) and any regulations promulgated thereunder, and analogous state Laws ("CERCLA"), or any other environmental, health, and safety laws; (xii) any other Excluded Liabilities under the APA; and (xiii) Interests arising under or in connection with any acts, or failures to act, of the Debtor or any of the Debtor's predecessors, Affiliates, or subsidiaries, including, but not limited to, Interests arising under any theory, law, or doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

N. No Successor or Other Derivative Liability. By consummating the Transaction contemplated by and pursuant to the APA and this Sale Order, the Buyer is not a mere continuation of Debtor or Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Buyer and Debtor. The Buyer is not a successor to Debtor or its estate by reason of any theory of law or equity, and the Transaction contemplated by the APA does not amount to a consolidation, merger, or *de facto* merger of the Buyer and Debtor or its estate. Neither the Buyer nor any of its affiliates or their respective predecessors, successors, assigns, members, partners, principals, officers, directors, or direct or indirect shareholders (or the equivalent thereof) (collectively, the "Buyer Related Persons") shall assume or in any way be responsible for any obligation or liability Debtor (or any affiliate of it) or its estate. The sale and

transfer of the Purchased Assets to the Buyer shall not subject the Buyer and the Buyer Related Persons to any liability with respect to the operation of the Debtor's business prior to the Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall remain liable for any applicable Assumed Liabilities, if any.

O. Arm's-Length Sale and Buyer's Good Faith. The APA was negotiated and is undertaken by the Debtor and the Buyer at arm's length without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Buyer is not an "insider" of the Debtor as that term is defined by section 101(31) of the Bankruptcy Code. The Buyer (i) recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets, (ii) complied with the Bidding Procedures Order and Additional Bid Solicitation, and (iii) willingly subjected its Stalking Horse APA to the competitive bidding procedures approved in the Bidding Procedures Order and Additional Bid Solicitation. All payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Transaction have been disclosed, the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction, and no common identity of directors or controlling stockholders exists between the Buyer and the Debtor. As a result of the foregoing, the Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the Transaction specifically and this Chapter 11 Case generally.

P. No Collusion. The APA was not controlled by an agreement between potential bidders within the meaning of § 363(n). The Debtor and the Buyer have not engaged in any

conduct that would cause or permit the APA or the consummation of the Transaction contemplated by the APA to be avoided, or costs or damages to be imposed, under § 363(n). Neither Debtor nor the Buyer has entered into the APA or is consummating the sale and assignment of the Purchased Assets thereunder with any fraudulent or otherwise improper motive or purpose.

Q. Insider Status. Neither the Buyer nor any of the Buyer Related Persons is an "insider" of the Debtor, as that term is defined in § 101(31).

R. Property of the Estate. The Purchased Assets constitute property of Debtor's estate within the meaning of § 541(a).

S. Validity of the Transaction. The consummation of the Transaction contemplated by the APA is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including §§ 105(a), 363(b), 363(f), 363(k), 363(m), 365, and all of the applicable requirements of such sections have been complied with in all respects in connection with the Transaction under the APA. As of the Closing, the sale and assignment of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order). The Debtor has full corporate or other applicable authority to execute and perform the APA and all other documents contemplated thereby, and the Transaction contemplated by the APA has been duly and validly authorized by all necessary corporate action of Debtor. Upon entry of this Sale Order, no consent or approval from any other person, entity, or legal authority is required to consummate the Transaction.

T. No Stay of Sale Order. Time is of the essence to implement the APA and consummate the sale and other transactions thereunder. The sale and other transactions thereunder must be authorized, approved and consummated promptly in order to preserve the value of the Purchased Assets and to maximize the value to the Debtor, its estate, its creditors, and all other parties in interest. The Debtor has demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the APA and sale and other transactions thereunder. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 7062, or any applicable provisions of the Local Rules, this Sale Order shall not be stayed and shall be effective and enforceable immediately upon entry.

U. Store Lease. As a result of the Extension Denial Order, the Lease Agreement dated as of June 13, 2023, by and between the Debtor and Store ("Store Lease") is deemed rejected under §365 because the Debtor did not assume or reject the Store Lease under §365 within 120 days after the date of the order for relief and did not obtain the entry of an order of this Court extending such 120-day period prior to the expiration of such 120-day period as required by §365(d)(4)(B)(i).

V. The Post-Sale Hearing Form of Sale Order and the Notice of Form Sale Order are substantially similar, and the Notice of Form Sale Order was sufficient to give reasonable notice of the material provisions of the Post-Sale Hearing Form Sale Order and this Sale Order. The only material changes in this Sale Order that were not in the Notice of Form Sale Order were settlements reached among the parties at and during the Sale Hearing, as reflected in the Post-Sale Hearing Form of Sale Order and this Sale Order, and the deletion of any authorization and approval of the Back-Up Bidder and the Back-Up APA, as a result of TSK stating on the record that it is no longer willing to serve as the Back-Up Bidder.

W. Creditor Support. The sale of the Purchased Assets to Buyer under the terms of the APA is supported by Loeb, Pathward, the Committee, Store, and Metro Machine Works, Inc, an unsecured creditor (Memorandum Opinion at page 8). The Office of the United States Trustee has not taken a position (Memorandum Opinion at 8). No creditors other than the Ellwood Companies voiced an objection to the sale (Memorandum Opinion at page 9).

X. Memorandum Opinion. The findings of fact in the Memorandum Opinion are incorporated herein by reference as the further findings of fact of this Court and this Sale Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. Sale Motion Granted. The Sale Motion, and the relief requested in the Sale Motion, are GRANTED, and are authorized and approved to the extent set forth in this Sale Order.

2. Objections Overruled. Unless otherwise provided for in this Sale Order, any Objections to or reservation of rights in respect of the Sale Motion or the relief requested therein or granted herein that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits with prejudice or resolved as set forth herein. All persons and entities that failed to timely object thereto are deemed to have consented to the relief sought in the Sale Motion and granted herein. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3. Transaction Approved. The APA and all transactions contemplated thereby, including the sale and assignment of Purchased Assets to Buyer, are hereby APPROVED. Debtor is authorized to enter into and perform the APA (and all ancillary documents), and all of the terms and conditions thereof, and all of the transactions contemplated therein are approved in all respects including, without limitation, any amendment, modification or supplement to, or

restatement of, the APA that the Debtor and Buyer determine is necessary or desirable in connection with the transactions contemplated therein. The consummation of the sale and other transactions in the APA are hereby approved and authorized under §§ 105, 363(b) and (f), and 365.

4. Adequate and Reasonable Notice. Notice of the sale of the Purchased Assets pursuant to the APA and notice of the Sale Hearing, and all deadlines related thereto, were good, sufficient, and appropriate under the circumstances and complied in all respects with § 102(1) and Rules 2002, 6004 and 6006, and LBR 6004-1.

5. Debtor's Performance Authorized. Debtor is hereby authorized to enter into and perform its obligations under the APA, and to take such other actions as may be necessary or desirable to effectuate the terms of the APA, and any other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, the sale and assignment of the Purchased Assets under the APA, or this Sale Order including, without limitation, the execution and delivery of bills of sale, deeds, assignments, and any other instruments of transfer, without further order of the Court. Debtor is hereby further authorized to take all other actions as may reasonably be requested by the Buyer or otherwise for the purpose of assigning, transferring, granting, conveying, conferring to, or vesting in, the Buyer, or reducing to the Buyer's possession, any or all of the Purchased Assets, as may be necessary or appropriate for Debtor to perform its obligations under the APA and consummate the sale and assignment of the Purchased Assets thereunder and hereunder, without further order of the Court.

6. Debtor is hereby authorized and empowered to cause to be executed and filed or recorded such statements, instruments, releases, and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the APA, the sale and assignment

of the Purchased Assets under the APA, or this Sale Order, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of Debtor may determine are necessary or appropriate.

7. Free and Clear Sale. Except to the extent specifically provided in the APA, upon the Closing Date, Debtor shall be, and hereby is, authorized and empowered, pursuant to §§ 105, 363(b), 363(f), 363(k), and 365, to sell and transfer to the Buyer the Purchased Assets. The sale and transfer of the Purchased Assets to the Buyer shall vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of any and all Interests of any person or entity, with all such Interests to attach to the net proceeds of sale of the Purchased Assets ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Transaction contemplated by the APA, subject to any rights, claims or defenses of Debtor or its estate. Following the Closing, no holder of any Interest on any of the Purchased Assets shall interfere with the Buyer's use or enjoyment of any of the Purchased Assets based on or related to such Interest or any actions that the Debtor has taken or may take in its Chapter 11 Case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the sale and transfer of the Purchased Assets or any other transactions contemplated in the APA.

8. The provisions of this Sale Order authorizing the sale and transfer of the Purchased Assets free and clear of Interests (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order) shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file or record releases, termination statements, assignments, consents or

other instruments in order to effectuate, consummate, or implement the provisions of this Sale Order. For the avoidance of doubt, on or after the Closing Date, Debtor and the Buyer shall be authorized, but not directed, to file or record any such releases, termination statements, assignments, consents, or other instruments in any jurisdiction to file or record the release, discharge, and termination of Interests on the Purchased Assets pursuant to the terms of this Sale Order.

9. Direction to Creditors. This Sale Order shall be (a) effective as a determination that, as of the Closing Date, all Interests in or on the Purchased Assets (except as otherwise expressly assumed, if any, under the APA) shall be unconditionally released, discharged, and terminated as to the Buyer, the Buyer Related Persons, and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtor's creditors and any holder of an Interest on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in or on the Purchased Assets, if any. If any person or entity that has filed or recorded a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest in or on the Purchased Assets has not delivered to the Debtor on or before the Closing, in proper form for filing or recording and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtor and Buyer are each authorized to (x) execute and file or record such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register, or otherwise record a certified copy of this Sale Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the

release of all Interests on the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

10. Authorization of Recording Officers. This Sale Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, Governmental Units or departments, secretaries of state, governmental officials, and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets (collectively, the "Recording Officers"). All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the sale of the Purchased Assets and other transactions contemplated by the APA or to record and reflect that the Buyer is the owner of the Purchased Assets free and clear of all Interests (other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order) and (b) strike all recorded Interests in or on the Purchased Assets from their records.

11. Direction to Surrender the Purchased Assets. All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Buyer on the Closing Date and shall not interfere with Buyer's rights to take possession of and exercise dominion and control over the Purchased Assets. By way of example and not by way of limitation, check #7162049 issued by Chubb Federal Insurance Company or any affiliate thereof ("Chubb Check") shall be turned over and delivered to the Buyer, properly endorsed (without recourse,

representation or warranty), by Debtor or any other holder of the Chubb Check, to pay to the order of Buyer or any assignee of Buyer designated by Buyer in writing at or before Closing. In addition, the Debtor or the holder of the Chubb Check, as applicable, shall cooperate with the Buyer or any assignee of Buyer in taking reasonably requested actions by Buyer or such assignee to cause the maker of the Chubb Check or an subsequent holder thereof, as applicable, to reissue the Chubb Check in the name of the Buyer or any assignee of Buyer that has been designated by Buyer at or before Closing in writing.

12. No Successor Liability. The Buyer and the Buyer Related Persons are not and shall not be (a) deemed a "successor" in any respect to Debtor or its estate as a result of the consummation of the sale of the Purchased Assets or transactions contemplated by the APA or any other event occurring in the Debtor's Chapter 11 Case under any theory of law or equity; (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into Debtor or its estate; (c) deemed to be an alter ego of or have a common identity with Debtor; (d) deemed to have a continuity of enterprise with Debtor; or (e) deemed to be a continuation or substantial continuation of Debtor or any enterprise of Debtor, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, health, products liability, safety laws, or other law, doctrine, rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtor's liability under such law, doctrine, rule or regulation including, without limitation, under COBRA, CERCLA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, the Americans with Disabilities Act of 1990 (as amended), the Federal Rehabilitation Act of 1973 (as amended), and

the National Labor Relations Act, 29 U.S.C. § 151, et seq.; or (f) other than Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order, be liable for (i) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under CERCLA, or any other environmental, health, and safety laws, or (ii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by Debtor (A) for any taxes of any kind for any period, (B) under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or (C) under any products liability or intellectual property law or doctrine, or any other law or doctrine.

13. Except as expressly provided in the APA or this Sale Order with respect to the Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order, the Buyer and the Buyer Related Persons shall not (a) assume, nor be deemed to have assumed or in any way be responsible for (i) any liability or obligation (of any kind, character, or description, whether known or unknown, asserted or unasserted, matured or unmatured, liquidated or unliquidated, disputed or undisputed, accrued or unaccrued, due or to become due, fixed, absolute, contingent or otherwise) of Debtor or its estate or related to the Purchased Assets including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against Debtor or against any related person of Debtor, or any similar liability or obligation, (ii) any Claims (as defined in § 101(5)) or Liens (as defined in § 101(37)) or other Encumbrances against the Debtor or any of its predecessors or affiliates, (iii) liabilities

on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to Closing, or (b) have any liability whatsoever with respect to Debtor's business or operations or product lines or Debtor's obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment, infringement or products liability, whether known or unknown as of such Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities or obligations under the CERCLA or any other environmental, health, and safety laws, (ii) liabilities or obligations under ERISA, COBRA, or other similar state or local laws with respect to any pension plan, welfare plan, or other employee benefit plan, (iii) liabilities or obligations under any collective bargaining agreement or employment agreement, or (iv) any liabilities or obligations of any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of such Buyer's purchase of any Purchased Assets or assumption of the Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order. The Sale Motion contains sufficient notice of such limitations in accordance with applicable law. Except for the Buyer's assumption of the Assumed Liabilities, if any, pursuant to the APA and this Sale Order and claims brought by Debtor to enforce the express terms of the APA and this Sale Order, and then only as against the Buyer, the transfer of the Purchased Assets will not result in (a) any Buyer Related Person having any liability or obligation for any claim made against Debtor (or its affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals or direct or indirect equity security holders), including, without limitation, in respect of the Excluded Liabilities, nor in any

such liability or obligation attaching to the Purchased Assets; (b) any Buyer Related Person having any liability or obligation with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or otherwise, directly or indirectly, any Interests or Excluded Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; or (c) any Buyer Related Person having any liability or obligation to Debtor.

14. For the avoidance of doubt, except as expressly provided in the APA or this Sale Order with respect to the Assumed Liabilities, if any, expressly assumed under the APA or this Sale Order, nothing shall require the Buyer or any Buyer Related Person to (i) continue or maintain in effect, or assume any liability in respect of, any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which Debtor is a party or have any responsibility therefor, including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment, (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including, but not limited to, pension plans), or the termination of any such plan, arrangement, or agreement, or (iii) hire any employees, or assume or maintain in effect, or assume any liability in respect of, any collective bargaining agreement, employment agreement, wage rate, compensation plan, or arrangement or any other terms and conditions of employment for any employees of Debtor.

15. Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer or any Buyer Related Person or their assets (including the Purchased Assets) with respect

to any (a) Interest in the Purchased Assets, or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

16. Distribution of Sale Proceeds. At the Closing of the Transaction and sale of the Purchased Assets to the Buyer, the proceeds of the purchase price of the Transaction and sale of the Purchased Assets, net of any Purchase Price Advance (as defined below), if any, shall be distributed by Debtor in the following order of priority: *first*, unless the Stalking Horse Bidder is the Winning Bidder and closes the Transaction pursuant to the APA, to the Stalking Horse Bidder in payment of the Termination Fee (as each term is defined in the Bidding Procedures Order); *second*, to the DIP Lender in payment of all amounts owed to the DIP Lender under the DIP Facility [Doc. 139] in full satisfaction thereof; *third*, in payment of any ad valorem taxes, prorations, allocations, and customary closing costs associated with the Transaction; *fourth*, to Loeb in satisfaction of any indebtedness of the Debtor to Loeb; *fifth*, to Pathward in satisfaction of any indebtedness of the Debtor to Pathward, and, *sixth*, to the Debtor's estate. After all of the payments are made under clauses *first* through *fifth* above, any remaining cash proceeds from the Closing, net of any Purchase Price Advance, if any, shall be paid to and held by the Debtor subject

to further order of this Court. The Debtor and the Debtor's estate reserve the right to object to any claim of any party that receives payment under this paragraph and seek disgorgement and return of any funds to the extent that their respective claims are disallowed or allowed for less than the amount they received. Furthermore, nothing in this Sale Order shall be deemed a release or waiver of any rights, claims, remedies or other causes of action against any party other than, effective upon Closing of the sale and Transaction under the APA and this Sale Order, the Buyer and Buyer Related Persons as provided for in this Sale Order and APA. Any rights, claims, remedies, or any other causes of action that the Committee and its members, the Debtor, the estate, any trustee, any other successor in interest to the interests of the Debtor or its estate, or any other party in interest may have against Fidelis and its affiliates, any prior owners of the Debtor, the Prepetition Secured Lenders, and their respective shareholders, members, managers, officers, directors, employees, agents and representatives expressly shall be preserved.

17. Designation Rights and Assigned Contracts. Under the APA, unless rejected prior to the Closing Date, Buyer has the right to designate any executory Contracts as Assigned Contracts at any time until the Closing Date. If Buyer timely designates any such Contracts as Assigned Contracts, Debtor shall promptly move the Court to authorize and approve the assumption and assignment of any such executory Contracts as Assigned Contracts. The assumption and assignment of such executory Contracts as Assigned Contracts shall be authorized and approved so long as such assumption and assignment satisfy the requirements of § 365, including §§ 365(b) and (f) thereof, as determined by further Court order. Any cure costs associated therewith shall be the obligation of the Buyer.

18. Leases. The Store Lease is deemed rejected under §365 because the Debtor did not assume or reject the Store Lease under §365 within 120 days after the date of the order for

relief and did not obtain the entry of an order of this Court extending such 120-day period prior to the expiration of such 120-day period as required by §365(d)(4)(B)(i). Upon Closing of the Transaction and the sale of the Purchased Assets to the Buyer under the APA and this Sale Order, unless rejected under §365 prior to such Closing, any subleases granted by the Debtor under the Store Lease ("Subleases"), including Subleases by and between (a) Debtor and Duenner Supply, LLC, and (b) Debtor and Oilfield Improvements, LLC, shall each, automatically and irrevocably, be deemed rejected, and such rejections approved under §365, as of and effective upon such Closing, without further Court order. For the avoidance of doubt, Buyer shall have no, and shall not incur any, responsibility, obligation or liability of any kind under, in connection with, or related to the Store Lease or the Subleases, including for any past or future rent, insurance, utilities, security services, or any other claim or obligation under, in connection with, or related to, the Store Lease or any of the Subleases.

19. Waiver of Administrative, Priority, and Unsecured Claims by Store. Upon the Closing of the Transaction and the sale of the Purchased Assets to Buyer under the APA and this Sale Order, except for, and to the extent of, any prepaid rent, security deposits and other tenant prepayments and deposits ("Prepaids and Deposits"), all of which Prepaids and Deposits shall be retained by Store (as between the Debtor's estate and Store only) and shall not be turned over, transferred, or otherwise conveyed to the Debtor's estate and check number 6686039 in the amount of $500,000, check number 6750544 in the amount of $108,933 and check number 7162046 in the amount of $80,809, each of which were made payable to the Debtor and Store (collectively, the "Checks"), Store agrees to waive and release the Debtor's estate from any and all claims (other than claims in respect of the Prepaids and Deposits) that Store has or may have against the Debtor and its estate (and this Court hereby approves such waiver and release,

automatically and without further Court order) through the date of Closing, whether such claims are administrative or other priority claims, or general unsecured claims, and whether such claims are known or unknown. Such waiver and release shall be fully and finally effective only upon such Closing, and any claims which may be asserted by Store notwithstanding such waiver and release shall be disallowed, and may not be reconsidered, whether under § 502(j), Bankruptcy Rule 9024 or otherwise, for any reason. For the avoidance of doubt, this waiver and release of claims shall not apply to (a) any claims in respect of Prepaids and Deposits or the Checks, (b) any payments or other transfers paid to, or on behalf or for the benefit of, Store at any time prior to such Closing, or (c) any claims Store has or may have against third parties (other the Debtor's estate that are subject to this waiver and release) under the Store Lease and otherwise.

20. Licenses and Permits. To the extent provided in the APA and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of Debtor with respect to the Purchased Assets, including the Assigned Contracts to be assumed under the APA and assigned to Buyer, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory Contract that may be assumed and assigned under §§ 363 and 365, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of Debtor shall remain in place for the Buyer's benefit until a new license or permit is obtained.

21. To the extent provided by § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed

to the Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the sale of the Purchased Assets and the other transactions contemplated pursuant to the APA.

22. Good-Faith Buyer. The Buyer is a good-faith purchaser within the meaning of § 363(m) and is entitled to all of the protections afforded thereby. The sale of the Purchased Assets and other transactions pursuant to the APA are undertaken and entered into by Debtor and the Buyer without collusion, at arm's length, and in good faith, as that term is defined in § 363(m). As such, the reversal or modification on appeal of this Sale Order approving the sale of the Purchased Assets and the other transactions contemplated under the APA under subsection (b) or (c) of § 363 shall not affect the validity of the sale of the Purchased Assets or the other transactions contemplated by the APA, whether or not the Buyer knew of the pendency of the appeal, unless, prior to the Closing on the sale of the Purchased Assets, this Sale Order and the sale of the Purchased Assets and other transactions contemplated by the APA were duly and properly stayed pending appeal.

23. Section 363(n) of the Bankruptcy Code. The sale of the Purchased Assets and other transactions contemplated by the APA approved by this Sale Order are not subject to avoidance or any recovery of damages and no party is entitled to any damages or other recovery in connection therewith pursuant to or under § 363(n) or otherwise.

24. Insider. Neither the Buyer nor any Buyer Related Person is an "insider" as that term is defined in § 101(31).

25. Bulk Sales. No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Transaction contemplated by the APA.

26. Purchase Price Advance. Upon entry of this Sale Order, at the request of the Debtor, Buyer is authorized to advance to the Debtor up to $20,000 of the Purchase Price, on an

interest-free and cost-free basis ("Purchase Price Advance"), for use by the Debtor as the Debtor determines appropriate, consistent with applicable bankruptcy law, with any Purchase Price Advance to be repaid to Buyer by a credit against, and deduction from, the Purchase Price under the APA at Closing (and, if there is no Closing, the Purchase Price Advance will be repaid as an allowed administrative expense claim against the Debtor's estate).

27. Amendments. The APA and any related agreements may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court.

28. Binding Order. This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including, without limitation, Debtor and Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for Debtor, or any trustee appointed in a chapter 7 case of Debtor if this Chapter 11 Case is converted from a case under chapter 11 to a case under chapter 7, all creditors of the Debtor (whether known or unknown), and all Recording Officers. Neither the sale of the Purchased Assets nor the APA shall be subject to rejection or avoidance under any circumstances. This Sale Order and the APA shall inure to the benefit of Debtor its estate, its creditors, the Buyer, Buyer Related Persons, and its and their respective successors and assigns. Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Case, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of the Chapter 11 Case or any subsequent chapter 7 case shall conflict with or derogate from the provisions of the APA (including any related agreements), or this Sale Order, and to the extent of any conflict or derogation between this Sale Order or APA and such future plan or order, the terms of this Sale Order and the APA, including any related agreements, shall control.

29. Failure to Specify Provisions; Conflicts. The failure specifically to include or mention any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, Debtor and Buyer that the APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

30. Name Change. As required by the APA, the Seller shall (a) adopt, as of the Closing Date, a new entity name wholly dissimilar to its current name and any variations or derivations thereof, and (b) will within three (3) business days following the Closing file necessary amendments to its organizational documents to reflect such name change. After the Closing, the Seller will (c) within five business days, file a motion in this Chapter 11 Case to change the case caption in its case to the new entity name, and (d) not use the Seller's pre-Closing name or any variation or derivation thereof by using either of the words "Oklahoma" or "Forge" in any commercial context.

31. Further Assurances. From time to time, as and when requested, all parties to the Transaction contemplated by APA shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the sale of the Purchased Assets and the other transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Buyer, all of Debtor's right, title and interest in and to the Purchased Assets.

32. Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the

Buyer to deliver any notice provided for in the APA and to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.

33. No Stay of Sale Order. Notwithstanding Rules 6004(h), 7062 and any applicable LBR, this Sale Order shall not be stayed and shall be effective and enforceable immediately upon entry. The provisions of this Sale Order shall be self-executing. Time is of the essence in implementing the APA and closing the sale of the Purchased Assets.

34. Governing Terms. To the extent there is any inconsistency between the terms of this Sale Order and the terms of the APA, the terms of this Sale Order shall govern.

35. Retention of Jurisdiction. This Court shall retain jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Sale Order, the APA, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets.

36. Other Provisions. Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Sale Order, as may be required.

Dated: May 16, 2025

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Approved and Submitted by:

_*/s/Mark A. Craige*______________

**Mark A. Craige,** OBA No. 1992
Crowe & Dunlevy, P.C.
6th Floor
222 North Detroit Avenue
Tulsa, Oklahoma 74120
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
mark.craige@crowedunlevy.com

*Attorney for Debtor*